**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| *In re F45 Training Holdings, Inc.* *Securities Litigation* | § § § § § § | CASE NO. 1:22-CV-01291-DAE CLASS ACTION |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ....................................................................................................................1

ARGUMENT .........................................................................................................................2

I.  The Opposition Fails to Establish that Plaintiff Detroit Has Standing. ..............................2

II. The Opposition Confirms that Plaintiffs Fail to Allege an Actionable Misstatement Under the Securities Act..................................................................3

    A.  The Opposition Does Not Refute Defendants' Argument that F45's Projections Are Protected Under the Bespeaks Caution Doctrine..............................6

    B.  The Opposition Fails to Explain How the Opinion Statements in the IPO Materials Are Actionable. ................................................................................7

    C.  The Opposition Does Not Explain How Puffery Could Be Actionable. .......................9

    D.  The Opposition Largely Ignores Defendants' Argument that the Remaining Challenged Statements in the IPO Documents Were Not False When Made. ............10

III. The Opposition Confirms that Plaintiffs Lack Standing for Their Section 12 Claim...........................................................................................................11

IV. The Opposition Confirms that the Complaint Fails to Plead Falsity, Scienter, or Loss Causation for Its Exchange Act Claims. ...................................................12

    A.  The Opposition Confirms that Plaintiffs Fail to Plead Falsity...................................12

        1.  The Opposition Fails to Rebut Defendants' Argument that the PSLRA Safe Harbor Protects the Forward-Looking Statements. ......................................12

        2.  The Opposition Fails to Rebut Defendants' Argument that the Challenged Opinion Statements and Puffery Are Inactionable. .............................................14

        3.  The Opposition Does Not Contest that the Remaining Statements Challenged Under the Exchange Act Were Not False When Made. .....................14

    B.  The Opposition Confirms that Plaintiffs Fail to Plead Scienter. ...............................15

        1.  Plaintiffs Identify No Known Contradictory Facts..............................................16

        2.  "Core Operations" Allegations Do Not Salvage Plaintiffs' Scienter Argument. ............................................................................................18

        3.  The Opposition Establishes No Connection Between the Confidential Witness Allegations and Mr. Gilchrist, Mr. Payne, or the Challenged Statements. ..........................................................................................20

        4.  Defendants' Departures from F45 Do Not Revive Plaintiffs' Claim. ...................21

    C.  The Opposition Confirms that Plaintiffs Fail to Plead Loss Causation.......................22

V.  The Opposition Confirms the Complaint Fails to Establish Control Person Liability.............................................................................................................23

**TABLE OF CONTENTS**
*(continued)*

Page

VI. The Court Should Dismiss the Complaint With Prejudice. ...............................................25

CONCLUSION.......................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abrams v. Baker Hughes Inc.*,
292 F.3d 424 (5th Cir. 2002) ........................................................................................17, 22

*Akerman v. Oryx Commc'ns, Inc.*,
810 F.2d 336 (2d Cir. 1987)..................................................................................................3

*In re Alamosa Holdings, Inc.*,
382 F. Supp. 2d 832 (N.D. Tex. 2005) ................................................................................3

*Alaska Elec. Pension Fund v. Asar*,
768 F. App'x 175 (5th Cir. 2019) .......................................................................................16

*Alaska Elec. Pension Fund v. Flotek*,
915 F.3d 975 (5th Cir. 2019) ..............................................................................................20

*In re ArthroCare Corp. Sec. Litig.*,
726 F. Supp. 2d 696 (W.D. Tex. 2010)...........................................................................21, 22

*Asher v. Baxter Int'l Inc.*,
377 F.3d 727 (7th Cir. 2004) ..............................................................................................13

*In re BP p.l.c. Sec. Litig.*,
2016 WL 3090779 (S.D. Tex. May 31, 2016)......................................................................8

*In re BP p.l.c. Sec. Litig.*,
843 F. Supp. 2d 712 (S.D. Tex. 2012) ................................................................................18

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d at 789 .......................................................................................................9, 14

*Braun v. Eagle Rock Energy Partners, L.P.*,
223 F. Supp. 3d 644 (S.D. Tex. 2016) ...............................................................................6, 7

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
665 F. Supp. 2d 404 (S.D.N.Y. 2009)..................................................................................3

*Budde v. Glob. Power Equip. Grp., Inc.*,
2018 WL 4623108 (N.D. Tex. Sept. 26, 2018)...................................................................20

*In re Cassava Scis., Inc. Sec. Litig.*,
2023 WL 3442087 (W.D. Tex. May 11, 2023) ...................................................................23

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012)..................................................................................18

*In re Cobalt Int'l Energy, Inc.*,
2016 WL 215476 (S.D. Tex. Jan. 19, 2016).......................................................................24

*Davidco Invs., LLC v. Anchor Glass Container Corp.*,
2006 WL 547989 (M.D. Fla. Mar. 6, 2006) ........................................................................3

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
620 F. Supp. 3d 603 (S.D. Tex. 2022) ...............................................................................8

*In re Dell Inc., Sec. Litig.*,
591 F. Supp. 2d 877 (W.D. Tex. 2008)..........................................................................21, 22

*In re Deutsche Bank AG Sec. Litig.*,
2016 WL 4083429 (S.D.N.Y. July 25, 2016) ...................................................................11

*In re Dynegy, Inc. Sec. Litig.*,
339 F. Supp. 2d 804 (S.D. Tex. 2004) ...............................................................................3

*E-Dealer Direct v. Bank of Am., N.A.*,
2021 WL 2115299 (W.D. Tex. May 25, 2021) ...............................................................3, 25

*In re Fleming Cos. Inc. Sec. & Derivative Litig.*,
2004 WL 5278716 (E.D. Tex. June 16, 2004)..................................................................17

*Garrett v. Celanese Corp.*,
102 F. App'x 387 (5th Cir. 2004) ....................................................................................25

*In re Glob. Crossing, Ltd. Sec. Litig.*,
2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005).....................................................................25

*Hall v. Rent-A-Ctr., Inc.*,
2017 WL 6398742 (E.D. Tex. Oct. 19, 2017), *R. & R. adopted*, 2017 WL
6379334 (E.D. Tex. Dec. 14, 2017)..............................................................................13, 22

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
791 F.3d 90 (D.C. Cir. 2015)...........................................................................................13

*Holzwasser v. Staktek Holdings, Inc.*,
2006 WL 897746 (W.D. Tex. Mar. 30, 2006) ..................................................................19

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) .........................................................................................16, 21

*Institutional Invs. Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)............................................................................................18

*JMCB, LLC v. Bd. of Com. & Indus.*,
336 F. Supp. 3d 620 (M.D. La. 2018)........................................................................ *passim*

*KB Partners I, L.P. v. Pain Therapeutics, Inc.*,
2012 WL 12850252 (W.D. Tex. Sept. 26, 2012)..............................................................21

*In re Key Energy Servs., Inc. Sec. Litig.*,
166 F. Supp. 3d 822 (S.D. Tex. 2016) ..............................................................................21

*Kurtzman v. Compaq Comput. Corp.*,
2000 WL 34292632 (S.D. Tex. Dec. 12, 2000).................................................................10

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Lorman v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) .............................................................................................9

*McKinney v. Irving Ind. Sch. Dist.*,
  309 F.3d 308 (5th Cir. 2002) ...........................................................................................25

*McMahan & Co. v. Wherehouse Ent., Inc.*,
  65 F.3d 1044 (2d Cir. 1995)...............................................................................................3

*Monroe Cnty. Empls.' Ret. Sys. v. S. Co.*,
  2018 WL 1558577 (N.D. Ga. Mar. 29, 2018)..................................................................17

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
  333 F. Supp. 3d 1315 (N.D. Ga. 2018).............................................................................17

*Mun. Emps.' Ret. Sys. of Michigan v. Pier 1 Imports, Inc.*,
  935 F.3d 424 (5th Cir. 2019) ...........................................................................................20

