**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | § | |
|---|---|---|
| *In re F45 Training Holdings, Inc.* | § | CASE NO. 1:22-CV-01291-DAE |
| *Securities Litigation* | § | |
| | § | CLASS ACTION |
| | § | |
| | § | |
| | § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ...........................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.    The Opposition Fails to Establish that Plaintiff Detroit Has Standing. ...................................2

II.   The Opposition Confirms that Plaintiffs Fail to Allege an Actionable Misstatement
      Under the Securities Act. ..........................................................................................................3

      A.  The Opposition Does Not Refute Defendants' Argument that F45's Projections
          Are Protected Under the Bespeaks Caution Doctrine. ........................................................5

      B.  The Opposition Fails to Explain How the Opinion Statements in the IPO
          Materials Are Actionable. ...................................................................................................7

      C.  The Opposition Does Not Explain How Puffery Could Be Actionable. ............................8

      D.  The Opposition Largely Ignores Defendants' Argument that the Remaining
          Challenged Statements in the IPO Documents Were Not False When Made. ....................9

III.  The Opposition Confirms that Plaintiffs Lack Standing for Their Section 12 Claim. ............10

IV.   The Opposition Confirms that the SAC Fails to Plead Falsity, Scienter, or Loss
      Causation for Its Exchange Act Claims. ..................................................................................11

      A.  The Opposition Confirms that Plaintiffs Fail to Plead Falsity. ..........................................11

          1.  The Opposition Fails to Rebut Defendants' Argument that the PSLRA Safe
              Harbor Protects the Forward-Looking Statements. .....................................................11

          2.  The Opposition Fails to Rebut Defendants' Argument that the Challenged
              Opinion Statements and Puffery Are Inactionable. ....................................................13

          3.  The Opposition Fails to Show that the Remaining Statements Challenged
              Under the Exchange Act Were False When Made. .....................................................14

      B.  The Opposition Confirms that Plaintiffs Fail to Plead Scienter. .......................................14

          1.  Plaintiffs Identify No Known Contradictory Facts. ....................................................15

          2.  "Core Operations" Cannot Salvage Plaintiffs' Scienter Argument. ...........................18

          3.  The Opposition Identifies No Connection Between the CW Allegations and
              Mr. Gilchrist, Mr. Payne, or the Challenged Statements. ...........................................19

          4.  The Restatement Allegations Do Not Create an Inference of Scienter. ......................21

          5.  Defendants' Departures from F45 Do Not Revive Plaintiffs' Claim. .........................22

      C.  The Opposition Confirms that Plaintiffs Fail to Plead Loss Causation. .............................23

V.    The Opposition Confirms the SAC Fails to Establish Control Person Liability. .....................24

VI.   The Court Should Dismiss the SAC With Prejudice. ...............................................................25

**TABLE OF CONTENTS**
*(continued)*

Page

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrams v. Baker Hughes Inc.*,
   292 F.3d 424 (5th Cir. 2002) ...............................................................................16, 21, 22

*In re Alamosa Holdings, Inc.*,
   382 F. Supp. 2d 832 (N.D. Tex. 2005) ...............................................................................3

*Alaska Elec. Pension Fund v. Asar*,
   768 F. App'x 175 (5th Cir. 2019) ....................................................................................16

*Alaska Elec. Pension Fund v. Flotek*,
   915 F.3d 975 (5th Cir. 2019) ...........................................................................................19

*In re ArthroCare Corp. Sec. Litig.*,
   726 F. Supp. 2d 696 (W.D. Tex. 2010)........................................................................21, 22

*Asher v. Baxter Int'l Inc.*,
   377 F.3d 727 (7th Cir. 2004) ...........................................................................................12

*Bo Shen v. Exela Techs., Inc.*,
   2021 WL 2589584 (N.D. Tex. June 24, 2021) .................................................................22

*In re BP p.l.c. Sec. Litig.*,
   843 F. Supp. 2d 712 (S.D. Tex. 2012) .............................................................................17

*In re BP p.l.c. Sec. Litig.*,
   852 F. Supp. 2d 767 (S.D. Tex. 2012) .........................................................................8, 13

*In re BP p.l.c. Sec. Litig.*,
   2016 WL 3090779 (S.D. Tex. May 31, 2016).....................................................................8

*Braun v. Eagle Rock Energy Partners, L.P.*,
   223 F. Supp. 3d 644 (S.D. Tex. 2016) ............................................................................6, 7

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
   665 F. Supp. 2d 404 (S.D.N.Y. 2009)................................................................................3

*Brody v. Zix Corp.*,
   2006 WL 2739352 (N.D. Tex. Sept. 26, 2006)................................................................18

*Budde v. Glob. Power Equip. Grp., Inc.*,
   2017 WL 6621540 (N.D. Tex. Dec. 27, 2017) .................................................................22

*Budde v. Glob. Power Equip. Grp., Inc.*,
   2018 WL 4623108 (N.D. Tex. Sept. 26, 2018).................................................................20

*In re Cassava Scis., Inc. Sec. Litig.*,
   2023 WL 3442087 (W.D. Tex. May 11, 2023) .................................................................24

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
   875 F. Supp. 2d 359 (S.D.N.Y. 2012)...............................................................................17

**TABLE OF AUTHORITIES**

*(continued)*

Page(s)

*Davidco Invs., LLC v. Anchor Glass Container Corp.*,
   2006 WL 547989 (M.D. Fla. Mar. 6, 2006) .................................................................3

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
   620 F. Supp. 3d 603 (S.D. Tex. 2022) ........................................................................7

*In re Dell Inc., Sec. Litig.*,
   591 F. Supp. 2d 877 (W.D. Tex. 2008)...............................................................21, 23

*In re Deutsche Bank AG Sec. Litig.*,
   2016 WL 4083429 (S.D.N.Y. July 25, 2016) ...........................................................11

*In re Dynergy, Inc. Sec. Litig.*,
   339 F. Supp. 2d 804 (S.D. Tex. 2004) ........................................................................3

*E-Dealer Direct v. Bank of Am., N.A.*,
   2021 WL 2115299 (W.D. Tex. May 25, 2021) ...........................................................2

*In re Fleming Cos. Inc. Sec. & Derivative Litig.*,
   2004 WL 5278716 (E.D. Tex. June 16, 2004)...........................................................17

*Garrett v. Celanese Corp.*,
   102 F. App'x 387 (5th Cir. 2004) ..............................................................................25

*In re Glob. Crossing, Ltd. Sec. Litig.*,
   2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005).............................................................25

*Hall v. Rent-A-Ctr., Inc.*,
   2017 WL 6398742 (E.D. Tex. Oct. 19, 2017), *R. & R. adopted*, 2017 WL
   6379334 (E.D. Tex. Dec. 14, 2017)......................................................................13, 23

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
   791 F.3d 90 (D.C. Cir. 2015).....................................................................................12

*Holzwasser v. Staktek Holdings, Inc.*,
   2006 WL 897746 (W.D. Tex. Mar. 30, 2006) ..........................................................18

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
   537 F.3d 527 (5th Cir. 2008) ...............................................................................16, 21

*Institutional Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009)......................................................................................17

*JMCB, LLC v. Bd. of Com. & Indus.*,
   336 F. Supp. 3d 620 (M.D. La. 2018)............................................................ *passim*

*KB Partners I, L.P. v. Pain Therapeutics, Inc.*,
   2012 WL 12850252 (W.D. Tex. Sept. 26, 2012)......................................................21

*In re Key Energy Servs., Inc. Sec. Litig.*,
   166 F. Supp. 3d 822 (S.D. Tex. 2016) ......................................................................20

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Kurtzman v. Compaq Comput. Corp.*,
  2000 WL 34292632 (S.D. Tex. Dec. 12, 2000) ........................................................................9

*Langan v. Abbott*,
  518 F. Supp. 3d 948 (W.D. Tex. 2021) ...................................................................................25

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
  810 F.3d 951 (5th Cir. 2016) ..................................................................................................15

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ....................................................................................................9

*Mei Pang v. Levitt*,
  2023 WL 11643704 (W.D. Tex. Dec. 20, 2023) ........................................................15, 19, 23

*Monroe Cnty. Empls.' Ret. Sys. v. S. Co.*,
  2018 WL 1558577 (N.D. Ga. Mar. 29, 2018) .........................................................................16

