**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| IN RE F45 TRAINING HOLDINGS, INC. SECURITIES LITIGATION | Case No. 1:22-cv-1291-DAE |

**PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 3

I.       PROCEDURAL HISTORY.......................................................................... 3

II.      DISCOVERY................................................................................................ 5

III.     THE PROPOSED SETTLEMENT............................................................... 5

ARGUMENT............................................................................................................. 6

I.       PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................. 6

         A.      Standards for Preliminary Approval of a Proposed Class Action
                 Settlement ........................................................................................ 6

         B.      Adequate Representation ................................................................. 8

         C.      The Settlement Is the Product of Good Faith, Informed, and  Arm's-
                 Length Negotiations by Experienced Counsel....................................... 10

         D.      The Settlement Provides Significant and Certain Benefits.................... 11

                 1.       Many Risks to Recovery Remained......................................... 11

                 2.       The Effective Process for Distributing Relief to the Settlement
                          Class.................................................................................. 14

                 3.       The Settlement Does Not Excessively Compensate Lead Counsel.......... 15

         E.      Settlement Class Members Are Treated Equitably Relative to One
                 Another ........................................................................................... 15

II.      PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS........................ 16

         A.      The Settlement Class Satisfies the Requirements of Rule 23(a)............ 16

         B.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3)........ 18

III.     THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ........................ 19

IV.      PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ........................ 20

CONCLUSION......................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 3D Sys. Sec. Litig.*,
   2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ...........................................................................13

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
   2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ..........................................................................8

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).............................................................................................................16

*Billitteri v. Sec. Am., Inc.*,
   2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) .......................................................................10

*Celeste Neely v. Intrusion Inc.*,
   2022 WL 17736350 (E.D. Tex. Dec. 16, 2022)............................................................ *passim*

*Claudet v. Cytec Ret. Plan*,
   2020 WL 3128611 (E.D. La. June 12, 2020) ..........................................................................7

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) .................................................................................................9

*In re Dynegy, Inc. Sec. Litig.*,
   226 F.R.D. 263 (S.D. Tex. 2005)..........................................................................................17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .....................................................................10

*In re EZCORP, Inc. Sec. Litig.*,
   2019 WL 6649017 (W.D. Tex. Dec. 6, 2019) .......................................................................15

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
   4 F. Supp. 3d 94 (D.D.C. 2013) ............................................................................................13

*Jones v. Singing River Health Servs. Found.*,
   865 F.3d 285 (5th Cir. 2017) ................................................................................................10

*In re Katrina Canal Breaches Litig.*,
   628 F.3d 185 (5th Cir. 2010) ................................................................................................19

*Kostka v. Dickey's Barbecue Rests., Inc.*,
   2022 WL 16821685 (N.D. Tex. Oct. 14, 2022), *Rep. & Recommendation*
   *adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022).........................................................8

*Marcus v. J.C. Penney Co.*,
  2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) *Rep. & Recommendation
  adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) .................................................... *passim*

*Miller v. Republic Nat'l Life Ins. Co.*,
  559 F.2d 426 (5th Cir. 1977) ................................................................................................ 7

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................................ 13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................................................. 19

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) .......................................................................................... 8, 11

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .................................................................... 20

**Statutes**

15 U.S.C. § 78u-4(a)(4) ............................................................................................................ 16

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................... 16

Fed. R. Civ. P. 23(a) ........................................................................................................... 16, 19

Fed. R. Civ. P. 23(a)(1) ............................................................................................................ 17

Fed. R. Civ. P. 23(a)(2) ............................................................................................................ 17

Fed. R. Civ. P. 23(a)(3) ............................................................................................................ 17

Fed. R. Civ. P. 23(a)(4) ............................................................................................................ 17

Fed. R. Civ. P. 23(b) ................................................................................................................ 16

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................................... 19

Fed. R. Civ. P. 23 (e) ........................................................................................................ 1, 7, 8

Fed. R. Civ. P. 23(e)(1) ............................................................................................................ 19

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................................. 7, 16

Fed. R. Civ. P. 23 (e)(2) ....................................................................................................... 7, 8

Fed. R. Civ. P. 23(e)(2)(A) ...........................................................................8

Fed. R. Civ. P. 23(e)(2)(B) .........................................................................10

Fed. R. Civ. P. 23(e)(2)(C)(i).......................................................................11

Fed. R. Civ. P. 26(f)......................................................................................5

**Other Authorities**

*Manual for Complex Litigation* (Fourth) (2020) .......................................7

Lead Plaintiff Pledge Capital LLC ("Pledge Capital" or "Lead Plaintiff") and named plaintiff Police and Fire Retirement System of the City of Detroit ("Detroit P&F" and, together with Pledge Capital, "Plaintiffs"), and all other members of the proposed Settlement Class, respectfully submit this motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), which is filed herewith.[1]

## PRELIMINARY STATEMENT

The Parties have reached a proposed settlement of this securities class action (the "Action") for a total of $10,500,000 in cash (the "Settlement") that, if approved by the Court, will resolve all claims asserted against Defendants in this Action. Plaintiffs request that the Court preliminarily approve the proposed Settlement. As explained herein, Plaintiffs respectfully submit that the Settlement warrants preliminary approval given that it is the result of vigorous arm's-length negotiations by experienced counsel overseen by a well-respected Mediator, represents a favorable recovery that falls well within the range of possible approval, and is very likely to meet all of the approval factors required by Rule 23(e) and Fifth Circuit precedent.