*N. Port Firefighters' Pension--Loc. Option Plan v. Temple-Inland, Inc.*,
  936 F. Supp. 2d 722 (N.D. Tex. 2013) .............................................................................22

*Naglich v. Applied Optoelectronics*,
  436 F. Supp. 3d 954 (S.D. Tex. 2020) .............................................................................23

*In re Netsolve, Inc. Sec. Litig.*,
  185 F. Supp. 2d 684 (W.D. Tex. 2001).............................................................................19

*Okla. Firefighters Pen. & Ret. Sys. v. Six Flags Ent. Corp.*,
  58 F.4th 195 (5th Cir. 2023) ........................................................................9, 19, 20, 22

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
  777 F. App'x 726 (5th Cir. 2019) ...........................................................................3, 4, 9, 14

*R2 Invs. LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) ...........................................................................................16

*Ramirez v. Exxon Mobil Corp.*,
  334 F. Supp. 3d 832 (N.D. Tex. 2018) .............................................................................17

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) .............................................................................................7

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*,
  2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) .....................................................................3

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010).............................................................................................13

*In re SolarWinds Corp. Sec. Litig.*,
  595 F. Supp. 3d 573 (W.D. Tex. 2022)...................................................................10, 24, 25

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Southland Sec. Corp. v. INSpire Ins. Sol.*,
  365 F.3d 353 (5th Cir. 2004) .......................................................................................15

*Spitzberg v. Houston Am. Energy Corp.*,
  758 F.3d 676 (5th Cir. 2014) ...................................................................................15, 16

*Stone v. Life Partners Holdings, Inc.*,
  26 F. Supp. 3d 575 (W.D. Tex. 2014)............................................................................10

*United States v. Reagan*,
  596 F.3d 251 (5th Cir. 2010) ..........................................................................................2

*In re Venator Materials PLC Sec. Litig.*,
  547 F. Supp. 3d 624 (S.D. Tex. 2021) .............................................................................4

*In re WRT Energy Sec. Litig.*,
  2005 WL 2088406 (S.D.N.Y. Aug. 30, 2005).................................................................3

*Young v. U.S. Postal Serv.*,
  620 F. App'x 241 (5th Cir. 2015) .............................................................................12, 25

## Statutes

15 U.S.C. § 78u-5(c)(1)(A)(i)-(B)(i)...................................................................................12

## Regulations

17 C.F.R. § 229.3030(b)(2)(ii)............................................................................................11

**<u>INTRODUCTION</u>**

Plaintiffs' Complaint throws 189 pages of allegations at the wall in the hopes that something might stick, but nothing does. Rather than engage with Defendants' arguments, the Plaintiffs merely regurgitate the Complaint's conclusory assertions—sometimes copying and pasting *pages* of the Complaint with little to no analysis. The Opposition's Cliffs-Notes version of the Complaint cannot salvage Plaintiffs' failure to plead their claims with the factual particularity required by Rule 9(b) and the Private Securities Litigation Reform Act. Indeed, the Opposition does not even engage with many of Defendants' arguments for dismissal, thereby waiving any response. When Plaintiffs do respond, they cannot rebut that the challenged statements are not actionable because they are opinions, puffery, or predictive statements accompanied by adequate warnings, or they were true when made. The Complaint's Exchange Act claims suffer from even more defects, as Plaintiffs do not plead a strong inference of scienter and have no plausible theory of loss causation.

The Complaint should be dismissed for the reasons discussed below.

*First*, Plaintiffs fail to allege an actionable misleading statement in the IPO Materials for purposes of their Securities Act Claims. The Opposition waives arguments for most of the challenged statements by failing to respond to Defendants' arguments. For the remainder, the Opposition fails to show how the challenged statements are actionable.

*Second*, Plaintiffs lack standing. Detroit does not have standing to bring any claim because it has incurred no actionable injury; as Plaintiffs themselves allege, Detroit sold all of its F45 shares before the only harm Plaintiffs claim occurred. And Lead Plaintiff Pledge Capital fails to plead standing for its Section 12 claim, because there is no allegation that Lead Plaintiff purchased its F45 shares directly in the Company's IPO.

*Third*, Plaintiffs' Exchange Act claims fail thrice over. The Complaint fails (i) to plead an

1

actionable misstatement for the same reasons noted above for Plaintiffs' Securities Act claims; (ii) to satisfy the PSLRA's high standard for pleading a strong inference of scienter, as Plaintiffs do not identify a single fact known or obvious to any Corporate Defendant that contradicted a challenged statement when made; and (iii) to articulate a cognizable theory of loss causation based on the single corrective disclosure alleged in the Complaint.

*Finally*, because Plaintiffs' primary claims fail, their secondary claims of control person liability fail as well. In addition, Plaintiffs fail to explain how the Complaint pleads that MWIG, KLIM, and the Minority Directors exercised the necessary degree of control over the Company.

Plaintiffs cannot evade dismissal by hiding behind the size of their Complaint, and the Court should dismiss it in full. Furthermore, because Plaintiffs do not meaningfully request leave to amend or specify what any amendment would add, the dismissal should be with prejudice.

## ARGUMENT

### I.    The Opposition Fails to Establish that Plaintiff Detroit Has Standing.

The Complaint refutes any claim that plaintiff Detroit sustained a cognizable harm from the alleged misconduct. Mot. 12-13. Plaintiffs themselves defined this harm as a stock price drop following the July 26, 2022 Strategic Update. ¶¶ 11-12, 76-77, 194-95, 467-69, 524. By its own admission, Detroit was unaffected by that stock drop because it had sold the last of its F45 shares by July 26, 2022. Compl. Ex. 1, at Ex. A; see Mot. 12-13.

Plaintiffs respond that because Section 11 allows for varying methods of calculating damages, Detroit's lack of standing is irrelevant. Opp. 45.[1] But that argument amounts to a request

---

[1] Plaintiffs do not dispute that Detroit does not have standing to pursue the Complaint's Exchange Act claims. *See* Opp. 44-46. Any such argument is therefore waived. *See JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal. By analogy, failure to brief an argument in the district court waives that argument in that court." (citing, *inter alia*, *United States v. Reagan*, 596 F.3d 251, 254-55 (5th Cir.

2

to be reimbursed for investment losses unrelated to the alleged wrongdoing.  *See Akerman v. Oryx Commc'ns, Inc.*, 810 F.2d 336, 342 (2d Cir. 1987) (a "price decline before disclosure may not be charged to defendants" for purposes of Section 11 claim); *accord McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1049 (2d Cir. 1995); *In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 865 (N.D. Tex. 2005).  The caselaw rejects Plaintiffs' attempt to distinguish this authority by arguing that the "negative causation" defense is "premature" at the motion to dismiss stage.  Opp. 44-46.  Courts routinely dismiss claims when "the negative causation defense is apparent on the face of a complaint."  *Alamosa*, 382 F. Supp. 2d at 865.  That is especially true where, as here, a plaintiff has adopted a "'corrective disclosure-price drop' theory of causation."  *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, 2013 WL 944777, at *9 (S.D.N.Y. Mar. 12, 2013).[2]  The Court should therefore dismiss Detroit from the case.

## II.   The Opposition Confirms that Plaintiffs Fail to Allege an Actionable Misstatement Under the Securities Act.

As explained in the Motion (at 11-12), Plaintiffs' Securities Act claims are subject to the heightened pleading standards of Rule 9(b) because they are "based on the same underlying facts and allegations as [the Complaint's] securities fraud claim under the Exchange Act."  *Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 730 (5th Cir.

---

2010))); *accord E-Dealer Direct v. Bank of Am., N.A.*, 2021 WL 2115299, at *9 (W.D. Tex. May 25, 2021) (failure "to respond to Defendant's arguments" in motion to dismiss constitutes waiver).