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
  333 F. Supp. 3d 1315 (N.D. Ga. 2018) ...................................................................................16

*Mun. Emps.' Ret. Sys. of Michigan v. Pier 1 Imports, Inc.*,
  935 F.3d 424 (5th Cir. 2019) ..................................................................................................20

*N. Port Firefighters' Pension--Loc. Option Plan v. Temple-Inland, Inc.*,
  936 F. Supp. 2d 722 (N.D. Tex. 2013) ...................................................................................23

*Naglich v. Applied Optoelectronics*,
  436 F. Supp. 3d 954 (S.D. Tex. 2020) ....................................................................................23

*In re Netsolve, Inc. Sec. Litig.*,
  185 F. Supp. 2d 684 (W.D. Tex. 2001) ...................................................................................18

*Nykredit Portefolje Admin. A/S v. Propetro Holding Corp.*,
  2021 WL 9037758 (W.D. Tex. Sept. 13, 2021) .......................................................................17

*Okla. Firefighters Pen. & Ret. Sys. v. Six Flags Ent. Corp.*,
  58 F.4th 195 (5th Cir. 2023) .................................................................................9, 18, 19, 22

*Parmelee v. Santander Consumer USA Holdings, Inc.*,
  2018 WL 276338 (N.D. Tex. Jan. 3, 2018) .............................................................................24

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
  777 F. App'x 726 (5th Cir. 2019) ....................................................................................4, 8, 13

*R2 Invs. LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) ..................................................................................................15

*Ramirez v. Exxon Mobil Corp.*,
  334 F. Supp. 3d 832 (N.D. Tex. 2018) ...................................................................................17

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) ..................................................................................7

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*,
   2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ...........................................................3

*Singh v. 21Vianet Grp., Inc.*,
   2017 WL 4322483 (E.D. Tex. Sept. 13, 2017) .......................................................17

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010)...................................................................................12

*In re SolarWinds Corp. Sec. Litig.*,
   595 F. Supp. 3d 573 (W.D. Tex. 2022).........................................................9, 24, 25

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) .................................................................................14

*Stone v. Life Partners Holdings, Inc.*,
   26 F. Supp. 3d 575 (W.D. Tex. 2014)........................................................................9

*United States v. Reagan*,
   596 F.3d 251 (5th Cir. 2010) ...................................................................................2

*In re Venator Materials PLC Sec. Litig.*,
   547 F. Supp. 3d 624 (S.D. Tex. 2021) .......................................................................4

*In re WRT Energy Sec. Litig.*,
   2005 WL 2088406 (S.D.N.Y. Aug. 30, 2005)...........................................................3

*Young v. U.S. Postal Serv.*,
   620 F. App'x 241 (5th Cir. 2015) ............................................................................25

**Statutes**

15 U.S.C. § 78u-5(c)(1)(A-B).........................................................................................11

**INTRODUCTION**

Plaintiffs' SAC throws 209 pages of allegations at the wall in the hopes that something might stick; the Opposition confirms nothing does.  Rather than engage with Defendants' arguments, Plaintiffs regurgitate the SAC's conclusory assertions—sometimes copying and pasting *pages* of the SAC with little-to-no analysis.  The Opposition's Cliffs-Notes version of the SAC cannot mask Plaintiffs' failure to plead their claims with the factual particularity required by Rule 9(b) and the Private Securities Litigation Reform Act.  Indeed, the Opposition does not even engage with many of Defendants' arguments, thereby waiving any response.  When Plaintiffs do respond, they fail to rebut Defendants' arguments, set forth in detail in the Motion, including that the challenged statements are inactionable predictive statements, opinions, or puffery, or that they were true when made.  Nor can they salvage the SAC's failure to plead a strong inference of scienter or plausible theory of loss causation for the Exchange Act claims.

The SAC should be dismissed for the following four reasons.

*First*, Plaintiffs lack standing.  Detroit does not have standing to bring any claim because it has incurred no actionable injury; as Plaintiffs themselves allege, Detroit sold all of its F45 shares before the only harm Plaintiffs claim occurred.  And Lead Plaintiff Pledge Capital fails to plead standing for its Section 12 claim, because there is no allegation that Lead Plaintiff purchased its F45 shares directly in the Company's IPO.

*Second*, Plaintiffs fail to allege an actionable misleading statement with respect to any claim.  The Opposition fails to respond to most of Defendants' arguments, thus conceding them. When Plaintiffs do respond, they fail to show how the challenged statements are actionable. Plaintiffs' SAC and Opposition focus intently on F45's Restatement, but Plaintiffs completely ignore the fact that the Restatement had *nothing* to do with the IPO Materials or the vast majority of the post-IPO statements challenged in the Exchange Act Claims.  A company's responsible

1

decision to correct errors in its financials does not lower Plaintiffs' pleading burden.

*Third*, Plaintiffs' Exchange Act claims fail thrice over. The SAC fails (i) to plead an actionable misstatement for the same reasons noted above for Plaintiffs' Securities Act claims; (ii) to satisfy the PSLRA's high standard for pleading a strong inference of scienter, as Plaintiffs do not identify a single fact known or obvious to any Corporate Defendant that contradicted a challenged statement when made; and (iii) to articulate a cognizable theory of loss causation based on the single corrective disclosure alleged in the SAC.

*Finally*, because Plaintiffs' primary claims fail, their secondary claims of control person liability fail as well. In addition, Plaintiffs fail to explain how the SAC pleads that MWIG, KLIM, and the Minority Directors exercised the necessary degree of control over the Company.

Plaintiffs cannot evade dismissal by hiding behind the size of their SAC, and the Court should dismiss it in full. Furthermore, because Plaintiffs have already amended the complaint twice, the Court should reject their (at best, perfunctory) request for a third bite at the apple, and the dismissal should be with prejudice.

## **ARGUMENT**

### I.    **The Opposition Fails to Establish that Plaintiff Detroit Has Standing.**

Plaintiffs do not dispute that plaintiff Detroit lacks standing to pursue the SAC's Exchange Act claims. *See* Opp. 44-46.[1] Instead, Plaintiffs insist that Detroit has standing to pursue the SAC's Securities Act claims because resolving whether it sustained any conceivable damages— so-called "negative causation"—is "premature at this stage in the litigation." Opp. 45. But as

---

[1] Any such argument is therefore waived. *See JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("[F]ailure to brief an argument in the district court waives that argument in that court." (citing, *inter alia*, *United States v. Reagan*, 596 F.3d 251, 254-55 (5th Cir. 2010))); *accord E-Dealer Direct v. Bank of Am., N.A.*, 2021 WL 2115299, at \*9 (W.D. Tex. May 25, 2021) (failure "to respond to Defendant's arguments" in motion to dismiss constitutes waiver).

Plaintiffs must concede, a complaint can be dismissed on negative causation grounds where the complaint makes clear that "'no relief could be granted.'"  *Id.* at 46 (quoting *In re Dynergy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 869 (S.D. Tex. 2004)); *see also In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 865 (N.D. Tex. 2005) (dismissal appropriate where negative causation "apparent on the face of a complaint").  Plaintiffs argue negative causation applies where "plaintiffs sold their shares at a profit," Opp. 46, but courts routinely dismiss claims where a plaintiff adopted a corrective disclosure theory of causation and sold its shares before the alleged correction, *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, 2013 WL 944777, at *9 (S.D.N.Y. Mar. 12, 2013).[2]

That is precisely the case here.  Plaintiffs themselves defined their harm as a stock price drop following the alleged July 26, 2022 corrective disclosure.  ¶¶ 11-12, 81-82, 205-06, 510-512, 571.  By its own admission, plaintiff Detroit was unaffected by that stock drop because it had sold the last of its F45 shares before July 26, 2022.  Compl. Ex. 1, at Ex. A.  The SAC thus refutes any claim that Detroit sustained a cognizable harm from the alleged misconduct, Mot. 13-14, and the Court should therefore dismiss Detroit from the case.