If approved, the Settlement will resolve the claims pending against defendant F45 Training Holdings, Inc. ("F45"); defendants Adam Gilchrist, Christopher E. Payne, Michael Raymond, Darren Richman, and Mark Wahlberg (the "Individual Defendants" and, together with F45, the "F45 Defendants"); and defendants Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC,

---

[1] All capitalized terms used in this Motion that are not defined have the same meanings as in the Stipulation and Agreement of Settlement, dated as of February 13, 2026 (the "Stipulation"), which is attached as Exhibit 1 to the Declaration of Alfred L. Fatale III ("Fatale Decl."), filed herewith. Unless otherwise noted, citations and internal quotations have been omitted.

Robert W. Baird & Co. Incorporated, Cowen and Company, LLC, Guggenheim Securities, LLC, Macquarie Capital (USA) Inc., MUFG Securities Americas Inc., and Roth Capital Partners, LLC (the "Underwriter Defendants" and, together with the F45 Defendants, the "Settling Defendants"). The terms of the proposed Settlement are set forth in the Stipulation and Agreement of Settlement, dated as of February 13, 2026, which was entered into by Plaintiffs and the Settling Defendants.

If the Court grants preliminary approval, Plaintiffs will be able to provide notice of the Settlement's terms and conditions to potential Settlement Class Members. A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Settlement Class Members may present arguments and evidence for and against the Settlement, and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement and to consider Lead Counsel's Fee and Expense Application.

The proposed Preliminary Approval Order has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement; (ii) preliminarily certify the Settlement Class and appoint Plaintiffs as Class Representatives and Lead Counsel as Class Counsel, for purposes of the Settlement only; (iii) approve the form and content of the long-form Notice, Claim Form, Postcard Notice, and Summary Notice, attached as Exhibits 1 through 4 to the Preliminary Approval Order; (iv) find that the notice program constitutes the best notice practicable under the circumstances and complies with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) set a date and time for the final Settlement Hearing; and (vi) appoint Strategic Claims Services ("SCS" or the "Claims Administrator"), which was selected after a competitive bidding process, to administer the Settlement process.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    PROCEDURAL HISTORY

On December 8, 2022, the Action was commenced by the filling of an initial securities class action complaint in this Court that asserted claims under Section 11 and 15 of the Securities Act of 1933 (the "Securities Act") for alleged misstatements and omissions in the offering documents for F45's July 15, 2021 initial public offering (the "IPO"). ECF No. 1.[2]

On February 27, 2023, the Court appointed Pledge Capital as Lead Plaintiff and approved its selection of Labaton Sucharow LLP, now known as Labaton Keller Sucharow LLP ("Labaton"), as Lead Counsel. ECF No. 26.

On May 19, 2023, Plaintiffs filed an Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"). ECF No. 59. The Amended Complaint alleged violations of Section 11, 12(a)(2), and 15 of the Securities Act and Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of a class consisting of all persons and entities who or which purchased or otherwise acquired the publicly traded common stock of F45 during the period from July 15, 2021 through July 26, 2022, inclusive. In addition to Settling Defendants, the Amended Complaint also named as defendants the KLIM Entities (as defined below) and MWIG LLC (the "Controlling Entity Defendants" and, together with Settling Defendants, the "Defendants").

Prior to filing the Amended Complaint, Plaintiffs engaged in a thorough investigation of

---

[2] F45's common stock sold in the IPO was registered with the U.S. Securities and Exchange Commission (the "SEC") pursuant to a registration statement filed with the SEC on Form S-1, which following amendments, was declared effective by the SEC on July 14, 2021 (the "Form S-1"). On July 16, 2021, F45 filed with the SEC the final prospectus (the "Prospectus"), which forms part of the registration statement (the Prospectus and Form S-1, as amended, are referred to collectively as the "Offering Documents").

the claims, which included the review and analysis of: (i) documents filed publicly by the Company with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and the defendants; (iii) research reports issued by financial analysts concerning F45 and the other Defendants; and (iv) other publicly available documents. Additionally, Plaintiffs, through Lead Counsel, contacted and interviewed former employees of F45 to discuss the issues related to the Action.

On August 7, 2023, Defendants filed a motion to dismiss the Amended Complaint (the "First Motion to Dismiss"), which Plaintiffs opposed. ECF Nos. 81, 90, 91. While the First Motion to Dismiss was pending, on October 23, 2023, F45 filed a Form 10-K for the year ended December 31, 2022, which included a restatement of the Company's consolidated financial statements for the year ended December 31, 2021, along with restated interim financial statements for the period ended March 31, 2022, June 30, 2022, and September 30, 2022 (the "Restatement").