[2] Where a complaint alleges only a corrective disclosure theory of harm—and not some other theory such as "'leakage' of the undisclosed information into the marketplace prior to the ultimate disclosure"—and the plaintiff has sold out of stock before the corrective disclosure, courts will dismiss Securities Act claims as necessarily foreclosed by the complaint.  *Shuler*, 2013 WL 944777, at *10 & n.9; *see, e.g.*, *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 419 (S.D.N.Y. 2009); *Davidco Invs., LLC v. Anchor Glass Container Corp.*, 2006 WL 547989, at *25 (M.D. Fla. Mar. 6, 2006).  The cases Plaintiffs cite are outliers that fail to address the reasoning of these later decisions.  *See In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 869-70 (S.D. Tex. 2004); *In re WRT Energy Sec. Litig.*, 2005 WL 2088406, at *1-2 (S.D.N.Y. Aug. 30, 2005).  The Court should follow the weight of authority and conclude that Detroit has no actionable injury.

2019). Plaintiffs' only response is that they "specifically alleged that their Securities Act claims do not sound in fraud." Opp. 48 (citing ¶¶ 131-32). But such "[b]oilerplate disavowal of an intent to plead fraudulent conduct is unpersuasive" when the allegations "support both their [Securities Act] claims and their Exchange Act claims with the same IPO . . . materials." *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 669 (S.D. Tex. 2021). There is no doubt that Plaintiffs' Securities Act and Exchange Act claims are overlapping—Plaintiffs concede that "[s]tatements in the IPO Materials are alleged to be false and misleading under both Section 11 and Section 10(b)," Opp. 13 n.13, and Plaintiffs' argument on the merits of their Securities Act claims is limited to a single paragraph that cross-references their arguments under the Exchange Act, Opp. 49. Because Plaintiffs' "allegations under both the Securities Act and the Exchange Act are essentially identical," "Rule 9(b) applies." *Police & Fire Ret. Sys.*, 777 F. App'x at 730.

Plaintiffs' allegations fall far short of pleading an actionable misstatement with the particularity Rule 9(b) requires. The Opposition faults *Defendants* for not stating with particularity their arguments against each and every challenged statement in the almost-200-page Complaint. For example, Plaintiffs complain that "Defendants cite to a laundry list of Complaint paragraphs" without demonstrating why "specific statement[s]" are inactionable. Opp. 16. Setting aside that Plaintiffs mischaracterize Defendants' Motion, the burden remains on *Plaintiffs* to satisfy Rule 9(b)'s pleading requirements. The irony still apparently lost on them, Plaintiffs then proceed to spend about five pages block-quoting the Complaint without explaining how each of the quoted statements materially misled investors. Opp. 16-18, 23-25; *see also* Opp. 16 n.15, 22 n.18, 23 n.19, 26 n.20 (listing paragraphs without analysis). Plaintiffs' failure to meaningfully explain their

4

own allegations warrants dismissal.[3]

Moreover, Plaintiffs fail substantively to engage with Defendants' arguments. In several places, the Opposition identifies Defendants' arguments but does not say anything in response. For example, Plaintiffs do not address Defendants' arguments that many of the challenged statements were not false when made. Mot. 20-25, 31-33. Instead, Plaintiffs list the challenged Complaint paragraphs but offer no response to Defendants' arguments. *See* Opp. 15 n.14. The same is true for many of the statements that Defendants explained were forward looking, opinion statements, or puffery—Plaintiffs address some of those statements but, "due to space constraints," relegate most to footnotes without analysis. Opp. 16 n.15, 22 n.18, 23 n.19, 26 n.20. Any arguments about these unaddressed statements are therefore waived. *JMCB*, 336 F. Supp. 3d at 634.

Plaintiffs miss the mark when they do address Defendants' arguments. Take one illustrative example: paragraph 142 of the Complaint calls out three statements as false and misleading. ¶ 142. Defendants addressed each statement, explaining that the first was inactionable puffery, Mot. 19 (quoting ¶ 142), the second was an opinion statement, Mot. 17 (citing ¶ 142), and the third was a protected predictive statement, Mot. 14 (citing ¶ 142). Plaintiffs strangely argue that the first (puffery) statement is not an *opinion* statement, Opp. 23-24, even though Defendants *quoted* the relevant portion of paragraph 142 in their argument on puffery, Mot. 19. Plaintiffs also fail to address Defendants' arguments that the second statement in paragraph 142 is an opinion statement. *See* Opp. 22-25. Because Plaintiffs fail to meaningfully address Defendants'

---

[3] The Opposition relies on conclusory assertions, such as the claim that "Defendants' assured investors" that F45's "growth would continue unabated" because "of a strong pipeline of current and future franchisees." Opp. 1. Plaintiffs cite no statements in the Complaint that support this assertion because there are none.

arguments, their arguments regarding those statements are waived. *JMCB*, 336 F. Supp. 3d at 634.

Plaintiffs' haphazard approach to its own allegations and Defendants' arguments does not change the fact that Plaintiffs fail to allege an actionable misstatement.

### A.     The Opposition Does Not Refute Defendants' Argument that F45's Projections Are Protected Under the Bespeaks Caution Doctrine.

Defendants identified numerous predictive statements from the IPO Materials that are protected by the bespeaks caution doctrine. Mot. 13-14 (citing ¶¶ 140-42, 155-56, 164-68, 170, 184-85). Plaintiffs fail to address the statements in paragraphs 155-156, 164, and 166-68, waiving any argument as to those statements. *JMCB*, 336 F. Supp. 3d at 634. For the remaining statements, Plaintiffs make two primary arguments: (1) the statements were not forward looking, and (2) the statements lacked meaningful cautionary language. Neither argument withstands scrutiny.

*First*, the statements identified by Defendants are forward looking. For example, the statements in paragraphs 140-42 (estimating projected returns), 165 (projecting potential growth), and 184-85 (stating plans to improve internal controls), are necessarily forward looking, and Plaintiffs fail to identify any portion of those statements that relates to present facts. Opp. 16-18. For the remaining paragraph (170), Plaintiffs simply ignore the forward-looking statement Defendants identified. *See* ¶ 170 ("As our network of total studios grows, we expect recurring revenue as a percentage of total revenue to increase."). All of these statements are predictive of future events and therefore forward looking. *Braun v. Eagle Rock Energy Partners, L.P.*, 223 F. Supp. 3d 644, 653 (S.D. Tex. 2016). Plaintiffs respond that even if these statements may "contain forward-looking elements, many of them also incorporated present factual assertions." Opp. 18. Setting aside that their argument implicitly concedes at least some forward-looking statements *did not* incorporate present factual assertions, Plaintiffs fail to identify what those present factual assertions are and therefore fail to rebut Defendants' arguments. *See* Mot. 14-16.

*Second*, the statements were accompanied by meaningful cautionary language. Plaintiffs misleadingly contend that Defendants do not "identif[y]" which statements are covered by the cautionary language and "concede" that the cautionary language is "general." Opp. 19. Not so. Defendants' Motion devotes more than three pages to linking specific statements to specific cautionary language in the IPO Materials' risk disclosures. Mot. 13-17. In doing so, Defendants noted that the disclosures contained "general qualifications about the use of forward-looking statements" *and* "***forty pages*** of . . . specific, detailed cautionary" language highlighting relevant risks facing the Company. Mot. 14.

In response to Defendants' detailed analysis of the cautionary language in the IPO Materials, Plaintiffs substitute reason with rhetoric, calling the warnings "boilerplate," "vague truisms," and "tautology masquerading as a warning." Opp. 20 & n.17. But tellingly, Plaintiffs fail to identify what risks the cautionary language failed to disclose, except for Plaintiffs' conclusory assertion that F45 used "unsustainable practices." Opp. 21 (citing ¶ 146).[4] Plaintiffs also fail to address the *less* detailed cautionary language that courts have deemed sufficient under the bespeaks caution doctrine. *See* Mot. 16 (discussing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003); *Braun*, 223 F. Supp. 3d at 654).