## II.   The Opposition Confirms that Plaintiffs Fail to Allege an Actionable Misstatement Under the Securities Act.

As explained in the Motion (at 12-13), Plaintiffs' Securities Act claims are subject to Rule 9(b)'s heightened pleading standards because the claims are "based on the same underlying facts and allegations as [the SAC's] securities fraud claim under the Exchange Act."  *Police & Fire Ret.*

---

[2] *See, e.g.*, *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 419 (S.D.N.Y. 2009); *Davidco Invs., LLC v. Anchor Glass Container Corp.*, 2006 WL 547989, at *25 (M.D. Fla. Mar. 6, 2006).  Plaintiffs do not even cite, much less rebut, these cases.  Rather, Plaintiffs cite outlier cases that fail to address the reasoning of these later decisions.  *See In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 869-70 (S.D. Tex. 2004); *In re WRT Energy Sec. Litig.*, 2005 WL 2088406, at *1-2 (S.D.N.Y. Aug. 30, 2005).  The Court should follow the weight of authority and conclude that plaintiff Detroit has no actionable injury.

3

*Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 730 (5th Cir. 2019). Plaintiffs' only response is that they "specifically alleged that their Securities Act claims do not sound in fraud." Opp. 48 (citing ¶¶ 142-43). This is a concession that all they plead is a "[b]oilerplate disavowal" that is patently insufficient. *See In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 669 (S.D. Tex. 2021); *see also* Opp. 15 n.11 ("Statements in the IPO Materials are alleged to be false and misleading under both Section 11 and Section 10(b)."); Opp. 49 (limiting argument on merits of Securities Act claims to a single paragraph that cross-references Exchange Act arguments). Because Plaintiffs' "allegations under both the Securities Act and the Exchange Act are essentially identical," "Rule 9(b) applies." *Police & Fire Ret. Sys.*, 777 F. App'x at 730.

The SAC's allegations fall far short of pleading an actionable misstatement with particularity. The Opposition faults *Defendants* for not stating with particularity their arguments against each challenged statement in the 200-plus-page SAC. For example, Plaintiffs complain that "Defendants cite to a laundry list of [SAC] paragraphs" without demonstrating why "specific statement[s]" or "portion[s] of a statement" are inactionable. Opp. 17. Setting aside that this mischaracterizes the Motion, the pleading burden remains on *Plaintiffs*. Regurgitating five pages of block quotes from the SAC without any explanation of how each statement materially misled investors (or was known to be misleading when made) cannot meet that burden. Opp. 18-20, 24-26; *see also* Opp. 16 n.12, 17 n.13, 23 n.16, 24 n.17, 27 n.18 (listing paragraphs without analysis). Plaintiffs fail to meaningfully explain their own allegations; dismissal is warranted.[3]

Moreover, Plaintiffs fail substantively to engage with Defendants' arguments. Even in

---

[3] The Opposition relies on conclusory assertions, such as the claim that "Defendants assured investors" that F45's "growth would continue unabated" because "of a strong pipeline of current and future franchisees." Opp. 1. Plaintiffs cite no statements in the Complaint that support this assertion because there are none.

several places where the Opposition identifies Defendants' arguments, it provides no response. For example, Plaintiffs do not address Defendants' arguments that many of the challenged statements were not false when made. *Compare* Mot. 22-28, 34-36 (setting forth arguments) *with* Opp. 16 n.12 (listing the challenged SAC paragraphs but offering no response). The same is true for many of the statements that Defendants explained were forward-looking, opinions, or puffery—Plaintiffs address some of those statements but, "due to space constraints," relegate most to footnotes without analysis. Opp. 16 n.12, 17 n.13, 23 n.16, 24 n.17, 27 n.18. Any arguments about these statements are therefore waived. *JMCB*, 336 F. Supp. 3d at 634.

When Plaintiffs do address Defendants' arguments, Plaintiffs miss the mark. Their arguments regarding SAC paragraph 153 are illustrative. That paragraph challenges three statements. Defendants addressed each, explaining that the first was inactionable puffery, Mot. 21 (quoting ¶ 153), the second was an opinion statement, Mot. 19 (citing ¶ 153), and the third was a protected predictive statement, Mot. 15 (citing ¶ 153). Plaintiffs strangely argue that the first (puffery) statement is not an *opinion* statement, Opp. 25-26, even though Defendants *quoted* the relevant portion of paragraph 153 in their argument on puffery, Mot. 21, and Plaintiffs fail to address Defendants' argument that the second challenged statement is an opinion, *see* Opp. 23-26. Plaintiffs' lack of response amounts to waiver. *JMCB*, 336 F. Supp. 3d at 634.

A. **The Opposition Does Not Refute Defendants' Argument that F45's Projections Are Protected Under the Bespeaks Caution Doctrine.**

Defendants identified numerous predictive statements from the IPO Materials that are protected by the bespeaks caution doctrine. Mot. 15 (citing ¶¶ 151-53, 166-67, 175-79, 181, 195-96). Plaintiffs fail to address the statements in paragraphs 166-67, 175, and 177-79, waiving any argument as to those statements. *JMCB*, 336 F. Supp. 3d at 634. For the remaining statements, Plaintiffs make two primary arguments: (1) the statements were not forward looking, and (2) the

5

statements lacked meaningful cautionary language.  Neither argument withstands scrutiny.

*First*, the statements identified by Defendants are forward looking.  For example, the statements in paragraphs 151-53 (estimating projected returns), 176 (projecting potential growth), and 195-96 (stating plans to improve internal controls), are necessarily forward looking, and Plaintiffs fail to identify any portion of those statements that relates to present facts.  Opp. 17-19.  For the remaining paragraph (181), Plaintiffs simply ignore the forward-looking statement Defendants identified.  *See* ¶ 181 ("As our network of total studios grows, we expect recurring revenue as a percentage of total revenue to increase.").  All of these statements are predictive of future events and therefore forward looking.  *Braun v. Eagle Rock Energy Partners, L.P.*, 223 F. Supp. 3d 644, 653 (S.D. Tex. 2016).  Plaintiffs respond that even if these statements may "contain forward-looking elements, many of them also incorporated present factual assertions."  Opp. 19.  Setting aside that their argument implicitly concedes at least some forward-looking statements *did not* incorporate present factual assertions, Plaintiffs fail to identify what they contend are present factual assertions, and therefore fail to rebut Defendants' arguments.  *See* Mot. 14-18.

*Second*, the statements were accompanied by meaningful cautionary language.  Plaintiffs misleadingly contend that Defendants do not "identif[y]" which statements are covered by the cautionary language and "concede" that the cautionary language is "general."  Opp. 20.  Not so.  Defendants' Motion links specific statements to specific cautionary language in the IPO Materials' risk disclosures.  Mot. 15-18.  In doing so, Defendants noted that the disclosures contained "general qualifications about the use of forward-looking statements" *and* "***forty pages*** of . . . specific, detailed cautionary" language highlighting relevant risks.  Mot. 15.

In response to that detailed analysis, Plaintiffs substitute rhetoric for reason, calling the warnings "boilerplate," "vague truisms," and "tautology masquerading as a warning."  Opp. 21 &

n.15.  But tellingly, Plaintiffs fail to identify what risks the cautionary language failed to disclose, except for Plaintiffs' conclusory assertion that F45 used "unsustainable practices."  Opp. 22 (citing ¶ 198).[4]  Plaintiffs also fail to address the *less* detailed cautionary language that courts have deemed sufficient under the bespeaks caution doctrine.  *See* Mot. 17-18 (discussing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003); *Braun*, 223 F. Supp. 3d at 654).

> **B.     The Opposition Fails to Explain How the Opinion Statements in the IPO Materials Are Actionable.**

Defendants also identified several challenged statements in the IPO Materials that were inactionable opinions.  Mot. 19 (citing ¶¶ 151-53, 175-76, 178-81, 187, 195).  Plaintiffs make no argument whatsoever as to the statements in paragraphs 151-52, 175, 179-80, 187, and 195, thereby waiving any argument as to those statements.  *JMCB*, 336 F. Supp. 3d at 634.

Plaintiffs do not seriously contest that the remaining statements reflected opinions, instead offering only one conclusory sentence that the statements were "determinat[ive], verifiable statement[s] of material fact without any qualifying language."  Opp. 24 (alterations in original) (internal quotation marks omitted).  But Defendants explained why these statements reflected opinions, including because many began with "believe"—"a quintessential opinion word."  Mot. 18-20 (quoting *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 620 F. Supp. 3d 603, 623 (S.D. Tex. 2022)).  Plaintiffs selectively edit other statements to make them seem more concrete. *See, e.g.*, Opp. 25 (omitting "we believe" phrase from ¶ 153 quotation, and omitting "we expect" phrase from ¶ 181 quotation).