Following the Restatement, on January 25, 2024, Plaintiffs filed a Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Second Amended Complaint" or "SAC"), which is the operative complaint in the Action. ECF No. 98. The SAC alleges violations of Section 11, 12(a)(2) and 15 of the Securities Act and Section 10(b) and 20(a) of the Exchange Act. In particular, the SAC added claims related to the Restatement.

On March 11, 2024, Defendants filed a motion to dismiss the SAC (the "Second Motion to Dismiss"), which Plaintiffs opposed. ECF Nos. 101, 102, 103. After briefing, on February 21, 2025, the Court issued an opinion granting in part, and denying in part, the Second Motion to Dismiss ("Motion to Dismiss Order" or "MTD Order"). ECF No. 111. On May 6, 2025, the Settling Defendants answered the Second Amended Complaint. ECF Nos. 118-121.

## II.    DISCOVERY

On June 30, 2025, Plaintiffs and the Settling Defendants filed with the Court a Joint Rule 26(f) Report outlining each side's competing views as to the scope of discovery in the Action. ECF No. 126. On July 8, 2025, the Court entered a stipulated scheduling order that set the deadline for completion of fact discovery as June 16, 2026, the completion of expert discovery as November 2, 2026, and the filing of dispositive motions as January 27, 2027. ECF No. 128.

In July 2025, the Parties began engaging in formal discovery efforts. In addition to engaging in discovery with the Settling Defendants, Plaintiffs served third-party subpoenas on relevant financial analysts that issued reports on F45 during the Class Period: Jeffries Financial Group, Inc. and Evercore Group LLC.

## III.    THE PROPOSED SETTLEMENT

In April 2025, counsel for Plaintiffs and F45 began discussing the possibility of exploring a mediated resolution of the Action. To facilitate those discussions and subsequently assist them in reaching a potential negotiated resolution of the Action's claims against all Defendants, Plaintiffs and the Settling Defendants engaged David Murphy of Phillips ADR Enterprises (the "Mediator"), a well-respected and experienced mediator.  On September 2, 2025, Plaintiffs made a formal settlement demand in writing to Settling Defendants.

On October 6, 2025, the Court entered an agreed-to order staying the Action pending a mediation scheduled for November 18, 2025. ECF No. 132. Thereafter, Plaintiffs and Settling Defendants focused on preparing for the mediation. These preparations included the F45 Defendants producing over 2,600 pages of documents, which Lead Counsel reviewed, and the mutual exchange of mediation statements and supporting material on November 4, 2025.

On November 18, 2025, counsel for Plaintiffs and F45 met in person for a full-day mediation. Despite extensive arm's length negotiations, Plaintiffs and F45 were unable to reach an

agreement but agreed to continue negotiations. On November 25, 2025, after several one-on-one discussions between counsel for Plaintiffs and F45, under the auspices of the Mediator, Plaintiffs and Settling Defendants came to an agreement to resolve all claims against all Defendants for a cash payment of $10.5 million, subject to the execution of a formal settlement agreement.

As of February 13, 2026, the Parties executed the Stipulation. In exchange for payment of the Settlement Amount, upon the Effective Date of the Settlement, Plaintiffs and the Settlement Class will release the Released Plaintiffs' Claims against the Released Defendant Parties, and Settling Defendants will release the Released Plaintiff Parties from all Released Defendants' Claims. *See* Stipulation ¶¶1(nn), (qq), 4-5. The definition of Released Plaintiffs' Claims has been tailored to provide the Released Defendant Parties with "complete peace" while being limited to claims that were asserted, or could have been asserted, by the Settlement Class, arising out of both the facts and matters in the Action and the purchase or acquisition of F45's publicly traded common during the period from July 15, 2021 through August 14, 2023, inclusive (the "Class Period") (including purchases or acquisitions pursuant and/or traceable to the Offering Documents for F45's IPO). *See* Stipulation ¶1(qq). The Settlement is not "claims-made" and there is no reversion of unclaimed funds to Defendants. *See* Stipulation ¶11.

## ARGUMENT

## I.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.   Standards for Preliminary Approval of a Proposed Class Action Settlement

Settlement is a strongly favored method for resolving class action litigation. *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting the "'overriding public interest in favor of settlement' that [the Fifth Circuit has] recognized '[p]articularly in class action suits'"); *Marcus v. J.C. Penney Co.,* 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017) ("There is a strong

judicial policy in favor of settlements, particularly in the class action context."), *Rep. & Recommendation adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018). Further, the Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977).

Rule 23(e) requires judicial approval of class action settlements. Such approval is a two-step process. ***First***, the court performs a preliminary review to determine whether the terms of the proposed settlement are sufficient to warrant notice of the settlement to the class and a hearing; and ***second***, after notice has been provided and a hearing held, the court determines whether to grant final approval of the settlement. *See Claudet v. Cytec Ret. Plan*, 2020 WL 3128611, at *3 (E.D. La. June 12, 2020); *see also Manual for Complex Litigation* (Fourth) § 13.14 (2020).