### B. The Opposition Fails to Explain How the Opinion Statements in the IPO Materials Are Actionable.

Defendants also identified several challenged statements in the IPO Materials that were inactionable opinions. Mot. 17-19 (citing ¶¶ 140-42, 164-65, 167-70, 176, 184). Plaintiffs make no argument as to statements in paragraphs 140-41, 164, and 168-69, thereby waiving any

---

[4] This conclusory assertion is also the only support Plaintiffs offer for their claim that the warned-of risks had already materialized. *See* Opp. 21. That assertion, however, does nothing to explain "which, if any, of the listed risks materialized or how or when they materialized." Mot. 24.

argument as to those statements.  *JMCB*, 336 F. Supp. 3d at 634.

Plaintiffs do not seriously contest that the remaining statements reflected opinions, instead offering only one conclusory sentence that the statements were "determinat[ive], verifiable statement[s] of material fact without any qualifying language."  Opp. 23 (alterations in original) (internal quotation marks omitted).  But Defendants explained why these statements reflected opinions, including because many began with "believe"—"a quintessential opinion word."  Mot. 17-19 (quoting *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 620 F. Supp. 3d 603, 623 (S.D. Tex. 2022)).  Plaintiffs selectively edit other statements to make them seem more concrete. *See, e.g.*, Opp. 23 (omitting "we believe" phrase from quotation of ¶ 142); Opp. 24 (omitting "we expect" phrase from quotation of ¶ 170).

The more pertinent question, as Defendants have explained, is whether the opinion statements are nonetheless actionable.  *See* Mot. 18-19.  Under *Omnicare* and its progeny, an opinion statement is actionable only if "the speaker did not sincerely hold that opinion, or if the plaintiffs allege that '(i) the speaker omit[ted] material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and (ii) those facts conflict with what a reasonable investor would take from the statement itself.'"  *Del. Cnty. Emps. Ret. Sys.*, 620 F. Supp. 3d at 623 (quoting *In re BP p.l.c. Sec. Litig.*, 2016 WL 3090779, at *9 (S.D. Tex. May 31, 2016)).  Plaintiffs do not even try to satisfy this standard.  Nowhere do Plaintiffs argue that Defendants did not genuinely hold the opinions they expressed, and neither the Complaint nor the Opposition identifies omitted material facts that would have rendered the expressions of opinion misleading to a reasonable investor.  *See* Opp. 23-25.  Instead, Plaintiffs copy and paste several statements from the Complaint, asserting that "we believe" statements are sometimes actionable.  *Id.*  Absent any explanation as to why *these* challenged statements were in fact actionable, Plaintiffs have not

satisfied their pleading burden.

### C.       The Opposition Does Not Explain How Puffery Could Be Actionable.

Defendants next identified several challenged statements in the IPO Materials that were inactionable puffery.  Mot. 19-20 (citing and discussing ¶¶ 140, 142-45, 155, 169-70).  Plaintiffs fail to address the statements in paragraphs 143-45, and 169-70, waiving any argument as to those statements.  *JMCB*, 336 F. Supp. 3d at 634.

Plaintiffs' primary argument on puffery appears to be that statements containing a "concrete factual or material misrepresentation" are actionable.  Opp. 26-27.  That is merely the flip side of the general proposition that "'[a]llegations that amount to little more than corporate 'cheerleading' are puffery'" and, as a result, "'are not actionable under federal securities law because no reasonable investor would consider such statements material.'"  *Police & Fire Ret. Sys.*, 777 F. App'x at 730 (quoting *BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d at 789).  The question is on which side of the line the statements at issue fall.

Plaintiffs' argument consists entirely of a single footnote, contending that the statements at issue are not puffery because *other* statements—sometimes in separate paragraphs of the IPO Materials—allegedly included concrete factual or material misrepresentations.  Opp. 26 & n.22.  Whether those separate statements are materially misleading is a separate question (addressed elsewhere in the Motion).  Those separate statements do not transform statements that F45's business model is "attractive" or "has the potential to generate strong returns for franchisees" or that there is a "strong market demand for multi-unit franchise opportunities" into anything more than vague corporate optimism.  *Id.*; ¶¶ 140, 142, 155.  Plaintiffs' cases, by contrast, address situations where the challenged statements *themselves* conveyed concrete information.  *See Okla. Firefighters Pen. & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 220 (5th Cir. 2023) (statements "confirm[ing]" prior projections); *Lorman v. US Unwired, Inc.*, 565 F.3d 228, 249 n.14 (5th Cir.

2009) (statements "discuss[ing] the very specific benefits of the no-deposit programs and Type II affiliations"); *In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d 573, 587 (W.D. Tex. 2022) (statements describing defendant's security policies and practices); *Stone v. Life Partners Holdings, Inc.*, 26 F. Supp. 3d 575, 588-89 (W.D. Tex. 2014) (specific statements about defendant's process for reviewing life insurance policies); *Kurtzman v. Compaq Comput. Corp.*, 2000 WL 34292632, at *36-37 (S.D. Tex. Dec. 12, 2000) (statements regarding prospective "market share gains and revenue growths"). For the actual statements Defendants argue are inactionable puffery, Plaintiffs' sole response is a conclusory assertion that the statements "are concrete and material." Opp. 27.

**D.    The Opposition Largely Ignores Defendants' Argument that the Remaining Challenged Statements in the IPO Documents Were Not False When Made.**

Finally, Defendants explained that several categories of statements in the IPO Materials were not false when made. Mot. 20-25. These included statements regarding F45's results (¶¶ 140, 155, 157), franchisees (¶¶ 158-59, 177), disclosed material weaknesses in financial controls (¶ 185), risk controls (¶ 189), and Items 303 and 105 disclosures. *Id.*

Plaintiffs address only the last category. *See* Opp. 41-42. As for the others, Plaintiffs simply list a number of paragraphs that "Defendants challenge as not particularized enough" but offer no contrary argument, conceding the point. Opp. 15 n.14[5]; *JMCB*, 336 F. Supp. 3d at 634.[6]

And as to the Items 303 and 105 disclosures, Defendants argued that Plaintiffs fail to

---

[5] And even that listing omits paragraphs 140, 155, 158-59, 185, and 189.

[6] It is unclear whether Plaintiffs intended to respond to these categories of statements as part of their argument that "the CW accounts support the falsity of Defendants' statements." Opp. 28-30. But Plaintiffs offer no explanation for how the confidential witness accounts address Defendants' arguments that the challenged statements were not false when made. *Id.* And in any event, the confidential witnesses are not reliable for the reasons explained *infra* at 20-21 and in the Motion (at 23).

identify any "known trends or uncertainties" that Defendants allegedly failed to disclose or explain how Defendants' dozens of pages of relevant risk disclosures were inadequate. Mot. 24 (quoting 17 C.F.R. § 229.3030(b)(2)(ii)). In response, Plaintiffs simply cross-reference their arguments challenging the cautionary language in Defendants' IPO documents and alleging that Defendants acted with scienter. Opp. 42. Those arguments fail for the reasons stated *supra* at 7 and *infra* at 15-22. Ultimately, Plaintiffs have failed to show that any of the relevant statements in the IPO Materials were false when made.

*    *    *

Because Plaintiffs have failed to identify any actionable statement that was false when made, the Complaint fails to plead a Securities Act claim.

## III.    The Opposition Confirms that Plaintiffs Lack Standing for Their Section 12 Claim.

In addition to lacking a material misrepresentation or omission, Plaintiffs' Section 12 claim fails for lack of standing. As demonstrated in the Motion, Section 12 claims are limited to those who purchased shares directly in the offering. (*See* Mot. 25-26.) While Plaintiff Detroit does allege that it purchased shares of F45 stock "directly in the Company's IPO," ¶ 25, Detroit has not sustained any actionable injury because it sold out of its shares of F45 stock before the only alleged harm occurred, as explained *supra* at 2-3. Lead Plaintiff Pledge Capital, by contrast, does not even allege that it purchased shares "directly" in the IPO, but instead alleges only that it purchased shares "*traceable* to the Company's IPO." ¶ 24 (emphasis added). As even a case Plaintiffs cite acknowledges, allegations that the plaintiff made purchases "pursuant or traceable to" the IPO fail to establish Section 12 standing "because it is ambiguous whether the plaintiff is alleging they were a direct or indirect purchaser." *In re Deutsche Bank AG Sec. Litig.*, 2016 WL 4083429, at *35 (S.D.N.Y. July 25, 2016).