The more pertinent question, as Defendants have explained, is whether the opinion

---

[4] This conclusory assertion is also the only support Plaintiffs offer for their claim that the warned-of risks had "already materialized."  *See* Opp. 22.  That assertion, however, does nothing to explain "which, if any, of the listed risks materialized or how or when they materialized."  Mot. 26-27.

statements are nonetheless actionable. *See* Mot. 19-20. Under *Omnicare* and its progeny, an opinion statement is actionable only if "the speaker did not sincerely hold that opinion, or if the plaintiffs allege that '(i) the speaker omit[ted] material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and (ii) those facts conflict with what a reasonable investor would take from the statement itself.'" *Del. Cnty. Emps. Ret. Sys.*, 620 F. Supp. 3d at 623 (quoting *In re BP p.l.c. Sec. Litig.*, 2016 WL 3090779, at *9 (S.D. Tex. May 31, 2016)). Plaintiffs do not even try to meet this standard. Nowhere do they argue that Defendants did not genuinely hold the expressed opinions, and neither the SAC nor the Opposition identifies omitted material facts that would have rendered the expressions of opinion misleading to a reasonable investor. *See* Opp. 23-26. Instead, Plaintiffs copy and paste several statements from the SAC, asserting that "we believe" statements are sometimes actionable. *Id.* Absent any explanation as to why *these* challenged statements were in fact actionable, Plaintiffs have not satisfied their pleading burden.

### C.      The Opposition Does Not Explain How Puffery Could Be Actionable.

Defendants identified several challenged statements in the IPO Materials that were inactionable puffery. Mot. 21-22 (citing and discussing ¶¶ 151, 153-56, 166, 180-81). Plaintiffs fail to address the statements in paragraphs 154-56, and 180-81, waiving any argument as to those statements. *JMCB*, 336 F. Supp. 3d at 634.

Plaintiffs' primary argument on puffery appears to be that statements containing a "concrete factual or material misrepresentation" are actionable. Opp. 27-28. That is merely the flip side of the general proposition that "'[a]llegations that amount to little more than corporate 'cheerleading' are puffery'" and, as a result, "'are not actionable under federal securities law because no reasonable investor would consider such statements material.'" *Police & Fire Ret. Sys.*, 777 F. App'x at 730 (quoting *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 789 (S.D. Tex. 2012). The question is on which side of the line the statements at issue fall.

Plaintiffs' argument consists entirely of a single footnote, contending that the statements at issue are not puffery because *other* statements—sometimes in separate paragraphs of the IPO Materials—included concrete factual or material misrepresentations.  Opp. 27 & n.19.  Whether those separate statements are materially misleading is a separate question (addressed elsewhere in the Motion).  Those separate statements do not transform statements that F45's business model is "attractive" or "has the potential to generate strong returns for franchisees" or that there is a "strong market demand for multi-unit franchise opportunities" into anything more than they are: expressions of vague corporate optimism.  *Id.*; ¶¶ 151, 153, 166.  Plaintiffs' cases, by contrast, address situations where the challenged statements *themselves* conveyed concrete information.  *See Okla. Firefighters Pen. & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 220 (5th Cir. 2023) (statements "confirm[ing]" prior projections); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 249 n.14 (5th Cir. 2009) (statements "discuss[ing] the very specific benefits of the no-deposit programs and Type II affiliations"); *In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d 573, 587 (W.D. Tex. 2022) (statements describing defendant's security policies and practices); *Stone v. Life Partners Holdings, Inc.*, 26 F. Supp. 3d 575, 588-89 (W.D. Tex. 2014) (specific statements about defendant's process for reviewing insurance policies); *Kurtzman v. Compaq Comput. Corp.*, 2000 WL 34292632, at *36-37 (S.D. Tex. Dec. 12, 2000) (statements regarding prospective "market share gains and revenue growths").  For the actual statements Defendants argue are inactionable puffery, Plaintiffs' sole response is a conclusory assertion that the statements "are concrete and material."  Opp. 28.

**D.    The Opposition Largely Ignores Defendants' Argument that the Remaining Challenged Statements in the IPO Documents Were Not False When Made.**

Finally, Plaintiffs essentially ignore Defendants' arguments establishing that several categories of statements in the IPO Materials were not false when made.  Mot. 22-28.  These

included statements regarding F45's results (¶¶ 151, 166, 168), franchisees (¶¶ 169-70, 188), disclosed material weaknesses in financial controls (¶ 196), risk disclosures (¶ 200), and Items 303 and 105 disclosures. *Id.*

Of these, Plaintiffs address only disclosed material weaknesses in financial controls (¶ 196) by relying on the Restatement. *See* Opp. 31. As for the others, Plaintiffs simply list a number of paragraphs that "Defendants challenge as not particularized enough" but offer no contrary argument, conceding the point. Opp. 16 n.12;[5] *JMCB*, 336 F. Supp. 3d at 634.[6]

As to the Restatement, Plaintiffs concede that it could potentially support falsity only for the restated period. Opp. 31. But Plaintiffs utterly fail to rebut Defendants' observation in the Motion that the "Restatement did not even address the period covered by the IPO—the first two quarters of 2021." Mot. 26. By failing to address that fact—or identify any statement in the IPO Materials implicated by the Restatement—Plaintiffs have conceded that the Restatement is irrelevant as to whether the IPO Materials contained false or misleading statements.

### III.    The Opposition Confirms that Plaintiffs Lack Standing for Their Section 12 Claim.

Plaintiffs' Section 12 claim also fails for lack of standing. As demonstrated in the Motion, Section 12 claims are limited to those who purchased shares directly in the offering. *See* Mot. 28-29. While plaintiff Detroit does allege that it purchased shares of F45 stock "directly in the Company's IPO," ¶ 30, it has not sustained any actionable injury because it sold all its F45 stock

---

[5] And even that listing omits paragraphs 151, 166, 169-70, 196, and 200.

[6] It is unclear whether Plaintiffs intended to respond to these categories of statements as part of their argument that "the CW accounts support the falsity of Defendants' statements." Opp. 29-30. But Plaintiffs offer no explanation for how the confidential witness accounts address Defendants' arguments that the challenged statements were not false when made. *Id.* Vague assertions that the CW accounts touch on the same subject matter cannot substitute for particularized factual allegations that the statements were false when made. In any event, the confidential witnesses are not reliable for the reasons explained *infra* at 19-21 and in the Motion (at 41-43).

before the only alleged harm occurred, as explained *supra* at 2-3.  Lead Plaintiff Pledge Capital,

by contrast, does not even allege that it purchased shares "directly" in the IPO, but instead alleges

only that it purchased shares "*traceable* to the Company's IPO."  ¶ 29 (emphasis added).  As even

a case Plaintiffs cite (Opp. 46) acknowledges, allegations that the plaintiff made purchases

"pursuant or traceable to" the IPO fail to plead Section 12 standing "because it is ambiguous

whether the plaintiff is alleging they were a direct or indirect purchaser." *In re Deutsche Bank AG*

*Sec. Litig.*, 2016 WL 4083429, at *35 (S.D.N.Y. July 25, 2016).

Plaintiffs cannot rectify this deficiency.  Even though the SAC added allegations regarding

plaintiff Detroit's purchase of shares directly in the IPO, *see* ¶ 30, they failed to offer additional

factual allegations establishing that Pledge Capital purchased its shares directly in the IPO.

Accordingly, both Plaintiffs lack standing to pursue the Section 12 claim.

**IV.    The Opposition Confirms that the SAC Fails to Plead Falsity, Scienter, or Loss Causation for Its Exchange Act Claims.**

**A.    The Opposition Confirms that Plaintiffs Fail to Plead Falsity.**

In defense of their Exchange Act claims, Plaintiffs largely make the same arguments

regarding falsity that they do regarding their Securities Act claims.  Opp. 13-31.  Thus, for many

of the same reasons detailed above, *supra* at 3-10, Plaintiffs fail to establish falsity with respect to

their Exchange Act claims.  Rather than repeat these same arguments, Defendants focus below on

issues unique to the Exchange Act claims.