With respect to the first step of the approval process, a court should grant preliminary approval and authorize notice to the class upon a finding that the court "***will likely be able***" to: (i) finally "approve the [settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of [the settlement]." Fed. R. Civ. P. 23(e)(1)(B). In considering whether final approval is likely, Rule 23(e)(2) provides that courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[3] and (D) the proposal

---

[3] The only agreements between the Parties concerning the Settlement are the Stipulation and a Confidential Supplemental Agreement Regarding Requests for Exclusion, dated as of February 13, 2026 ("Supplemental Agreement"). *See* Stipulation ¶ 40. The Supplemental Agreement sets forth the conditions under which F45 has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon criteria stated in the

treats class members equitably relative to each other.

Courts in the Fifth Circuit may also consider the factors enumerated in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983),[4] many of which overlap with the Rule 23(e) factors. *See Kostka v. Dickey's Barbecue Rests., Inc.,* 2022 WL 16821685, at *10 (N.D. Tex. Oct. 14, 2022), *Rep. & Recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022) (the "Rule 23(e)(2) requirements … overlap significantly with the *Reed* factors"). The Rule 23(e)(2) factors are not intended to "displace any factor" traditionally used by courts to assess settlement approval, but rather to focus on core concerns to guide the approval decision. *Id.* at 10; *see also Al's Pals Pet Care v. Woodforest Nat'l Bank, NA,* 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019) (considering "the criteria set forth in [Rule] 23(e)(2) as well as the Fifth Circuit's *Reed* factors").

Plaintiffs respectfully request that the Court take the first step in the settlement approval process and grant preliminary approval. As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, this Settlement is more than likely to meet all of the factors required for final approval and, therefore, warrants preliminary approval.

### B.    Adequate Representation

In determining whether to approve a class action settlement, a court should consider whether "the class representatives and class counsel have adequately represented the class." Fed.

---

Supplemental Agreement (the "Opt-Out Threshold"). As is standard in securities class actions, the Supplemental Agreement is not made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Opt-Out Threshold to exact an individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.

[4] The Fifth Circuit's approval factors are: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed*, 703 F.2d at 172.

R. Civ. P. 23(e)(2)(A).

Here, Plaintiffs, sophisticated investors, have been active and informed participants in the Action. Plaintiffs consulted with Lead Counsel on litigation strategy and case developments, oversaw the drafting of the complaints and reviewed briefing on Defendants' motions to dismiss, participated in initial discovery efforts, and reviewed the Parties' respective mediation briefs in advance of the mediation with the Mediator. During the Parties' settlement negotiations, Plaintiffs were kept aware of both sides' principal arguments, and reviewed and approved the terms of the settlements. Moreover, like the rest of the proposed Settlement Class, Plaintiffs have an interest in obtaining the largest possible recovery from all Defendants.

Throughout the Action, Plaintiffs had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. Labaton is among the most experienced and skilled firms in the securities litigation field, and has a long and successful track record in such cases. *See* Fatale Decl., Ex. 2. Labaton has served as lead counsel in a number of high-profile matters. *See, e.g.*, *In re Am. Int'l Grp, Inc. Sec. Litig.*, No. 04-cv-8141 (S.D.N.Y.) ($1 billion recovery); *In re HealthSouth Corp. Sec. Litig.*, No. 03-cv-1500 (N.D. Ala.) ($600 million recovery); *In re Countrywide Sec. Litig.*, No. 07-cv-5295 (C.D. Cal.) ($600 million recovery).

Likewise, Lead Counsel diligently prosecuted the Action and considered the benefits of a resolution before agreeing to settle. Lead Counsel has developed a deep understanding of the facts of the case and merits of the claims through: (i) a comprehensive investigation; (ii) engaging a damages and causation expert; (iii) defeating, in part, Defendants' motion to dismiss; (iv) commencing and participating in discovery; and (v) engaging in arm's-length settlement negotiations with experienced defense counsel. Plaintiffs and Lead Counsel evaluated the potential

risks in the case and negotiated vigorously to secure the $10.5 million recovery. *Billitteri v. Sec. Am., Inc.*, 2011 WL 3586217, at *10 (N.D. Tex. Aug. 4, 2011) ("settlement was diligently negotiated after a long and hard-fought process that culminated in ultimately successful mediation."). Accordingly, the Settlement Class has been, and remains, well represented.

### C. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

In assessing a proposed settlement, courts must also consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). In conducting this assessment, courts recognize "[t]he involvement of 'an experienced and well-known mediator [to be] a strong indicator of procedural fairness.'" *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (finding securities class action settlement "obtained through formal mediation … strongly suggests that the settlement was not the result of improper dealings").