Plaintiffs cannot rectify this deficiency. While Plaintiffs offer to amend their complaint to

11

"identify the underwriter from whom Detroit P&F purchased its shares," Opp. 47 n.27, they fail to offer additional factual allegations establishing that Pledge Capital purchased its shares directly in the IPO. *Young v. U.S. Postal Serv.*, 620 F. App'x 241, 245 (5th Cir. 2015) ("Denial of leave to amend is appropriate where there is no indication that amendment would cure the defects in a complaint."). Accordingly, both Plaintiffs lack standing to pursue the Section 12 claim.

### IV.    The Opposition Confirms that the Complaint Fails to Plead Falsity, Scienter, or Loss Causation for Its Exchange Act Claims.

#### A.    The Opposition Confirms that Plaintiffs Fail to Plead Falsity.

In defense of their Exchange Act claims, Plaintiffs largely make the same arguments regarding falsity that they do regarding their Securities Act claims. Opp. 12-27. Thus, for many of the same reasons detailed above, *supra* at 3-11, Plaintiffs fail to establish falsity with respect to their Exchange Act claims. Rather than repeat these same arguments, Defendants focus below on issues unique to the Exchange Act claims.

##### 1.    The Opposition Fails to Rebut Defendants' Argument that the PSLRA Safe Harbor Protects the Forward-Looking Statements.

Like the bespeaks caution doctrine, the PSLRA provides a safe harbor for forward-looking statements that are either (1) made without actual knowledge that they were false or (2) accompanied by meaningful cautionary language. 15 U.S.C. § 78u-5(c)(1)(A)(i)-(B)(i). Defendants identified numerous challenged statements subject to the PSLRA's safe harbor, but Plaintiffs again fail to address most of them. *Compare* Mot. 27, *with* Opp. 15-22 (failing to address ¶¶ 378, 381, 391, 395, 401, 404, 408, 428, 437(b)-(d), 439, 447, 451, 454-55, 457-58, 460). As a result, Plaintiffs have waived any argument for those statements. *JMCB*, 336 F. Supp. 3d at 634.

The remaining statements are all forward looking for the reasons stated *supra* at 6 and in the Motion (at 27-28). Plaintiffs also fail to meaningfully contest that those statements are protected by both prongs of the PSLRA's safe harbor.

*First*, Plaintiffs concede that they must plead that the "forward-looking statement . . . was made with *actual knowledge*" that it was false and misleading but fail to explain how the Complaint satisfies that pleading obligation. *See* Opp. 15-22 (emphasis added). Plaintiffs' attempt to rely on their general scienter arguments fail; they do not even allege severe recklessness. *See infra* at 15-22.

*Second*, Plaintiffs cannot contest that the forward-looking statements were accompanied by meaningful cautionary language. The Company provided detailed descriptions of relevant risks facing the Company, *supra* at 7, and incorporated that cautionary language into the Company's subsequent statements, Mot. 28-29. Plaintiffs object that the consistency of the Company's disclosures in subsequent statements means that the risks identified were not sufficiently specific. Opp. 21-22. But the cases Plaintiffs cite recognize that a change in cautionary language is necessary only where there has been a "significant change in circumstances." *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 107 (D.C. Cir. 2015); *see also Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010); *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004). Plaintiffs do not identify any significant change in circumstances—indeed, they argue that the risks identified had "materialize[d]" "even before the IPO." Opp. 20-21. Plaintiffs thus fail to explain why the Company should have updated its risk disclosures during the year at issue.[7]

---

[7] Plaintiffs also claim that the Company's optimistic forward-looking statements "den[ied] that such risks existed," thereby rendering the cautionary language ineffective. Opp. 21. But the cited statements—general statements of projections and that the Company "remain[s] bullish"—are a far cry from the concrete statements involved in the case Plaintiffs cite. *See Hall v. Rent-A-Ctr., Inc.*, 2017 WL 6398742, at *19 (E.D. Tex. Oct. 19, 2017), *R. & R. adopted*, 2017 WL 6379334 (E.D. Tex. Dec. 14, 2017) (risk disclosures negated by statements that risks "had been resolved" and were "limited"). If, as Plaintiffs suggest, *any* optimistic forward-looking statement necessarily negates the cautionary language that accompanies it, this would render the PSLRA safe harbor meaningless.

**2.    The Opposition Fails to Rebut Defendants' Argument that the Challenged Opinion Statements and Puffery Are Inactionable.**

As with the IPO Materials, Defendants identified numerous opinion statements, Mot. 29-30 (citing ¶¶ 378, 382, 390-91, 395, 402, 404, 407-08, 427, 437(a), (c)-(d), (f), 439, 447, 453, 459-60), and vague statements of corporate optimism, Mot. 29 (citing ¶¶ 368-69, 377, 382-84, 390, 403-04, 406-08, 416, 417(b), 425, 427, 429-30, 437(d)-(e), 446, 449-50, 452, 459-60), that are not actionable. Plaintiffs address in passing only a small portion of those statements.[8] The arguments as to the other statements are therefore waived. *JMCB*, 336 F. Supp. 3d at 634.

In addition to the arguments addressed above, *supra* at 7-10, Plaintiffs address various post-IPO expressions of corporate optimism, but fail to articulate why statements such as "growing at breakneck speed," or "firing on all cylinders," Opp. 27-28, contain "'specific facts'" that "investors and analysts" would "rely on." *Police & Fire Ret. Sys.*, 777 F. App'x at 730 (quoting *In re BP p.l.c.*, 852 F. Supp. 2d at 789). Instead, Plaintiffs seem to suggest that, because the Company was optimistic coming out of the pandemic, subsequent complications from the prolonged effects of COVID-19, including later waves of variants, could not explain the Company's difficulties. Opp. 27-28. But Plaintiffs offer no particularized facts to support their conclusions or that render the vague statements of corporate optimism actionable under the Exchange Act.

**3.    The Opposition Does Not Contest that the Remaining Statements Challenged Under the Exchange Act Were Not False When Made.**

Finally, Plaintiffs again offer no response to Defendants' argument that several categories of statements were not false or otherwise misleading when made, including statements about F45's

---

[8] For opinion statements, Plaintiffs quoted from paragraphs 316, 378, 390(a), 391(b), 395, 402, 404, 407, 427, 437(a), 437(f), 447, 453, and 459. Opp. 24-25. For puffery statements, Plaintiffs discussed only paragraphs 369, 377, 383-84, 390(b), 406, 416, 429, and 446. Opp. 26-28 & n.22.

14

results (¶¶ 369, 379, 384, 400-01, 405, 409, 417, 419, 425-28, 446-47, 450, 454, 456), franchise performance (¶¶ 370, 385, 409, 420, 437(a)), franchise equipment and fees (¶¶ 380, 392, 408, 460), and remediation of the Company's material weaknesses in its internal controls (¶¶ 393, 395, 408, 440-41).  Plaintiffs' failure to respond amounts to waiver.  *JMCB*, 336 F. Supp. 3d at 634.

### B.    The Opposition Confirms that Plaintiffs Fail to Plead Scienter.

The Opposition likewise confirms that Plaintiffs have no cogent scienter theory.  As explained in the Motion, to plead scienter, Plaintiffs must meet the high burden of pleading a cogent and compelling theory of scienter, defined by the Fifth Circuit as an "intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *Southland Sec. Corp. v. INSpire Ins. Sol.*, 365 F.3d 353, 366 (5th Cir. 2004); Mot. 33-34. Plaintiffs' theory of scienter must be supported by particularized factual allegations.  Mot. 33-34. The Opposition only makes Plaintiffs' failure to meet this standard more clear.  The dispositive flaw in Plaintiffs' scienter allegations is that they offer no particularized factual allegations that Mr. Gilchrist or Mr. Payne knew about or deliberately disregarded information that contradicted the challenged statements.  *See* Mot. 33-36.  In failing to allege a single such contradictory fact in their Opposition, Plaintiffs all but concede they have not pleaded actual knowledge or severe recklessness.  *See* Opp. 30-42.