**1.    The Opposition Fails to Rebut Defendants' Argument that the PSLRA Safe Harbor Protects the Forward-Looking Statements.**

The PSLRA, like the bespeaks caution doctrine, provides a safe harbor for forward-looking

statements that are either (1) made without actual knowledge that they were false or

(2) accompanied by meaningful cautionary language.   15 U.S.C. § 78u-5(c)(1)(A)(i)-(B)(i).

Defendants identified numerous challenged statements subject to the PSLRA's safe harbor, but

11

Plaintiffs again fail to address most of them.  *Compare* Mot. 30-31, *with* Opp. 16-23 (failing to address ¶¶ 417, 420, 430, 434, 440, 443, 447, 467, 478(b)-(d), 480, 489, 493, 496-97, 499-500, 502).  Plaintiffs have waived any argument for those statements.  *JMCB*, 336 F. Supp. 3d at 634.

The remaining statements are all forward looking for the reasons stated above, *supra* at 6, and in the Motion (at 30-32).  Plaintiffs also fail to meaningfully contest that those statements are protected by both prongs of the PSLRA's safe harbor.

*First*, Plaintiffs concede that they must plead that the "forward-looking statement . . . was made with *actual knowledge*" that it was false and misleading, yet they fail to explain how the SAC satisfies that pleading obligation.  *See* Opp. 16-22 (emphasis added).  Plaintiffs' attempt to rely on their deficient general scienter arguments fail.  *See infra* at 14-23.

*Second*, Plaintiffs cannot contest that the forward-looking statements were accompanied by meaningful cautionary language.  The Company provided detailed descriptions of relevant risks it faced, *supra* at 6-7, and incorporated that cautionary language into the Company's subsequent statements, Mot. 32.  Plaintiffs object that the consistency of the Company's disclosures in subsequent statements means that the risks identified were not sufficiently specific.  Opp. 23.  But the cases Plaintiffs cite recognize that a change in cautionary language is necessary only where there has been a "significant change in circumstances."  *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 107 (D.C. Cir. 2015); *see also Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010); *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004).  Plaintiffs do not identify any significant change in circumstances—indeed, they argue that the risks identified had "materialize[d]" "even before the IPO."  Opp. 22; *see supra* at 7.  Plaintiffs thus fail to explain

why the Company should have updated its risk disclosures during the year at issue.[7]

### 2.     The Opposition Fails to Rebut Defendants' Argument that the Challenged Opinion Statements and Puffery Are Inactionable.

As with the IPO Materials, Defendants identified numerous opinion statements, Mot. 32-33 (citing ¶¶ 417, 421, 429-30, 434, 441, 443, 446-47, 466, 478(a), (c)-(d), (f), 480, 489, 495, 501-02), and vague statements of corporate optimism, Mot. 33-34 (citing ¶¶ 407-08, 416, 421-23, 429, 442-43, 445-47, 455, 456(b), 464, 466, 468-69, 478(e)-(f), 488, 491-92, 494, 501-02), that are not actionable. Plaintiffs address in passing only a small portion of those statements and do not address at all many others.[8] The arguments as to the other statements not addressed are therefore waived. *JMCB*, 336 F. Supp. 3d at 634.

In addition to the arguments addressed above, *supra* at 11-13, Plaintiffs address various post-IPO expressions of corporate optimism, but fail to articulate why statements such as "growing at breakneck speed," or "firing on all cylinders," Opp. 28-29, contain "'specific facts'" that "investors and analysts" would "rely on." *Police & Fire Ret. Sys.*, 777 F. App'x at 730 (quoting *In re BP p.l.c.*, 852 F. Supp. 2d at 789). Instead, Plaintiffs seem to suggest that, because the Company was optimistic coming out of the pandemic, subsequent complications from the

---

[7] Plaintiffs also claim that the Company's optimistic forward-looking statements "den[ied] that such risks existed," thereby rendering the cautionary language ineffective. Opp. 22. But the cited statements—general statements of projections and that the Company "remain[s] bullish"—do not deny anything and are a far cry from the concrete statements involved in the case Plaintiffs cite. *See Hall v. Rent-A-Ctr., Inc.*, 2017 WL 6398742, at *19 (E.D. Tex. Oct. 19, 2017), *R. & R. adopted*, 2017 WL 6379334 (E.D. Tex. Dec. 14, 2017) (risk disclosures negated by statements that risks "had been resolved" and were "limited"). If, as Plaintiffs suggest, *any* optimistic forward-looking statement necessarily negates the cautionary language that accompanies it, this would render the PSLRA safe harbor meaningless.

[8] For opinion statements, Plaintiffs quoted from paragraphs 417, 429(a), 430(b), 434, 441, 443, 446, 468, 478(a)-(b), (f), 489, 495, and 501. Opp. 25-26. For puffery statements, Plaintiffs discussed only paragraphs 407-08, 416, 421-23, 429, 442-43, 445-47, 455, 456(b), 464, 466, 468-69, 478(d)-(e), 488, 491-92, 494, 502, 519. Opp. 27 & nn.18-19.

prolonged effects of COVID-19 could not explain the Company's difficulties.  Opp. 28-29.  But Plaintiffs offer no particularized facts that would render the vague optimistic statements actionable.

### 3. The Opposition Fails to Show that the Remaining Statements Challenged Under the Exchange Act Were False When Made.

Finally, Plaintiffs again offer no response to Defendants' argument that many challenged statements were not false or otherwise misleading when made, including statements regarding franchise performance (¶¶ 409, 424, 448, 459, 478(a)) and remediation of the Company's material weaknesses in its internal controls (¶¶ 432, 434, 447, 481-82, 502).  Plaintiffs' failure to respond amounts to waiver.  *JMCB*, 336 F. Supp. 3d at 634.

To the extent that Plaintiffs invoke the Restatement as a basis for challenging F45's results, including franchise sales, pipeline, and obligations (¶¶ 408, 418-19, 423, 431, 439-40, 444, 448, 456-57, 458, 464-67, 488-89, 492, 496, 498), that argument misses the mark because the Restatement covered only reported "equipment and merchandise revenue" for year-end 2021 and the first three quarters of 2022, Opp. 4, 12; ¶¶ 322-23, 326, and not revenue from franchise sales. Plaintiffs therefore fail to contest that none of these challenged statements were false when made.

### B. The Opposition Confirms that Plaintiffs Fail to Plead Scienter.

The Opposition likewise confirms that Plaintiffs have no cogent scienter theory.  As explained in the Motion, to plead scienter, Plaintiffs must meet the high burden of pleading, as to each Defendant, a cogent and compelling theory of scienter, defined by the Fifth Circuit as an "intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it."  *Southland Sec. Corp. v. INSpire Ins. Sol.*, 365 F.3d 353, 366 (5th Cir. 2004); Mot. 36-37.  Plaintiffs' theory of scienter must be supported by particularized factual allegations.  Mot. 36-37.  The Opposition only makes Plaintiffs' failure to meet this standard more

obvious.  Most importantly, Plaintiffs offer no particularized factual allegations of "when and how [Mr. Gilchrist or Mr. Payne] might have learned of" information that contradicted the challenged statements.  *Mei Pang v. Levitt*, 2023 WL 11643704, at \*15 (W.D. Tex. Dec. 20, 2023); *see also* Mot. 37-40.  In failing to allege a single such contradictory fact in their Opposition, Plaintiffs all but concede they have not pleaded actual knowledge or severe recklessness as to either Mr. Gilchrist or Mr. Payne.  *See* Opp. 31-43.  Instead, Plaintiffs continue to rely upon impermissible "group pleading."  *See Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 957 (5th Cir. 2016).