Here, the Settlement was achieved by Plaintiffs' and Lead Counsel's vigorous arm's-length negotiations with the Settling Defendants and their counsel, overseen by an experienced third-party neutral mediator. The Parties had widely differing views of Plaintiffs' ability to prove falsity for its remaining claims under Section 11 and 12(a)(2), Settling Defendants' ability to prove their negative causation and due diligence defenses, whether documents and testimony developed in discovery would support the allegations pled in the SAC, and significant issues pertaining to F45's ability to pay. With Plaintiffs and F45 still meaningfully apart in their respective positions after the mediation, they agreed to continue negotiations. After several one-on-one discussions between counsel for Plaintiffs and F45, under the auspices of the Mediator, Plaintiffs and the Settling Defendants came to an agreement in principle that was later memorialized in the Stipulation. Accordingly, it is respectfully submitted that the Settlement readily satisfies this factor.

**D.    The Settlement Provides Significant and Certain Benefits**

**1.    Many Risks to Recovery Remained**

Rule 23(e)(2)(C)(i) instructs courts to consider the adequacy of a proposed settlement in light of "the costs, risks, and delay of trial and appeal." "The first consideration—the costs risks, and delay of trial and appeal—also implicates four of the *Reed* factors: (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) plaintiffs' probability of success; (5) the range of possible recovery." *Kostka*, 2022 WL 16821685, at *11.

To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits to class members through settlement. Although Plaintiffs and Lead Counsel believe the claims to be strong, they acknowledge that Defendants could advance several substantial arguments that could have reduced, or altogether eliminated, any recovery for investors. Indeed, it is well known that "[s]ecurities claims are particularly difficult to prove because of the high bar for establishing falsity and scienter." *Celeste Neely v. Intrusion Inc.,* 2022 WL 17736350, at *4 (E.D. Tex. Dec. 16, 2022).

First, although the Court denied, in part, Defendants' motion to dismiss, Plaintiffs would have faced significant hurdles at summary judgment and at trial in connection with, among other things, ultimately proving falsity. Indeed, the Court has already dismissed all of the Exchange Act claims and most of the alleged misstatements pled in the SAC, limiting Plaintiffs' Securities Act claims to a handful of statements in the Offering Documents regarding multi-unit franchises, potential growth in the United States, and the economic model for F45 franchises. *See, e.g.*, MTD Order at 47 ("While F45 is protected by most of its forward-looking statements, they are not protected by some remarks argued to be opinions or statements of corporate optimism."). Moreover, the Court has already explicitly made note of its "skepticism regarding many of the statements alleged to be misleading" and found that "the 'fraud by hindsight' theory proposed by

11

Defendants to be persuasive." *Id.* at 38.

Additionally, the difficulties of maintaining liability at summary judgment, and proving it at trial, would have been compounded by the fact that Defendants will likely be able to produce documents and provide testimony in support of their argument that the Company's Offering Documents reflected the positive growth trajectory that F45 anticipated, but was prevented from realizing as a result of the unpredictable effects of COVID-19 and the global pandemic. As this Court carefully explained in the MTD Order, "[t]here is no doubt that Defendants' 'fraud by hindsight theory' of what actually occurred has some support" and "[a]t the summary judgment stage, the facts may lead the Court to ultimately agree with Defendants." *Id.* at 44. Further, Defendants will likely be able to produce documents or provide testimony in support of their due diligence defense that will preclude liability against all of the non-issuing Defendants.

Second, Plaintiffs would have to successfully certify a class of investors for the remaining claims. While Plaintiffs have not yet filed a motion for class certification, they anticipate that Defendants would raise traceability, truth on the market, or other challenges that could narrow the proposed class definition (and damages) or provide a foundation for successfully challenging certification on appeal.

Third, even if the hurdles to establishing liability were overcome, Plaintiffs would have likely confronted challenges with respect to rebutting Defendants' negative causation defense and establishing damages. Defendants have already argued—in connection with their motion to dismiss Plaintiffs' loss causation allegations for the (now dismissed) Exchange Act Claims—that none of the alleged corrective disclosures were corrective of any prior statement. Indeed, the Court has already recognized that the July 26, 2022 strategic update, which preceded a 60% drop in F45's stock price, merely reflected "bad news about the Company" that could be completely unrelated

to the remaining actionable misstatements. *Id.* at 60.

Plaintiffs consulted with an expert in damages who estimated class-wide statutory damages in light of the facts and circumstances presented in the case. Plaintiffs' consulting damages expert estimated that maximum statutory damages were approximately $234 million, depending on the trading model and assumptions used. However, Defendants likely have very strong negative causation arguments with respect to stock price decreases on dates other than June 27, 2022, which the Second Amended Complaint alleges was when the disclosures in Company's strategic update impacted the stock price. Putting aside June 27, 2022, if Defendants' negative causation defense was successful with respect to the other dates on which F45' stock price declined, then aggregate damages would have decreased to approximately $24.5 million.

Accordingly, the Settlement recovers a range of approximately 4.5% of estimated maximum damages to 42.8% of likely recoverable estimated damages, which is a favorable result. *See, e.g., In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013) (settlement value approximating "4-8% of the 'best case scenario' potential recovery" deemed reasonable); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"); *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *12 (E.D.N.Y. Jan. 4, 2024) (settlement representing approximately 1% of maximum damages approved as reasonable). In fact, over the past ten years, the median percentage of recovery (based upon NERA-defined losses) in securities class actions with similar investor losses was 2.7% of investor losses. *See* Edward Flores, Svetlana Starykh & Ivelina Velikova, *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review* (NERA Jan. 2026), Fatale Decl., Ex. 3 at 27.