Instead, Plaintiffs misstate Fifth Circuit law in the hope of salvaging their scienter theory. Plaintiffs claim that "whether '[defendants] actually believed [their statements to be true] ***is irrelevant*** to whether [defendants] were severely reckless," Opp. 30 (purportedly quoting *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 686 (5th Cir. 2014) (all alterations by Plaintiffs)).  Plaintiffs' alterations change the meaning of the Fifth Circuit's words in a way that contradicts the law.  Of course it is relevant whether Defendants actually believed their statements

15

to be true.  In *Spitzberg*, the Court held that a possible subjective belief that oil *would eventually be found* in the future did not provide a defense to false statements that oil reserves *had already been discovered*.  *Id.*  Thus, contrary to Plaintiffs' suggestion, the relevant language from *Spitzberg* is the uncontroversial observation that defendants' "subjective beliefs regarding" what may happen in the future are "irrelevant" to whether their ***prior*** statements were "factually false and severely reckless" when made.  *Spitzberg*, 758 F.3d at 686.

Plaintiffs' failure to identify contradictory facts known to Mr. Gilchrist or Mr. Payne at the time of the challenged statements is even more consequential because Plaintiffs concede they did not plead motive.  Opp. 40-41; *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 644 (5th Cir. 2005) (confirming that without motive, "the strength of [Plaintiffs'] circumstantial evidence of scienter must be correspondingly greater").  As Defendants explained, there is one reasonable, non-fraudulent inference:  after COVID-related challenges, the Company believed a big break was coming.  *See* Mot. 34-35.

### 1.     Plaintiffs Identify No Known Contradictory Facts.

The vast majority of the Opposition's arguments fail because Plaintiffs do not identify any fact Mr. Gilchrist or Mr. Payne knew or deliberately disregarded that contradicted a statement when made.  Plaintiffs first argue Mr. Gilchrist and Mr. Payne must have known their statements were false because they had access to unidentified information, controlled F45's messaging, and signed SEC filings.  Opp. 30-32.  Plaintiffs' theory seems to be that *if* there were contradictory information, Corporate Defendants *should* have noticed it.  That is a far cry from particularized allegations of deliberate misconduct.  *See Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535-41 (5th Cir. 2008); *see also Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 187 (5th Cir. 2019) (SOX certifications insufficient to plead scienter unless the signing officer was aware of "glaring accounting irregularities or other red flags") (citation and

16

internal quotation marks omitted).[9]

Plaintiffs next argue that Defendants closely monitored "core metrics." Opp. 33-36. These allegations fail to create an inference of scienter because Plaintiffs can "point to no specific internal or external report available at the time of the alleged misstatements that would contradict them." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002); *see also* Mot. 36, 39 (citing cases). Finally, Plaintiffs advance the circular argument that Mr. Gilchrist and Mr. Payne knew or must have known their statements were false because they "repeatedly" made them. *See* Opp. 36-37.

Instead of alleging any actual fact known to Mr. Gilchrist or Mr. Payne that was contrary to the allegedly false or misleading statements, Plaintiffs offer impermissible conclusory, speculative, and vague allegations. *See, e.g.*, Opp. 30-31 ("[T]hey were either duly informed of the true facts of F45's unsustainable business model and the Company's inability to maintain growth or were reckless in not knowing of these facts."). This defeats Plaintiffs' claims. *See* Mot. 34-36. Plaintiffs fail to meet the very requirement they acknowledge: alleging that "defendants 'knew facts or had access to information suggesting that their public statements were not accurate.'" *See* Opp. 31 (quoting *In re Fleming Cos. Inc. Sec. & Derivative Litig.*, 2004 WL 5278716, at *11 (E.D. Tex. June 16, 2004)). Plaintiffs' other cases illustrate this point by highlighting specific alleged facts known to defendants that contradicted the challenged statements. *See Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 852-53, 854-56 (N.D. Tex. 2018) (plaintiffs offered "specific allegations" that the individual defendants "receiv[ed] regular,

---

[9] *Monroe County*, an out-of-Circuit decision rejecting a motion for reconsideration, is inapposite; there, the sufficiency of factual allegations was not at issue. *Compare Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 333 F. Supp. 3d 1315, 1324-25 (N.D. Ga. 2018), *with Monroe Cnty. Empls.' Ret. Sys. v. S. Co.*, 2018 WL 1558577, at *23 (N.D. Ga. Mar. 29, 2018).

17

detailed information" such as contrary cost figures that undermined challenged statements); *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 757-59, 784 (S.D. Tex. 2012) (scienter alleged for CEO's statements about safety progress where CEO "defined his position" as focused on process safety and admitted to breakdowns in safety plans); *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 371-72 (S.D.N.Y. 2012) (scienter determination hinged on "strong circumstantial evidence" two individuals were receiving information from a third defendant who acted with scienter and was "actively involved in misconduct"); *see also Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 270 (3d Cir. 2009) (scienter allegations sufficient when "what he knew made obvious" the risk that statements would mislead). Plaintiffs make no attempt to explain what specific facts or information either Mr. Gilchrist or Mr. Payne must have known that put them on notice their statements were misleading.

### 2. "Core Operations" Allegations Do Not Salvage Plaintiffs' Scienter Argument.

Plaintiffs' scienter argument continues to rely heavily on the senior positions held by Mr. Gilchrist and Mr. Payne at F45. Opp. 30-32, 39. However, as Defendants have argued and as Plaintiffs concede, the Individual Defendants' roles alone are not sufficient to support a strong inference of scienter. *See* Opp. 39; *see also* Mot. 36-37. In an attempt to bolster a flawed argument, Plaintiffs unsuccessfully turn to a "core operations" theory. Opp. 40. However, Plaintiffs again fail to state sufficiently particularized allegations and misapprehend the relevant case law.

As with their other scienter arguments, *see supra* at 16-18, Plaintiffs apply circular logic, claiming that, because franchises and studios were "critical to F45's core operations," Mr. Gilchrist and Mr. Payne must have known their statements were misleading. Opp. 32. Yet again, Plaintiffs fail to identify *any specific fact* known to Mr. Gilchrist or Mr. Payne that contradicted their public statements. *Id.* Plaintiffs' cited cases, both involving specific allegations of known problematic

18

facts, show that more is required. *See In re Netsolve, Inc. Sec. Litig.*, 185 F. Supp. 2d 684, 691, 693, 697 (W.D. Tex. 2001) (denying motion to dismiss where complaint identified contradictory sales figures known to individual defendants); *see also Holzwasser v. Staktek Holdings, Inc.*, 2006 WL 897746, at *4 (W.D. Tex. Mar. 30, 2006) (denying motion to dismiss where DRAM chip shortage was known and defendants "expressly stated that the supply of DRAM chips was critical" to the "core business").

Plaintiffs rely heavily and misguidedly on *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195 (5th Cir. 2023). *See* Opp. 33, 40. However, as the Fifth Circuit explained in *Six Flags*, there are actually four "[r]elevant factors." *Id.* at 219. Plaintiffs only engage with the second factor—"whether the transaction at issue was critical to the company's continued vitality," *id.* (citation and internal quotation marks omitted)—claiming that, because "selling franchises and opening studios . . . was critical to F45's ability to survive," it "strains credibility . . . that Gilchrist and Payne were in the dark on matters of utmost importance to F45." Opp. 33. This argument misses the mark and is in stark contrast to *Six Flags*, where the plaintiffs specifically alleged that an individual defendant was "directly rela[y]ed" information undermining his public statements. *Six Flags*, 58 F.4th at 216. Information contradicting the defendants' statements that park construction was continuing in *Six Flags* included (1) presentations showing "lack of infrastructure, lack of construction workers onsite, and lack of progress" and (2) "'master' reports containing information about the lack of construction progress." *Id.* at 216. Plaintiffs fail to identify any such information contradicting the challenged statements here.