Moreover, despite Defendants' emphasis in the Motion on Plaintiffs' failure to link the Restatement to any allegations of what Mr. Gilchrist or Mr. Payne actually knew or were severely reckless in not knowing when making the challenged statements, Mot. 37-38, Plaintiffs *still* do not attempt an explanation.  *See* Opp. 40-41.  Plaintiffs' failure to identify contradictory facts known to Mr. Gilchrist or Mr. Payne at the time is even more consequential because Plaintiffs concede they did not plead motive.  Opp. 42-43; *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 644 (5th Cir. 2005) (confirming that without motive, "the strength of [Plaintiffs'] circumstantial evidence of scienter must be correspondingly greater").  As Defendants explained, there is one clear inference, which Plaintiffs ignore:  after COVID-related challenges, the Company believed a big break was coming.  *See* Mot. 38-39.  Plaintiffs again fail to allege facts supporting a cogent and compelling inference as strong as the nonfraudulent inference that Defendants were optimistic about the future when the statements were made.  That the business later faced hardships does not retroactively render statements false.

### 1.    Plaintiffs Identify No Known Contradictory Facts.

The vast majority of the Opposition's arguments fail because Plaintiffs do not identify any

15

fact Mr. Gilchrist or Mr. Payne knew or deliberately disregarded that contradicted a statement when made.  Plaintiffs first argue Mr. Gilchrist and Mr. Payne must have known their statements were false because they had access to unidentified information, controlled F45's messaging, and signed SEC filings.  Opp. 32-34.  Plaintiffs' theory seems to be that *if* there were contradictory information, Corporate Defendants *should* have noticed it.  That is a far cry from particularized allegations of deliberate misconduct.  *See Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535-41 (5th Cir. 2008); *see also Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 187 (5th Cir. 2019) (SOX certifications insufficient to plead scienter unless the signing officer was aware of "glaring accounting irregularities or other red flags") (citation and internal quotation marks omitted).[9]

Plaintiffs next argue that Defendants closely monitored "core metrics."  Opp. 35-37.  These allegations fail to create an inference of scienter because Plaintiffs can "point to no specific internal or external report available at the time of the alleged misstatements that would contradict them."  *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002); *see also* Mot. 39, 42 (citing cases).  Finally, Plaintiffs advance a strange circular argument: Mr. Gilchrist and Mr. Payne must have known their statements were false because they "repeatedly" made them.  *See* Opp. 37-38.

Instead of alleging any actual fact known to Mr. Gilchrist or Mr. Payne that was contrary to the allegedly false or misleading statements, Plaintiffs offer impermissible conclusory, speculative, and vague allegations.  *See, e.g.*, Opp. 32 ("[T]hey were either duly informed of the true facts of F45's unsustainable business model and the Company's inability to maintain growth

---

[9] *Monroe County*, an out-of-Circuit decision rejecting a motion for reconsideration, is inapposite; there, the sufficiency of factual allegations was not at issue.  *Compare Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 333 F. Supp. 3d 1315, 1324-25 (N.D. Ga. 2018), *with Monroe Cnty. Empls.' Ret. Sys. v. S. Co.*, 2018 WL 1558577, at *23 (N.D. Ga. Mar. 29, 2018).

or were reckless in not knowing of these facts."). This defeats Plaintiffs' claims. *See* Mot. 36-38. Plaintiffs fail to meet the very requirement they acknowledge: alleging that "defendants 'knew facts or had access to information suggesting that their public statements were not accurate.'" *See* Opp. 33 (quoting *In re Fleming Cos. Inc. Sec. & Derivative Litig.*, 2004 WL 5278716, at *11 (E.D. Tex. June 16, 2004)). Plaintiffs' other cases illustrate this point by highlighting specific alleged facts known to defendants that contradicted the challenged statements. *See Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 852-56 (N.D. Tex. 2018) (plaintiffs offered "specific allegations" that the individual defendants "receiv[ed] regular, detailed information" such as contrary cost figures that undermined challenged statements); *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 757-59, 784 (S.D. Tex. 2012) (scienter alleged for CEO's statements about safety progress where CEO "defined his position" as focused on process safety and admitted to breakdowns in safety plans); *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 371-72 (S.D.N.Y. 2012) (scienter determination hinged on "strong circumstantial evidence" two individuals were receiving information from a third defendant who acted with scienter and was "actively involved in misconduct"); *see also Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 270 (3d Cir. 2009) (scienter allegations sufficient when "what he knew made obvious" the risk that statements would mislead). Plaintiffs make no attempt to explain what specific facts or information either Mr. Gilchrist or Mr. Payne must have known that put them on notice their statements were misleading.[10]

---

[10] Plaintiffs add several unreported decisions, but these, too, show that specific allegations identifying contradictory information known at the time are required. *See Singh v. 21Vianet Grp., Inc.*, 2017 WL 4322483, at *3 (E.D. Tex. Sept. 13, 2017) (significant for scienter purposes that executive publicly "affirmed the Company's financial results" shortly after a short-seller report identified irregularities but later "acknowledged truth in at least some aspects of the [report]"); *Nykredit Portefolje Admin. A/S v. Propetro Holding Corp.*, 2021 WL 9037758, at *27 (W.D. Tex. Sept. 13, 2021) (finding scienter where former CEO "failed to disclose share pledges" that violated

**2.    "Core Operations" Cannot Salvage Plaintiffs' Scienter Argument.**

Plaintiffs' scienter argument continues to rely heavily on the senior positions held by Mr. Gilchrist and Mr. Payne. Opp. 32-34, 41-42. However, as Defendants have shown and as Plaintiffs concede, the Individual Defendants' roles alone are not sufficient to support a strong inference of scienter. *See* Opp. 42; *see also* Mot. 40-41. In an attempt to bolster a flawed argument, Plaintiffs unsuccessfully invoke a "core operations" theory. Opp. 42. However, Plaintiffs again fail to state sufficiently particularized allegations and misapprehend the relevant case law.

As with their other scienter arguments, *see supra* at 14-17, Plaintiffs apply circular logic, claiming that, because franchises and studios were "critical to F45's core operations," Mr. Gilchrist and Mr. Payne must have known their statements were misleading. Opp. 34. Yet again, Plaintiffs fail to identify *any specific fact* known to Mr. Gilchrist or Mr. Payne that contradicted their public statements. *Id.* Plaintiffs' cited cases merely illustrate the need for specific allegations of known problematic facts. *See In re Netsolve, Inc. Sec. Litig.*, 185 F. Supp. 2d 684, 691, 693, 697 (W.D. Tex. 2001) (denying motion to dismiss where complaint identified contradictory sales figures known to individual defendants); *see also Holzwasser v. Staktek Holdings, Inc.*, 2006 WL 897746, at *4 (W.D. Tex. Mar. 30, 2006) (denying motion to dismiss where chip shortage was known and defendants "expressly stated that the supply of [] chips was critical" to the "core business").

Plaintiffs rely heavily and misguidedly on *Six Flags*. *See* Opp. 35, 42 (citing *Six Flags*, 58 F.4th at 195). However, as the Fifth Circuit explained in *Six Flags*, there are actually four "[r]elevant factors" to the "core operations" theory of scienter. *Six Flags*, 58 F.4th at 219.

---

the company's "internal controls and disclosure policies" that he "was involved in formulating"); *Brody v. Zix Corp.*, 2006 WL 2739352, at *7 (N.D. Tex. Sept. 26, 2006) ("Defendants regularly received computer tracking reports from internal reporting systems which would have alerted them to the fact that their statements . . . were materially misleading.").

Plaintiffs only engage with the second factor—"whether the transaction at issue was critical to the company's continued vitality," *id.* (citation and internal quotation marks omitted)—claiming that, because "selling franchises and opening studios . . . was critical to F45's ability to survive," it "strains credibility . . . that Gilchrist and Payne were in the dark on matters of utmost importance to F45." Opp. 35. This argument misses the mark and is in stark contrast to *Six Flags*, where the plaintiffs specifically alleged that an individual defendant was "directly rela[y]ed" information undermining his public statements. *Six Flags*, 58 F.4th at 216. In *Six Flags*, the contrast was clear: executives made statements that park construction was continuing despite having received (1) presentations showing "lack of infrastructure, lack of construction workers onsite, and lack of progress" and (2) reports detailing the lack of construction progress. *Id.* at 216. Plaintiffs fail to identify any such information contradicting the challenged statements here.