Furthermore, even if Plaintiffs were to convince a jury on liability and damages, there are considerable risks to continuing the litigation. Lead Counsel's understanding is that F45 is not financially sound.  It has not publicly reported financial results since the Company was removed from the NYSE in late 2023 and taken private. Tellingly, in F45's last Form 10-Q submission with the SEC (for Q2 2023 earnings), the Company reported a six-month net loss and loss from operations of $46 million and $35 million, respectively. Given these financial impediments, the recovery the Settlement offers is substantial for investors.

2.      **The Effective Process for Distributing Relief to the Settlement Class**

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator, SCS. SCS will employ a well-tested protocol for the processing of claims. Namely, a Claimant will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by Claimants, SCS will determine each Claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation ¶ 23. Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶ 29(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶¶ 25, 38) and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, SCS will conduct a further distribution of remaining funds (less the estimated expenses for the

additional distribution, Taxes, and unpaid Notice and Administration Expenses). *Id.* at ¶26. Additional distributions will take place until it is no longer economical to continue. *Id.* If there are unclaimed funds, Plaintiffs designate Consumer Federation of America ("CFA") as *cy pres* beneficiary, or such other non-sectarian, not-for-profit organization approved by the Court. *Id.*[5]

### 3. The Settlement Does Not Excessively Compensate Lead Counsel

The reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and Litigation Expenses. The Settlement does not contemplate any specific award. Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants. Lead Counsel will seek no more than 30% of the Settlement Fund, an amount that is within the percentages that courts in the Fifth Circuit have approved. *See, e.g.*, *Celeste Neely*, 2022 WL 17736350, at *13 ("[C]ounsel is customarily awarded fees ranging from twenty-five percent of the settlement fund to over thirty-three percent of the settlement fund."); *In re EZCORP, Inc. Sec. Litig.*, 2019 WL 6649017, at *1 (W.D. Tex. Dec. 6, 2019) (awarding 33%). Lead Counsel will also seek payment of Litigation Expenses, including awards to Plaintiffs pursuant to the PSLRA, of no more than $200,000.

### E. Settlement Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to Plaintiffs or any segment of the Settlement Class. Rather, all Settlement Class members and Plaintiffs, will receive a distribution from the Net Settlement Fund based on their "Recognized Claim" pursuant to the

---

[5] CFA is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education. *See* www.consumerfed.org. With respect to victims of financial fraud, CFA has an Investor Protection program that works nationwide to promote consumer-oriented policies that safeguard investors against fraud. www.consumerfed.org/issues/investor-protection. CFA has been approved in numerous securities cases, including *Chen v. Missfresh Limited, et al.*, Case No. 22-cv-09836-JSR (S.D.N.Y.) and *In re Broadcom Corp. Sec. Litig.*, No. 01-CV-00275-MLR (C.D. Cal.).

Court-approved Plan of Allocation.[6] The proposed plan was created by Plaintiffs' damages expert and is consistent with damages theories under the Securities Act and the Exchange Act.

## II.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

In preliminarily approving the proposed Settlement, the Court must consider whether it will be able to certify the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3). Fed. R. Civ. P. 23(e)(1)(B).[7] Plaintiffs respectfully request that the Court preliminarily certify the Settlement Class, which has been stipulated to by the Parties and is defined as "all Persons and entities who or which purchased or otherwise acquired F45 publicly traded common stock during the period from July 15, 2021 through August 14, 2023, inclusive (including purchases or acquisitions pursuant and/or traceable to the Offering Documents for F45's IPO) and were allegedly damaged thereby," solely for the purposes of Settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (acknowledging the propriety of certifying a class solely for settlement purposes).[8] As discussed below, the Action satisfies all the factors for certification.

### A.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

---

[6] Plaintiffs may seek reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action, pursuant to the PSLRA. This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

[7] A table outlining the information required by Local Rule 23 is attached as Appendix A.

[8] A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *See Marcus,* 2016 WL 8604331, at *1 (certifying class in securities fraud action). Nevertheless, manageability concerns are not at issue for a settlement class. *See Amchem Prods.*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

and (4) the representative parties will fairly and adequately protect the interests of the class."

Rule 23(a)(1)'s numerosity requirement is satisfied because F45 common stock traded on the NYSE and Plaintiffs believe that there are thousands of potential Settlement Class Members (*see* SAC at ¶¶ 579). *See, e.g.*, *Celeste Neely*, 2022 WL 17736350, at *8 ("When class action claims involve 'nationally traded securities,' courts generally assume that the numerosity requirement is satisfied.").