Plaintiffs brush aside as a "strawman" Defendants' arguments relating to the two other "core operations" factors (company size and internally inconsistent statements). Opp. 40. But Plaintiffs do not address, and thereby do not dispute, the fact that F45's large size "undermines the

19

'core operations' theory." *Six Flags*, 58 F.4th at 219; *see* Mot. 37.  Likewise, Plaintiffs do not

address at all their failure to show "internally inconsistent statements," thereby conceding they

have not "identif[ied] any [contradictory] fact that would have been 'readily apparent' to Mr.

Gilchrist or Mr. Payne."  Mot. 37 (citing *Alaska Elec. Pension Fund v. Flotek*, 915 F.3d 975, 982-

86 (5th Cir. 2019)).  Plaintiffs' conclusory observation that the challenged statements "involved

'core operations'" is insufficient to plead scienter.  Opp. 40 (citation and internal quotation marks

omitted); *see also Flotek*, 915 F.3d at 985-86.

### 3.    The Opposition Establishes No Connection Between the Confidential Witness Allegations and Mr. Gilchrist, Mr. Payne, or the Challenged Statements.

Plaintiffs do not dispute both that (1) no confidential witness is alleged to have contacted

or otherwise interacted with Mr. Gilchrist or Mr. Payne and (2) no confidential witness allegation

actually undermines any challenged statement or otherwise creates a strong inference Mr. Gilchrist

or Mr. Payne knew or should have known a statement was false when made.  *See* Mot. 38-39.

Instead, Plaintiffs cite *Budde*, an unpublished decision from a sister district, for the proposition

that "[i]t is well-established . . . that CWs need not have direct communication with defendants to

be credited."  Opp. 38 (citing *Budde v. Glob. Power Equip. Grp., Inc.*, 2018 WL 4623108, at *4

(N.D. Tex. Sept. 26, 2018)).  But the *Budde* court noted at the outset that "[a]llegations from CWs

must be discounted," *Budde*, 2018 WL 4623108, at *4, and *Budde* was decided before the Fifth

Circuit ruled in *Pier 1* that confidential witnesses "who do not relate any interaction with [the

individual defendants] . . . must [be] discount[ed]."  *Mun. Emps.' Ret. Sys. of Michigan v. Pier 1

Imports, Inc.*, 935 F.3d 424, 434 (5th Cir. 2019).

More importantly, Plaintiffs fail to identify any confidential witness allegation that moves

the needle on scienter.  Plaintiffs rely heavily on one allegation each from CW-2 and CW-3.  Opp.

38.  But those allegations are opinions formed without personal knowledge, and "such opinions

add nothing to scienter analysis." *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 862 (S.D. Tex. 2016). CW-2 was the "Owner and Operator" of only a single "F45 franchise in the United Kingdom," ¶ 87, yet he opines that "F45 does not conduct due diligence for potential studio locations." ¶ 151. Plaintiffs do not explain how a single U.K. franchise owner would have knowledge of due diligence for *all* studio openings. CW-2's opinion is pure speculation, which cannot be credited on a motion to dismiss. *See Shaw*, 537 F.3d at 535. Similarly, CW-3, a "contract employee in the role of Accounts Receivable Manager," ¶ 88, claims "it was his perception that 'over 50 percent' of F45 franchises were delinquent." ¶ 181. This "perception"— which Plaintiffs do not allege was shared by either Mr. Gilchrist or Mr. Payne—is "far too indefinite to add to any inference of scienter," and should likewise be ignored. *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 720 (W.D. Tex. 2010). The remaining confidential witness allegations similarly fail to undercut any challenged statement.[10] *See* Mot. 38-39.

In short, Plaintiffs' "conclusory, non-specific [confidential witness] allegations are the type of information this Court has previously described as 'so general and ambiguous as to be useless.'" *KB Partners I, L.P. v. Pain Therapeutics, Inc.*, 2012 WL 12850252, at *9 (W.D. Tex. Sept. 26, 2012) (quoting *Dell¸* 591 F. Supp. 2d at 895)). The confidential witnesses do not support a strong inference of scienter.

### 4.      Defendants' Departures from F45 Do Not Revive Plaintiffs' Claim.

Grasping at straws, Plaintiffs point to the departures of Mr. Gilchrist and Mr. Payne from F45 in, respectively, June and November 2022, but they offer no explanation as to how these

---

[10] Plaintiffs point to the allegations of CW-4 and CW-5 as evidence of "Gilchrist's personal involvement" in franchise promotions and the All-Star Event. Opp. 38. But Plaintiffs do not explain how these allegations make it more likely that Mr. Gilchrist knew a statement was false or misleading when made. They are silent about Mr. Payne.

departures support an inference of scienter. Opp. 39. "Multiple Fifth Circuit decisions suggest resignations have little implication on the scienter analysis." *ArthroCare Corp.* 726 F. Supp. 2d at 724-25; *see also Six Flags*, 58 F.4th at 219 n.19. Because Plaintiffs do not even attempt to connect Mr. Gilchrist's or Mr. Payne's departure with the challenged statements, "[n]either [departure] has any scienter implications." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 434 (5th Cir. 2002).[11] Plaintiffs' cases are similarly unpersuasive.[12] The departures of Mr. Gilchrist and Mr. Payne do not support an inference of scienter in any way, let alone create one.

### C.    The Opposition Confirms that Plaintiffs Fail to Plead Loss Causation.

Plaintiffs repeat the Complaint's loss causation allegations and refer the Court to the legal standard, but they fail to articulate how the July 26, 2022 "Strategic Update" and Form 8-K (together, the "July 26 Update") constitute a corrective disclosure. Opp. 43. As Plaintiffs emphasize, "this Court has observed, Plaintiffs must ***explicitly*** allege a corrective disclosure—***i.e., a statement that corrects a previous misrepresentation or discloses a prior omission***—that, when disclosed, negatively affected the value of the security." Opp. 42-43 (citation and internal quotation marks omitted) (emphases added). Absent from the Complaint and Opposition, however, is any explanation of which alleged misstatements the July 26 Update corrected or how the Update revealed those statements as false when made. *See In re Dell Inc., Sec. Litig.*, 591 F.

---

[11] Plaintiffs claim Mr. Payne left "near the end of the Class Period." Opp. 39. Not so. Mr. Payne left the Company on November 21, 2022, nearly four months after the end of the Class Period (July 26, 2022). *See* ¶ 521.

[12] In *Hall*, executive departures supported a scienter inference because the Company "acknowledg[ed]" that "operational challenges" were "exacerbated" by the executives. *Hall v. Rent-A-Center, Inc.*, 2017 WL 6398742, at *34 (E.D. Tex. Oct. 19, 2017). Here, there are no such allegations. And in *Temple-Inland*, the court held that an executive departure did "not contribute to a strong inference of scienter" where the company's "gradual decline . . . was the impetus" for the resignation. *N. Port Firefighters' Pension--Loc. Option Plan v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 754 (N.D. Tex. 2013).

Supp. 2d 877, 907 (W.D. Tex. 2008).

Plaintiffs argue that the July 26 Update "revealed the falsity of Defendants' prior statements," and "a[s] a result of these revelations," the Company's stock price dropped.  Opp. 43. But their examples belie the argument.  *Id.*  The first three examples are *updated projections* for 2022 *year-end* (which was still five months off).  *See id.*  These are not revelations that earlier statements were false, because they "did not reveal that defendants' . . . earnings guidance and/or sales predictions were false or misleading when made."  *See Naglich v. Applied Optoelectronics*, 436 F. Supp. 3d 954, 979 (S.D. Tex. 2020).  Plaintiffs do not even attempt to explain how the remaining examples—termination of a line of credit for franchisees, a reduction in workforce, a change in CEO, and a bonus for the CFO—reveal that a challenged statement was false.  At most Plaintiffs make the "insufficient" allegation that the challenged statements "touche[d] upon a later economic loss."  *See In re Cassava Scis., Inc. Sec. Litig.*, 2023 WL 3442087, at *11 (W.D. Tex. May 11, 2023) (citation and internal quotation marks omitted)).[13]

## V.      The Opposition Confirms the Complaint Fails to Establish Control Person Liability.

Plaintiffs concede that they must first "allege a primary violation" of the securities laws before any of the Defendants can be held liable as a "control person" under either Section 15 of the Securities Act or Section 20(a) of the Exchange Act.  Opp. 49.  For the reasons discussed above and in Defendants' Motion, the Complaint fails to allege a primary violation, and accordingly any claim of control person liability necessarily fails.