Plaintiffs brush aside Defendants' arguments relating to the two other "core operations" factors (company size and internally inconsistent statements). Opp. 42. But Plaintiffs do not even address, let alone dispute, the fact that F45's large size "undermines the 'core operations' theory." *Six Flags*, 58 F.4th at 219; *Levitt*, 2023 WL 11643704, at *14; *see* Mot. 40-41. Likewise, Plaintiffs do not address at all their failure to show "internally inconsistent statements," thereby conceding they have not "identif[ied] any [contradictory] fact that would have been 'readily apparent' to Mr. Gilchrist or Mr. Payne." Mot. 41 (citing *Alaska Elec. Pension Fund v. Flotek*, 915 F.3d 975, 982-86 (5th Cir. 2019)). Plaintiffs failed to make the required showing of a "link [to] the Defendants to show scienter." *Levitt*, 2023 WL 11643704, at *15. Plaintiffs' mere assertion that the statements involved "core operations" is insufficient. Opp. 42; *see also Flotek*, 915 F.3d at 985-86.

### 3. The Opposition Identifies No Connection Between the CW Allegations and Mr. Gilchrist, Mr. Payne, or the Challenged Statements.

Plaintiffs do not dispute either that (1) no confidential witness is alleged to have contacted

or otherwise interacted with Mr. Gilchrist or Mr. Payne and (2) no confidential witness allegation actually undermines any challenged statement or otherwise creates a strong inference that Mr. Gilchrist or Mr. Payne knew or should have known a statement was false when made. *See* Mot. 41-43. Instead, Plaintiffs cite *Budde*, an unpublished decision from a sister district, for the proposition that "[i]t is well-established . . . that CWs need not have direct communication with defendants to be credited." Opp. 39 (citing *Budde v. Glob. Power Equip. Grp., Inc.*, 2018 WL 4623108, at *4 (N.D. Tex. Sept. 26, 2018)). But the *Budde* court noted at the outset that "[a]llegations from CWs must be discounted." *Budde*, 2018 WL 4623108, at *4. Moreover, *Budde* was decided before the Fifth Circuit ruled in *Pier 1* that confidential witnesses "who do not relate any interaction with [the individual defendants] . . . must [be] discount[ed]." *Mun. Emps.' Ret. Sys. of Michigan v. Pier 1 Imports, Inc.*, 935 F.3d 424, 434 (5th Cir. 2019).[11]

More importantly, Plaintiffs fail to identify any confidential witness allegation that moves the needle on scienter. Plaintiffs rely heavily on one allegation each from CW-2 and CW-3. Opp. 38. But those allegations are opinions formed without personal knowledge, and "such opinions add nothing to scienter analysis." *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 862 (S.D. Tex. 2016). CW-2 was the "Owner and Operator" of only a single "F45 franchise in the United Kingdom," ¶ 256, yet he opines that "F45 does not conduct due diligence for potential studio locations." ¶ 258. Plaintiffs do not explain how one U.K. franchise owner would have knowledge of due diligence for *all* or even *most* studio openings. CW-2's opinion is speculation,

---

[11] Plaintiffs now also cite two out-of-Circuit cases, *City of Warren* and *Lloyd*, for the proposition that courts may accept the hearsay testimony of confidential witnesses if sufficiently reliable. Opp. 39 n.22. That misses the point. The confidential witness allegations here are inadequate not because they are hearsay (many are), but because they do not specifically discredit any challenged statement at the time it was made. And, for the reasons described immediately below, the confidential witness statements should also be discounted because they are *un*reliable (not least of which is that not one CW alleges direct contact with either Mr. Gilchrist or Mr. Payne).

which cannot be credited on a motion to dismiss. *See Shaw*, 537 F.3d at 535. Similarly, CW-3, a "contract employee in the role of Accounts Receivable Manager," ¶ 93, claims "it was his perception that 'over 50 percent' of F45 franchises were delinquent." ¶ 262. This "perception"—which Plaintiffs do not allege was shared by either Mr. Gilchrist or Mr. Payne—is "far too indefinite to add to any inference of scienter," and should likewise be ignored. *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 720 (W.D. Tex. 2010). The remaining confidential witness allegations similarly fail to undercut any challenged statement.[12]  *See* Mot. 41-43.

In short, Plaintiffs' "conclusory, non-specific [confidential witness] allegations are the type of information this Court has previously described as 'so general and ambiguous as to be useless.'" *KB Partners I, L.P. v. Pain Therapeutics, Inc.*, 2012 WL 12850252, at *9 (W.D. Tex. Sept. 26, 2012) (quoting *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 895 (W.D. Tex. 2008)). The confidential witnesses do not support a strong inference of scienter.

### 4.     The Restatement Allegations Do Not Create an Inference of Scienter.

Plaintiffs' Restatement arguments boil down to the assertion that any restatement supports a strong inference of scienter. Not so—much more is required. "The mere publication of inaccurate accounting figures or failure to follow GAAP, without more, does not establish scienter"; instead, the party must "know" or "be severely reckless" that it is "publishing materially false information." *Abrams*, 292 F.3d at 432. Without allegations of "actual knowledge or intentional or deliberate behavior," the issues that led to a restatement "can easily arise from negligence, oversight or simple mismanagement, none of which rise to the standard necessary to

---

[12] Plaintiffs point to the allegations of CW-4 and CW-5 as evidence of "Gilchrist's personal involvement" in franchise promotions and the All-Star Event. Opp. 38-39. But Plaintiffs do not explain how these allegations make it more likely that Mr. Gilchrist knew a statement was false or misleading when made. Plaintiffs are silent about Mr. Payne.

21

support a securities fraud action." *Id.* at 433; *see also Bo Shen v. Exela Techs., Inc.*, 2021 WL 2589584, at *8-10 (N.D. Tex. June 24, 2021). That is particularly true where, as here, the restatement does not touch upon the vast majority of challenged statements.

While Plaintiffs contend that "the number, size, timing, nature, frequency, and context" of a restatement are relevant for scienter purposes, Opp. 40 (citations omitted), Plaintiffs only point to the size of the Restatement and ignore the other factors. But "[t]he magnitude of the misstated financials, while surely significant, does not support a strong inference of scienter without allegations showing that Defendants knew or recklessly disregarded the falsity of their misrepresentations, which Plaintiffs have failed to allege here." *Budde*, 2017 WL 6621540, at *4; *see also Abrams*, 292 F.3d at 433 ("[P]laintiffs have not pointed to any particular reports or information—available to defendants before the announced financial restatements—that are contrary to the restatements."). The Restatement does not create a scienter inference.

### 5.      Defendants' Departures from F45 Do Not Revive Plaintiffs' Claim.

Grasping at straws, Plaintiffs point to the departures of Mr. Gilchrist and Mr. Payne from F45 in, respectively, June and November 2022, but they offer no explanation as to how these departures support an inference of scienter. Opp. 41. "Multiple Fifth Circuit decisions suggest resignations have little implication on the scienter analysis." *ArthroCare Corp.* 726 F. Supp. 2d at 724-25; *see also Six Flags*, 58 F.4th at 219 n.19. Because Plaintiffs do not even attempt to connect Mr. Gilchrist's or Mr. Payne's departure with the challenged statements, "[n]either [departure] has any scienter implications." *Abrams*, 292 F.3d at 434.[13] Plaintiffs' cases are

---

[13] Plaintiffs claim Mr. Payne left "near the end of the Class Period." Opp. 41. Yet Plaintiffs' own pleading demonstrates that is not so. Mr. Payne left F45 on November 21, 2022, nearly four months after the end of the Class Period. *See* ¶ 567. In fact—as Plaintiffs concede—F45 disclosed that it provided an incentive package to Mr. Payne to stay on with the Company (Opp. 11).

similarly unpersuasive.[14]  The departures of Mr. Gilchrist and Mr. Payne do not support, let alone create, an inference of scienter in any way.

**C.      The Opposition Confirms that Plaintiffs Fail to Plead Loss Causation.**

Plaintiffs repeat the SAC's loss causation allegations and the legal standard, but they fail to articulate how the July 26, 2022 "Strategic Update" and Form 8-K (together, the "July 26 Update") constitute a corrective disclosure.  Opp. 43-44.  As this Court recently put it, "Plaintiffs fail to plead how this statement 'revealed' to the market that Defendants' prior statements were false."  *Levitt*, 2023 WL 11643704, at *16.  Absent from the SAC and Opposition is any explanation of which alleged misstatements the July 26 Update corrected or how the Update revealed those statements as false.  *See Dell*, 591 F. Supp. 2d at 907.