Rule 23(a)(2)'s common questions of law and fact requirement is satisfied because the following non-exhaustive list of common questions exist as to all potential Settlement Class Members: (i) whether Defendants' misrepresentations and omissions violated the federal securities laws; and (ii) whether the Settlement Class Members have sustained damages, and the proper measure of damages (*see* SAC at ¶ 580). *See Marcus*, 2016 WL 8604331, at *3 ("The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."); *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 269 (S.D. Tex. 2005) ("This requirement is not demanding and is satisfied if at least one issue's resolution will affect all or a significant number of class members.").

Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiffs' claims arise from the same alleged course of conduct that gives rise to claims of other Settlement Class Members, are based on the same legal theories, and will be proven by the same set of operative facts. *See Celeste Neely*, 2022 WL 17736350, at *9 (finding typicality when "shareholder who suffered the same alleged injuries as the other class members arising from the same alleged wrongdoing.").

Rule 23(a)(4)'s requirement that named plaintiffs must "fairly and adequately protect the interests of the class" is satisfied because: (i) Plaintiffs purchased or otherwise acquired F45 publicly traded common stock during the Class Period and were subjected to the same alleged

conduct, such that there are no conflicts with potential Settlement Class Members and there is no need for a subclass; and (ii) Plaintiffs are represented by competent and qualified counsel who have vigorously litigated the claims of the proposed class. *See Marcus*, 2016 WL 8604331, at *3 ("The adequacy inquiry … encompasses the class representative, their counsel, and the relationship between the two…. It serves to uncover conflicts of interest between named parties and the class they seek to represent.").

**B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the central issue for establishing Defendants' liability is whether they made misstatements or omissions of material fact—an issue that is susceptible to generalized proof. (*see* SAC at ¶ 580). *See Celeste Neely*, 2022 WL 17736350, at *9 ("[C]lass issues predominate over individual issues … because each claim presents virtually identical questions of law and fact, except that some class member may have suffered different amounts of damages compared to others."); *Dynegy*, 226 F.R.D. at 270 ("the Supreme Court has acknowledged that '[p]redominance is a test readily met in certain cases alleging consumer or securities fraud.'").

Moreover, class resolution here will be "superior to other available methods for fairly and efficiently adjudicating the controversy," because: (i) the number of Settlement Class Members is far too numerous, and the typical claim is too small, for each individual Settlement Class Member to have an interest in maintaining a separate action; (ii) Lead Counsel is not aware of any individual Settlement Class Member interested in bringing its own action against Defendants for the alleged misrepresentations; (iii) the geographical dispersion of the Settlement Class Members makes it desirable to litigate Plaintiffs' claims in this forum; (iv) there are no management difficulties that

would preclude this Action from being maintained as a class action. *See, e.g.*, *Celeste Neely*, 2022 WL 17736350, at *9 ("Class adjudication is especially preferred for securities fraud cases like this one because—given 'the expense and burden that such litigation ... entail[s]'—the claims would likely 'never be heard' otherwise."). In sum, the proposed Settlement Class meets all of the requirements of Rules 23(a) and (b)(3) and is appropriate for certification.

## III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed notices attached as Exhibits 1, 3, and 4 to the proposed Preliminary Approval Order, would satisfy due process, the federal rules, and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of a class action and settlement to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process is satisfied if the notice provides class members with the "information reasonably necessary for them to make a decision whether to object to the settlement." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010).

Under Federal Rule of Civil Procedure 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Lead Counsel proposes to provide notice by: (i) individual mailing of the Postcard Notice to all Settlement Class Members who can reasonably be identified, using mailing records obtained from F45's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers; (ii) emailing of the Postcard Notice (to the extent emails are provided); (iii) publication of the Summary Notice in *The Wall Street Journal,* as well as dissemination on the internet using *PR Newswire*; and (iv) posting documents on a website from which copies can be downloaded. *See* proposed Preliminary Approval Order. SCS will also mail the Notice and Claim

Form upon request. The Postcard Notice will provide key information regarding the Settlement and the rights of Settlement Class Members in connection therewith, and will direct recipients to the website for more detailed information. Numerous courts have approved similar notice programs. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *3 (holding that notices delivered through similarly procedures—*i.e.*, mailed notice, publication notice, and website—satisfied the Rule 23 requirement); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *10-11 (N.D. Tex. Nov. 8, 2005) (same).

Plaintiffs also request that the Court appoint SCS as the Claims Administrator. SCS is a nationally recognized notice and claims administration firm that has successfully and efficiently administered numerous complex securities class action settlements. *See* www.strategicclaimsservices.net; Fatale Decl. Ex. 4. SCS was chosen after a competitive bidding process.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Plaintiffs respectfully propose the schedule in Appendix B for Settlement-related events. The proposed schedule revolves around the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing—which Plaintiffs request be approximately 90 days from entry of the Preliminary Approval Order, in order to allow time for the notices to be disseminated and for recipients to act.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to the Settlement Class; (iii) appoint Strategic Claims Services as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and (v) grant

such other and further relief as may be required.