The Opposition also confirms that the Complaint lacks sufficient allegations of control by MWIG, KLIM, and the Minority Directors.  Plaintiffs characterize the standard for control person

---

[13] In a footnote, Plaintiffs claim that this is a "factual inquiry inappropriate for determination at the pleadings stage."  Opp. 44 n.25.  Not so.  Because Plaintiffs do not plead a corrective disclosure, they fail to plead loss causation as a matter of law.

liability as a low bar, Opp. 49,[14] but acknowledge that they must, at a minimum, plead facts showing that MWIG, KLIM, and the Minority Directors exercised "direct[] or indirect[] control[]" over the Company.  Opp. 50 (alteration in original) (internal quotation marks omitted).  But Plaintiffs have not alleged *any* facts showing MWIG and KLIM exerted that control.  *See id.* Instead, Plaintiffs cite a single allegation in the Complaint regarding the "Director Defendants," *id.*, which do not include MWIG or KLIM, ¶¶ 30-35 (listing MWIG and KLIM as "Controlling Entity Defendants," not "Director Defendants").  Plaintiffs have therefore waived any argument that MWIG and KLIM exercised sufficient control over the Company to face control person liability.  *JMCB*, 336 F. Supp. 3d at 634.

Plaintiffs' allegations also fail as to the Minority Directors.  Citing *In re SolarWinds Corp. Securities Litigation*, 595 F. Supp. 3d 573 (W.D. Tex. 2022), Plaintiffs argue that they need only allege that "the shareholders worked together" and "acted jointly to exercise control," which they claim to have done with the conclusory statement that the Minority Directors "participated in" preparing the Registration Statement and in the making the challenged statements  Opp. 50.  But *SolarWinds* makes clear that "bare allegations that shareholders acted jointly . . . are not sufficient." 595 F. Supp. 3d at 593.  Indeed, the plaintiffs in *SolarWinds* alleged specific activities that the shareholders engaged in to exert joint control over the company, such as "'buying and taking the Company private together in 2016—each paying $1.3 billion for their respective halves,' 'taking the Company public together again in 2018,' 'retaining equal amounts of shares of the Company,'

---

[14] Plaintiffs misleadingly suggest that "[t]he Fifth Circuit" applies a "relaxed and lenient pleading standard" for control person allegations.  Opp. 49.  But the case Plaintiffs cite makes clear that "[t]here are no United States Supreme Court or *Fifth Circuit* decisions establishing the pleading requirements for" control person liability.  *In re Cobalt Int'l Energy, Inc.*, 2016 WL 215476, at *11 (S.D. Tex. Jan. 19, 2016) (emphasis added).  In any event, regardless of the pleading standard Plaintiffs fail to allege *any* facts showing that MWIG, KLIM, and the Minority Directors exercised the requisite control over the Company to subject them to control person liability.

24

and selling 'their SolarWinds shares after the 2018 IPO . . . together, on the same day, and in nearly identical amounts.'" *Id.* at 594. In short, the plaintiffs in *SolarWinds* alleged "*how* the shareholders worked together," not merely *that* they worked together. *Id.* at 593 (emphasis in original).

Such allegations are notably absent here. That the Minority Directors were members of the multi-member board that approved F45's Registration Statement and other public filings does not alone "raise an inference of control over that entity." *In re Glob. Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, at *13 (S.D.N.Y. Aug. 8, 2005). Plaintiffs plead no other facts demonstrating that the Minority Directors had the power to dictate the contents of the Registration Statement or F45's other public filings, Mot. 44, and thus fail to plead the Minority Directors are control persons.

## VI.    The Court Should Dismiss the Complaint With Prejudice.

The Court should reject Plaintiffs' passing request for leave to amend. It is well settled that "[d]enial of leave to amend is appropriate where there is no indication that amendment would cure the defects in a complaint." *Young*, 620 F. App'x at 245. Here, Plaintiffs merely "request leave to amend" the Complaint "to comply with the Court's ruling" if Defendants' motion is granted. Opp. 50. Such a "cursory mention of a request to amend" in an opposition to a motion to dismiss" is insufficient because it does not "appris[e]" the Court "of any facts that [the plaintiff] would have added" to "sufficiently stat[e] a claim." *Garrett v. Celanese Corp.*, 102 F. App'x 387, 388 (5th Cir. 2004); *see also McKinney v. Irving Ind. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002); *E-Dealer*, 2021 WL 2115299, at *9. The Court should dismiss the Complaint with prejudice.

**CONCLUSION**

For these reasons, the Court should dismiss Plaintiffs' Amended Class Action Complaint in its entirety with prejudice.

25

Dated:  November 20, 2023

Respectfully submitted,

/s/ Shahzeb Lari
**HUGHES HUBBARD & REED LLP**
Kevin T. Abikoff
Katherine Taylor (*pro hac vice*)
1775 I Street, N.W., Ste 6th Floor
Washington, DC 20006
Tel: (202) 741-4945
katherine.taylor@hugheshubbard.com
kevin.abikoff@hugheshubbard.com

Shahzeb Lari (*pro hac vice*)
Terence Healy (*pro hac vice*)
One Battery Park Plaza
New York, NY 10004
Tel: (212) 837-6267
shahzeb.lari@hugheshubbard.com
terence.healy@hugheshubbard.com

*Counsel for Defendant Adam Gilchrist*

/s/ Michelle A. Reed
**AKIN GUMP STRAUSS HAUER &
FELD LLP**
Michelle A. Reed
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Tel: (214) 969-2713
mreed@akingump.com

Stephen M. Baldini
One Bryant Park, 44th Floor
New York, NY 10036
Tel: (212) 872-1062
sbaldini@akingump.com

*Counsel for Defendants Darren Richman,
Mark Wahlberg, Michael Raymond,
MWIG LLC, and Kennedy Lewis
Investment Management LLC*

/s/ Gregg J. Costa
**GIBSON, DUNN & CRUTCHER LLP**
Gregg J. Costa
811 Main Street Suite 3000
Houston, TX 77002
Tel: (346) 718-6600
Fax (346) 718-6620
gcosta@gibsondunn.com

Craig Varnen (*pro hac vice*)
333 South Grand Avenue, 46th Floor
Los Angeles, CA 90071
Tel: (213) 229-7922
Fax: (213) 229-6922
cvarnen@gibsondunn.com

Lissa Percopo (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 887-3770
Fax: (202) 530-9528
lpercopo@gibsondunn.com

*Counsel for Defendant F45 Training Holdings, Inc.*

/s/ Danny S. Ashby
**O'MELVENY & MYERS LLP**
Danny S. Ashby
2501 North Harwood Street, Suite 1700
Dallas, TX 75201
Tel: (972) 360-1900
dashby@omm.com

Jonathan Rosenberg (*pro hac vice*)
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
jrosenberg@omm.com

*Counsel for the Underwriter Defendants*

/s/ Linda Imes

**SPEARS & IMES LLP**
Linda Imes (*pro hac vice*)
Rebecca Orel (*pro hac vice*)
767 Third Avenue
New York, NY 10017
Phone: (212) 213-6696
limes@spearsimes.com
rorel@spearsimes.com


/s/ Gregory Godkin
**RMWBH PC**
Gregory Godkin
317 Grace Lane
Austin, TX 78746
(512) 279-7344
ggodkin@rmwbh.com

*Counsel for Defendant Christopher Payne*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2023, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

/s/ Gregg J. Costa
Gregg J. Costa

*Attorney for Defendant F45 Training Holdings, Inc.*