Plaintiffs' examples belie their bald argument that the July 26 Update corrected any challenged statement.  Opp. 43-44.  The first three examples are *updated projections* for *year-end* (still months away).  *See id*.  Updated projections "did not reveal that defendants' . . . earnings guidance and/or sales predictions were false or misleading when made."  *See Naglich v. Applied Optoelectronics*, 436 F. Supp. 3d 954, 979 (S.D. Tex. 2020).  Plaintiffs do not even attempt to explain how the remaining examples—termination of a line of credit for franchisees and a change in CEO—reveal that any such challenged statement was false.  Plaintiffs' own authority confirms that they "must show a causal connection between the company revealing the truth regarding an earlier misrepresentation and a subsequent decline in the company's stock price."  *Parmelee v. Santander Consumer USA Holdings, Inc.*, 2018 WL 276338, at *6 (N.D. Tex. Jan. 3, 2018).  They

---

[14] In *Hall*, unlike here, executive departures supported a scienter inference because the Company "acknowledg[ed]" that "operational challenges" were "exacerbated" by the executives.  2017 WL 6398742, at *34.  In *Temple-Inland*, an executive departure did not contribute to a strong inference of scienter where the company's "gradual decline" prompted the resignation.  *N. Port Firefighters' Pension--Loc. Option Plan v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 754 (N.D. Tex. 2013).

have not.  At most, Plaintiffs make the "insufficient" allegation that the challenged statements "touche[d] upon a later economic loss."  *See In re Cassava Scis., Inc. Sec. Litig.*, 2023 WL 3442087, at *11 (W.D. Tex. May 11, 2023) (citation and internal quotation marks omitted).

**V.      The Opposition Confirms the SAC Fails to Establish Control Person Liability.**

Plaintiffs concede that they must first "allege a primary violation" of the securities laws before any of the Defendants can be held liable as a "control person" under either Section 15 of the Securities Act or Section 20(a) of the Exchange Act.  Opp. 49.  For the reasons discussed above and in Defendants' Motion, the SAC fails to allege a primary violation, and accordingly, any claim of control person liability necessarily fails.

The Opposition also confirms that the SAC lacks sufficient allegations of control by MWIG, KLIM, and the Minority Directors.  Plaintiffs characterize the standard for control person liability as a low bar, but acknowledge that they must, at a minimum, plead facts showing that MWIG, KLIM, and the Minority Directors exercised "direct[] or indirect[] control[]" over the Company.  Opp. 49 (alteration in original) (internal quotation marks omitted).  But Plaintiffs have not alleged *any* facts showing MWIG and KLIM exerted that control.  *See id.* at 49-50.  Instead, they cite a single allegation regarding the "Director Defendants," *id.*, which do not include MWIG or KLIM, ¶¶ 39-40 (listing MWIG and KLIM as "Controlling Entity Defendants," not "Director Defendants").  Plaintiffs have therefore waived any argument that MWIG and KLIM exercised sufficient control over the Company to state a claim.  *JMCB*, 336 F. Supp. 3d at 634.

Plaintiffs' allegations also fail as to the Minority Directors.  Opp. 49-50 (citing *In re SolarWinds Corp. Securities Litigation*, 595 F. Supp. 3d 573 (W.D. Tex. 2022)), Plaintiffs argue that they need only allege that "the shareholders worked together" and "acted jointly to exercise control," which they claim to have done with the conclusory statement that the Minority Directors "participated in" preparing the Registration Statement and in the making the challenged

24

statements. Opp. 49-50. But *SolarWinds* makes clear that "bare allegations that shareholders acted jointly . . . are not sufficient." 595 F. Supp. 3d at 593. Indeed, the plaintiffs in *SolarWinds* alleged specific activities that the shareholders engaged in to exert joint control over the company. *Id.* at 594. Unlike here, the plaintiffs in *SolarWinds* alleged "*how* the shareholders worked together," not merely *that* they worked together. *Id.* at 593 (emphasis in original).

That the Minority Directors were members of the multi-member board that approved F45's Registration Statement and other public filings does not alone "raise an inference of control over that entity." *In re Glob. Crossing, Ltd. Sec. Litig.*, 2005 WL 1907005, at *13 (S.D.N.Y. Aug. 8, 2005). Plaintiffs plead no other facts demonstrating that the Minority Directors had the power to dictate the contents of the Registration Statement or F45's other public filings, Mot. 46, and thus fail to plead that the Minority Directors are control persons.

## VI.    The Court Should Dismiss the SAC With Prejudice.

The Court should reject Plaintiffs' perfunctory request for leave to amend. Opp. 50. It is well settled that "[d]enial of leave to amend is appropriate where there is no indication that amendment would cure the defects in a complaint." *Young v. U.S. Postal Serv.*, 620 F. App'x 241, 245 (5th Cir. 2015); *see also Garrett v. Celanese Corp.*, 102 F. App'x 387, 388 (5th Cir. 2004) (rejecting "cursory mention of a request to amend" in an opposition to a motion to dismiss as insufficient because it does not "appris[e]" the Court "of any facts that [the plaintiff] would have added"). This is particularly true where, as here, Plaintiffs "have already amended their complaint once in response to a motion to dismiss." *Langan v. Abbott*, 518 F. Supp. 3d 948, 954-55 (W.D. Tex. 2021). The Court should dismiss the SAC, Plaintiffs' third complaint, with prejudice.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' SAC in its entirety with prejudice.

25

Dated:  May 24, 2024

Respectfully submitted,

*/s/ Shahzeb Lari*
**HUGHES HUBBARD & REED LLP**
Kevin T. Abikoff
Katherine Taylor (*pro hac vice*)
1775 I Street, N.W., Ste 6th Floor
Washington, DC 20006
Tel: (202) 741-4945
katherine.taylor@hugheshubbard.com
kevin.abikoff@hugheshubbard.com

Shahzeb Lari (*pro hac vice*)
Terence Healy (*pro hac vice*)
One Battery Park Plaza
New York, NY 10004
Tel: (212) 837-6267
shahzeb.lari@hugheshubbard.com
terence.healy@hugheshubbard.com

*Counsel for Defendant Adam Gilchrist*

*/s/ Michelle A. Reed*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Michelle A. Reed
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
Tel: (214) 969-2713
mreed@akingump.com

Stephen M. Baldini
One Bryant Park, 44th Floor
New York, NY 10036
Tel: (212) 872-1062
sbaldini@akingump.com

*Counsel for Defendants Darren Richman, Mark Wahlberg, Michael Raymond, MWIG LLC, and Kennedy Lewis Investment Management LLC*

*/s/ Gregg J. Costa*
**GIBSON, DUNN & CRUTCHER LLP**
Gregg J. Costa
811 Main Street Suite 3000
Houston, TX 77002
Tel: (346) 718-6600
Fax: (346) 718-6620
gcosta@gibsondunn.com

Craig Varnen (*pro hac vice*)
333 South Grand Avenue, 46th Floor
Los Angeles, CA 90071
Tel: (213) 229-7922
Fax: (213) 229-6922
cvarnen@gibsondunn.com

Lissa Percopo (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 887-3770
Fax: (202) 530-9528
lpercopo@gibsondunn.com

*Counsel for Defendants F45 Training Holdings, Inc.*

*/s/ Danny S. Ashby*
**O'MELVENY & MYERS LLP**
Danny S. Ashby
2501 North Harwood Street, Suite 1700
Dallas, TX 75201
Tel: (972) 360-1900
dashby@omm.com

Jonathan Rosenberg (*pro hac vice*)
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
jrosenberg@omm.com

*Counsel for the Underwriter Defendants*

**BLANK ROME LLP**

*/s/ Linda Imes*
Linda Imes (*pro hac vice*)
Rebecca Orel (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 885-5537
Linda.Imes@blankrome.com
Rebecca.Orel@blankrome.com

**RMWBH PC**

*/s/ Gregory Godkin*
Gregory Godkin
317 Grace Lane
Austin, TX 78746
Tel: (512) 279-7344
ggodkin@rmwbh.com

*Counsel for Defendant Christopher Payne*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2024, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

/s/ Gregg J. Costa
Gregg J. Costa

*Attorney for Defendant F45 Training Holdings, Inc.*