DATED: February 17, 2026                    Respectfully submitted,

                                            **LABATON KELLER SUCHAROW LLP**

                                            /s/ Alfred L. Fatale III
                                            Alfred L. Fatale III (*pro hac vice*)
                                            Joseph N. Cotilletta (*pro hac vice*)
                                            Jessica N. Goudreault (*pro hac vice*)
                                            140 Broadway
                                            New York, New York 10005
                                            Tel: (212) 907-0700
                                            Fax: (212) 818-0477
                                            afatale@labaton.com
                                            jcotilletta@labaton.com
                                            jgoudreault@labaton.com

                                            *Lead Counsel for Lead Plaintiff Pledge*
                                            *Capital LLC, Additional Plaintiff Police and*
                                            *Fire Retirement System of the City of*
                                            *Detroit, and the Proposed Class*

                                            Brian Schall (*pro hac vice*)
                                            Rina Restaino (*pro hac vice*)
                                            THE SCHALL LAW FIRM
                                            2049 Century Park East, Suite 2460
                                            Los Angeles, California 90067
                                            Tel: (310) 301-3335
                                            brian@schallfirm.com
                                            rina@schallfirm.com

                                            *Additional Counsel for Lead Plaintiff Pledge*
                                            *Capital LLC*

## APPENDIX A

## INFORMATION REQUIRED – MOTION FOR CLASS CERTIFICATION

| PRELIMINARY APPROVAL | Where LR 23 is Addressed |
|---|---|
| (1) A brief statement of the case. | Motion at 3-6 |
| (2) A statement defining the class plaintiff seeks to have certified including its geographical and temporal scope. | Motion at 16 |
| (3) A description of plaintiff's particular grievance and why that claim qualifies plaintiff as a member of the class as defined. | Motion at 17-18 |
| (4) Whether the plaintiff contends that the action may be maintained under Rule 23(b)(1), Rule 23(b)(2), or Rule 23(b)(3) and why. | Motion at Argument Section II.B. |
| (5) A statement respecting the four prerequisites of Federal Rule of Civil Procedure 23(a). | Motion at Argument Section II.A. |
| (a) The anticipated number of class members and how this number was determined. | Motion at 17 |
| (b) The common questions of law and fact involved. | Motion at 17 |
| (c) The reasons why plaintiff's claim is typical of those of the other class members. | Motion at 17 |
| (d) The reason why representation by the named plaintiff is adequate to protect the interests of the class. This part of the statement shall specifically answer the following questions: | Motion at Argument Sections I.B. & II.A. |
| (i) Is the claim of the named plaintiff presently or potentially in conflict with that of any members of the class? | Motion at 17-18 |
| (ii) Will the claims of the class require subclasses presently or in the future? | Motion at 18 |
| (iii) What is the prior experience of counsel for the plaintiff that would indicate capability to handle the lawsuit? | Motion at 9 Fatale Decl. at ¶9 |
| (iv) Is counsel presently representing or has he at any time represented, a class in any other class action, and if so, when, and how many instances? | Fatale Decl. at ¶9 |

i

| PRELIMINARY APPROVAL | Where LR 23 is Addressed |
|---|---|
|     (v) How many cases is plaintiff's counsel now handling in which class action allegations are made? | Fatale Decl. at ¶9 |
| (6) A statement describing any other pending actions in any court against the defendants alleging the same or similar causes of action. | Motion at 18<br>Fatale Decl. at ¶¶6-8 |
| (7) A statement that the attorney for the named plaintiff has discussed and thoroughly explained to the plaintiff the nature of a class action and potential advantages and disadvantages to the named plaintiff by proceeding in a class action rather than individually. | Fatale Decl. at ¶10 |
| (8) A statement of the proposed notices to the members of the class and how and when the notices will be given, including a statement regarding security deposit for the cost of notices. | Motion at Argument Sections III-IV. |
| (9) A description of the extent of any settlement negotiations that have taken place and the likelihood of settlement with the named plaintiff on an individual basis. If such settlement is likely, include a statement specifying: | Motion at Factual and Procedural Background Section III |
|     (a) Whether or not counsel have any knowledge of any person who has relied on the fact that this suit was initially filed as a class action. | Fatale Decl. at ¶11 |
|     (b) The manner in which counsel will protect the class in the event of settlement with the named plaintiff on an individual basis. | N/A |
| (10) A statement of any other matters that the plaintiff deems necessary and proper to the expedition of a decision on the motion and the speedy resolution of the case on the merits. | N/A |

**APPENDIX B**

**SCHEDULE OF SETTLEMENT RELATED EVENTS**

| | |
|---|---|
| Deadline for commencement of mailing the Postcard Notice | *No later than 12 business days after entry of Preliminary Approval Order ("Notice Date")* |
| Deadline for publishing the Summary Notice | *Within 14 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | *No later than 35 calendar days before the Settlement Hearing.* |
| Deadline for receipt of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for submitting Claim Forms | *No later than 15 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers | *No later than 7 calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience, approximately 90 days from entry of the Preliminary Approval Order. The hearing may be held either in-person or remotely, in the discretion of the Court. Any scheduling updates will be posted on the Settlement website and Lead Counsel's website.* |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 17, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

Dated: February 17, 2026

<u>/s/ *Alfred L. Fatale III*</u>
Alfred L. Fatale III