**FILED**

April 16, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____Christian Rodriguez_____

DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

IN RE F45 TRAINING
HOLDINGS, INC.
SECURITIES LITIGATION

_____

§
§
§
§
§
§
§

No. 1:22-CV-1291-DAE

## ORDER PRELIMINARILY GRANTING PLAINTIFFS' MOTION TO APPROVE SETTLEMENT

Before the Court is Lead Plaintiff Pledge Capital LLC ("Pledge Capital" or "Lead Plaintiff") and named Plaintiff Police and Fire Retirement System of the City of Detroit ("Detroit P&F") (collectively, "Plaintiffs") Unopposed Motion for Preliminary Approval of Class Action Settlement. (Dkt. # 134.) The Court held a hearing on this matter on April 16, 2026. After careful consideration of the Motion and the arguments presented at the hearing, the Court—for the reasons that follow—**GRANTS** Plaintiffs' Motion. (Dkt. # 134.)

## FACTUAL BACKGROUND[1]

F45 is a fitness franchisor that licenses the F45 Training brand in over 70 countries. (Dkt. # 98 at ¶ 3.) The Company offers a 45-minute high-intensity

---

[1] The Court repeats the factual background as described in its previous Orders. The facts described are as alleged in Plaintiffs' Second Amended Complaint. (Dkt. # 98.)

workout distributed primarily through its technology-enabled platform.  (Id.)  F45 initially sought to go public in 2020, though the COVID-19 pandemic delayed F45's initial public offering ("IPO") until July 2021.  (Id. at ¶¶ 66–70.)

F45's revenue and profits are allegedly primarily derived from fees charged to its franchisees, including upfront establishment fees and monthly recurring franchise fees.  (Id. at ¶ 4.)  Thus, prior to the IPO and throughout the Class Period, F45's business model was allegedly centered around rapid growth through the franchising of single and multi-unit fitness studios with low overhead. (Id. at ¶ 57.)

F45 sells two types of franchises.  Under a traditional franchise agreement, the franchisee pays an initial establishment fee and agrees to standard terms and conditions, including an agreement to purchase equipment packs from F45.  (Id. at ¶ 55(a).)  The franchisee is then granted exclusive rights to operate within a specified territory.  (Id.)  In addition to these traditional franchise agreements, F45 sells multi-unit development agreements, under which the franchisee purchases the right to develop multiple franchises in a specified area, usually for a period of three to five years.  (Id. at ¶ 55(b)).  Multi-unit development agreements allegedly require the franchisee to make upfront payments to F45. (Id.)

When the IPO occurred, F45 had sold more than 2,800 franchises worldwide.  (Id. at ¶ 54.)  F45 reported its growth through various metrics, including "Total Franchises Sold" and "New Franchises Sold," which respectively measured the total and new franchise agreements and studios committed under multi-unit agreements.  (Id. at ¶ 58.)  F45 also reported "Initial Studio Openings," "Total Studios," and "Open Studios," which measured the new and total studios opened during a specified period.  (Id.)

F45 filed a registration statement on Form S-1 for its IPO which, after two amendments, was declared effective on July 14, 2021 (the "Registration Statement").  (Id. at ¶ 70.)

According to Lead Plaintiffs Pledge Capital, LLC ("Lead Plaintiff") and additional plaintiff Police and Fire Retirement System of the City of Detroit ("Detroit P&F," together with Lead Plaintiff, "Plaintiffs"), they were misled by the Registration Statement.  While Plaintiffs were told F45 could maintain a substantial rate of growth and scale of operations, in reality, Plaintiffs claim that F45's business model was reliant on undisclosed and unsustainable practices.  (Id. at 8(a)-(h).)

Plaintiffs say that Defendants painted an optimistic picture of the business that was in fact deeply problematic.  Plaintiffs claim that a key growth metric, "New Franchises Sold," was defined to allow F45 to misleadingly

3

overreport the number of multi-unit franchise agreements regardless of whether these multiunit franchisees ever opened.  (Id. at ¶ 279.)  Moreover, on October 1, 2021, F45 allegedly changed the definition of "Initial Studio Openings" from "the first month in which the studio first generates monthly revenue of at least $4,500" to "the month in which we record the initial studio opening in our internal systems," regardless of whether the studio is generating any revenue.  (Id. at ¶¶ 300–03.) Plaintiffs say this was an attempt to artificially inflate a key growth metric used by analysts to value the Company.  (Id. at ¶¶ 301–04.)

Plaintiffs also claim that F45 began waiving certain fees and issued undisclosed modified payment terms to potential franchisees.  (Id. at ¶ 298.) Plaintiffs claim that Defendants failed to disclose that F45's largest franchisees already had been granted exclusive rights to most of the key territories in the U.S., leaving little room for additional growth.  (Id. at ¶ 157(d).)  Indeed, Plaintiffs claim F45 was "selling" exclusive franchise rights to multi-unit franchisees without regard to whether those franchisees could financially open those franchises.  (Id. at ¶ 157(g).)

Plaintiffs also claim that F45 created new loan financing options in collaboration with Fortress Credit.  (Id. at ¶ 306.) At an event in Las Vegas, Nevada, F45 allegedly told potential franchisees that any franchise operator who agreed to open 20 studios only had to put down $10,000.  (Id. at ¶ 308.) Thus, F45

allegedly received "commitments" for approximately 600 additional studios. (Id.) This allegedly led to minimal due diligence for the potential franchisee's creditworthiness or ability to purchase, open, and successfully manage F45 studios. (Id. at ¶ 275.)

On July 26, 2022, F45 issued a "Strategic Update" disclosing that the $250 million financing facility with Fortress was no longer available. (Id. at ¶ 318.) The Company also announced: (i) a cut in the number of new studios the Company would open in 2022—down approximately 60% from 1,000 studios to a range of 350 to 450 new studios; (ii) a cut in the number of new franchises that the Company would sell in 2022— down approximately 70% from 1,500 to 350 to 450 new franchises; (iii) a reduction in the Company's financial guidance for full-year revenue from a range of $255 to $275 million to a range of $120 to $130 million; (iv) the reduction of approximately 45% of F45's workforce; (v) the departure of CEO Adam Gilchrist; (vi) the appointment of an Interim CEO; and (vii) the payment of a $2.4 million retention bonus to CFO Payne to ensure he would stay on as CFO for an additional 10 weeks. (Id. at ¶ 511.) On this news, F45's common stock fell more than 60% to close at $1.35 per share on July 27, 2022. (Id. at ¶ 512.)

On August 15, 2022, F45 released its 2Q22 financial results and disclosed that: (i) total franchises sold declined by 175 in the region; (ii) gross

profit decreased 9.1% from the prior period; (iii) gross profit margin fell to 65.5%

from 80.6% for the prior year period; and (iv) franchise gross profit declined 8.9%

to $17.4 million compared to $19.1 million in 2Q21.  (Id. at ¶ 516.)  F45 also

confirmed that 307 franchises were terminated, and another 300 franchises were

still in question as F45 was unable to provide financing after the termination of the

Fortress financial deal.  (Id. at ¶¶ 517–18.)  Thus, allegedly almost all the 706

franchises purportedly "sold" in 1Q22 were, in fact, conditional agreements that

contained significant financing contingencies.  (Id. at ¶ 518.)  By May 18, 2023,

F45's stock was trading at less than $1.00 per share, down from its IPO price of

$16.00 per share. (Id. at ¶ 527.)  On August 14, 2023, F45 delisted from the NYSE.

(Id. at ¶ 18.)

On October 23, 2023, F45 issued its Form 10-K for fiscal 2022, which

included a restatement of F45's financial statements for the year ending on

December 31, 2021, and the first three quarters of 2022.  (Id. at ¶¶ 107, 324–349.)

The Restatement allegedly revealed errors related to, among other things,

premature revenue recognition on equipment and merchandise revenue, improperly

recognized rebates, and other errors.  (Id. at ¶ 20.)

Plaintiffs allege that statements in the IPO Materials and throughout

the alleged Class Period were materially false and misleading when made. These

include statements about: (1) F45's growth (Id. at ¶¶ 175-81 [376-82], 407-08,

416-17, 420-23, 429(a), 430, 439, 441, 443, 446, 448, 455, 464, 466, 468, 478(c)-(f), 489, 493-94, 497, 500-01); (2) F45's unit economic model (Id. at ¶¶ 151-56 [352-57], 409, 424, 429(b), 455-56, 459, 478(a)-(b)); (3) increasing percentage of multi-unit franchisee systems being sold (Id. at ¶¶ 165-171 [366-71], 418, 442, 458, 465, 469, 498); (4) F45's internal controls and remediation of material weakness in internal controls (Id. at ¶¶ 195-96 [395-96], 432, 434, 481-82); risk warnings (Id. at ¶¶ 201-03 [401-03], 479(a)-(b); (5) quality & credit-worthiness of F45 franchisees (¶¶ 187-88 [388-90], 444-45, 467, 479(a)-(b)); (6) F45's franchise equipment fee (Id. at ¶¶ 419, 431, 457); (7) the "franchise effect" (Id. at ¶¶ 495, 499); (8) guidance and franchisee pipeline (Id. at ¶¶ 440, 489, 491); (9) 700 net new franchise "sales" (Id. at ¶¶ 490, 492-93 496); and (10) F45's Fortress financing facility (Id. ¶ 490).

## PROCEDURAL BACKGROUND

Plaintiffs' Second Amended Complaint alleged violations of Section 11, 12(a)(2), and 15 of the Securities Act, and Section 10(b) and 20(a) of the Exchange Act. (Dkt. # 98.) Defendants filed a Motion to Dismiss the Second Amended Complaint. (Dkt. # 101.) On February 21, 2025, the Court granted in

part and denied in part Defendants' motion to dismiss Plaintiffs' amended complaint.[2]  (Dkt. # 111.)

Thereafter, Defendants answered the Second Amended Complaint. (Dkt. ## 118, 119, 120, 121.)  On October 3, 2025, the parties filed an Agreed Motion to Stay Proceedings Pending Mediation, and the case has remained stayed since.  (Dkt. # 132.)  On February 17, 2026, Plaintiffs filed the instant Unopposed Motion for Preliminary Approval of Class Action Settlement.  (Dkt. # 134.) Plaintiffs also seek preliminary certification of the settlement class, approval of their class notice program, and entry of a schedule for settlement-related events, including a date and time for a final settlement hearing.  (Id.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e), claims of a certified class may be settled "only with the court's approval."  Fed. R. Civ. P. 23(e).  The Court must decide "whether to give notice of the proposal to the class" based on the information provided by the parties.  Fed. R. Civ. P. 23(e)(1)(A).  If the Court finds that Notice is necessary, notice must be directed "in a reasonable manner to

---

[2] Specifically, the Court dismissed claims under the Exchange Act, claims for the violation of Item 303 and Item 105, and control person claims under Section 20(a) of the Exchange Act and Section 15 and Section 20 of the Securities Act without prejudice.  (Dkt. # 111 at 73.)  The Court denied Defendants' Motion to Dismiss claims under the Securities Act, except as to the Section 12 claim asserted by Lead Plaintiff Pledge Capital for lack of standing.  (Id.)

all class members who would be bound by the proposal if giving notice is justified

by the parties' showing that the court will likely be able to approve the proposal

under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). If the proposal is one that

would bind class members, "the court may approve it only after a hearing and only

on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2).

DISCUSSION

The Court begins by discussing the preliminary class certification

request before turning to whether the proposed settlement terms are "fair,

reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court will then address

the remaining issues in Plaintiffs' motion, including the proposed notice program

and schedule of settlement-related events.

I.    Preliminary Certification of Settlement Class

Plaintiffs seek preliminary certification of the proposed settlement

class. Plaintiffs propose that this class include "all Persons and entities who or

which purchased or otherwise acquired F45 publicly traded common stock during

the period from July 15, 2021 through August 14, 2023, inclusive, (the "Class

Period") (including purchases or acquisitions pursuant and/or traceable to the

Offering Documents for F45's IPO) and were allegedly damaged thereby." (Dkt. #

134-1 at 2.) Plaintiffs seek to exclude (i) Defendants; (ii) immediately families of

the Individual Defendants; (iii) any Person who was an officer, director, or control

9

person of F45, the Underwriter Defendants, or the Controlling Entity Defendants

(at all relevant times, and member of their immediate families); (iv) any entity in

which any Defendant has or had a controlling or beneficial interest; and (v) the

legal representatives, heirs, affiliates, successors, or assigns of any such excluded

Person or entity.[3]  (Id.)

"Federal Circuits recognize the utility of Federal Rule of Civil

Procedure 23(b)(3) settlement classes and, among current applications of Rule

23(b)(3), the "settlement only" class has become a stock device."  Telles v.

Midland College, No. MO-17-CV-00083-DC, 2018 WL 7352426, at *2 (W.D.

Tex. Apr. 30, 2018) (citing Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 618

(1997)).  A court may certify a class if the proposed class meets the four

requirements in Rule 23(a) and one of the three additional requirements in Rule

23(b).  See Fed. R. Civ. P. 23; see also Mullen v. Treasure Chest Casino, LLC, 186

F.3d 620, 623 (5th Cir. 1999).

---

[3] Plaintiffs specifically note that not excluded from the Settlement Class is any Investment Vehicle, except for the Controlling Entity Defendants, as defined in the Stipulation.  (Dkt. # 134-1 at 2–3.)  The Stipulation defines "Investment Vehicle" as "any investment company or pooled investment fund, including but not limited to, mutual fund families, exchange traded funds, fund of funds and hedge funds, in which Defendants, or any of them, have, has or may have a direct or indirect interest, or as to which any of their affiliates may act as an investment advisor, but in which any Defendant alone or together with its, his or her respective affiliates is not a majority owner or does not hold a majority beneficial interest."  (Dkt. # 134-3 at 12.)

Rule 23(a) has four prerequisites to certify a class: numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).

The numerosity requirement is satisfied, as Plaintiffs allege there are thousands of potential Settlement Class Members because the at-issue stock was a nationally traded security.  (Dkt. # 134 at 22; Dkt. # 98 at ¶ 579.)

The proposed class also meets the commonality requirement, sharing common questions of law or fact.  Because the class is made up of shareholders from the same relevant time-period, questions of law and fact concerning whether Defendants' actions constituted violations of federal securities laws, and whether class members sustained damages would be common to most, if not all, class members.  (Dkt. # 134 at 22); see Celeste Neely v. Intrusion, No. 4:21-cv-374-sdj, 2022 WL 17736350, at *9 (E.D. Tex. Dec. 16, 2022) (finding commonality where the proposed class was made up of shareholders who suffered the same alleged injury).

The Lead Plaintiffs' claims are also typical of those of the proposed class.  Lead Plaintiffs were shareholders of F45 common stock who alleged the same injuries as the other members of the proposed class.  (Id.)

Finally, Lead Plaintiffs and class counsel have adequately represented the class.  Plaintiffs' interests align with the interests of the rest of the settlement

11

class, and Lead Counsel are experienced in shareholder class action litigation and securities fraud cases.  (Dkt. # 134 at 14; Dkt. # 134-2.)

The requirements of Rule 23(b)(3) are also satisfied, which authorizes class certification so long as "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). As alleged in their Second Amended Complaint and in the instant motion, the predominant question here is whether Defendants made misstatements or omissions of material fact, an inquiry which affects class members at large.  (Dkt. # 134 at 18.)  Thus, class issues predominate over individual issues.

In considering whether a class action is the superior method of adjudication, the Court considers: (A) the class members' interests in controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).  However, in the context of certifying a class for settlement-only purposes, the fourth factor may be disregarded.  See Amchem Prod., Inc., 521 U.S. at 620.

The Court agrees with Plaintiffs that at this preliminary settlement stage, the requirements of Rule 23(b)(3) are met where Counsel is not aware of any individual Settlement Class member interested in bringing his or her own action against Defendants for the same alleged conduct and the class members are geographically dispersed.  (Dkt. # 134 at 23–24.)  Where for many Plaintiffs, "the cost of bringing individual suits to seek recovery would . . . outweigh the recovery obtained[,]" class certification for the purposes of settlement is appropriate. Rooney v. EZCORP, Inc., A-15-CA-00608-SS, 330 F.R.D. 439, 451 (W.D. Tex. Feb. 19, 2019).

Accordingly, because the proposed Settlement Class meets the requirements for class certification under Rule 23(a) and Rule 23(b)(3), the Court finds the proposed Settlement Class should be preliminarily certified for the purposes of settlement only.

II.    Plaintiffs' Proposal is Fair, Reasonable, and Adequate

Under Federal Rule of Civil Procedure 23(e)(2), the Court must consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate[;] and (D) the proposal treats class members equitably relative to each other."

13

Here, it appears that Plaintiffs have adequately represented the class as investors who owned common stock in F45.  Plaintiffs contend they have been "active and informed participants" in this litigation, and that their interests align with those of the rest of the class.  (Dkt. # 134 at 14.)  This Court agrees.  Lead Counsel has also adequately represented the class throughout this litigation over the course of several years, engaging in discovery, motion practice, and settlement negotiations with defense counsel.  (Id.)  Lead Counsel is also well-qualified, citing several high-profile securities litigation matters in which the firm has served as lead counsel.  (Id.)  Both Plaintiffs and their counsel have diligently pursued their claims since the inception of this suit.

It also appears to the Court that the parties have negotiated the settlement proposal at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  Plaintiffs represent that the Parties attended multiple mediation sessions to continue negotiation sessions despite significantly differing views on the merits of Plaintiffs' claims.  (Dkt. # 134 at 15.)  This settlement is the product of multiple discussions facilitated by a mediator, and thus this factor weighs in favor of granting the requested relief.  (Id.)

At this stage of the settlement approval process, the third factor also weighs in favor of approval.  Plaintiffs allege they have consulted with an expert in class action damages who estimated maximum statutory damages at $234 million.

14

(Dkt. # 134 at 18.)  However, Plaintiffs acknowledge that Defendants likely have strong negative causation arguments, and if those defenses are successful, damages would be decreased to approximately $24.5 million.  (Id.)  The total amount of the settlement—$10.5 million—represents approximately 4.5% of the estimated maximum damages, or 42.8% of likely recoverable estimated damages.  (Id.) Plaintiffs also cite risks involved in continuing the litigation, including uncertainty in jury outcomes and the financial health of F45.  (Id. at 18–19.)  Thus, the Court agrees that at the preliminary approval stage, the settlement amount is sufficient to provide adequate relief for the class.

Finally, the proposal treats class members equitably relative to one another.  In accordance with the Plan of Allocation, all members of the Settlement Class and Plaintiffs would receive a distribution from the Net Settlement Fund, which would differ based on their "Recognized Claim."  (Dkt. # 134 at 20–21.) Thus, this fourth factor also weighs in favor of preliminary approval.

Based on the above reasons and the parties' representations at the hearing, the Court finds that Plaintiffs' Settlement Proposal is fair, reasonable and adequate, and the Court will likely be able to approve the settlement pursuant to Rule 23(e)(2).

III.    Plaintiffs' Proposed Notice Program

Plaintiff attaches their proposed notices to the class as Exhibits 1, 3, and 4 to their Motion and asks the Court for preliminary approval their proposed notice program.  Rule 23(c)(2)(B) provides that the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Lead Counsel proposes providing notice by:

> (i) individual mailing of the Postcard Notice to all Settlement Class Members who can reasonably be identified, using mailing records obtained from F45's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers; (ii) emailing of the Postcard Notice (to the extent emails are provided); (iii) publication of the Summary Notice in The Wall Street Journal, as well as dissemination on the internet using PR Newswire; and (iv) posting documents on a website from which copies can be downloaded. SCS will also mail the Notice and Claim  Form upon request.  The Postcard Notice will provide key information regarding the Settlement and the rights of Settlement Class Members in connection therewith, and will direct recipients to the website for more detailed information.

(Dkt. # 134 at 25–26.)  The Motion further requests that Strategic Claims Services ("SCS"), a notice and claims administration firm, be appointed the Claims Administrator.

Upon reviewing the attached notices, the Court finds that the proposed class notice should be approved as to form and content,[4] and SCS is appointed as the

---

[4] The parties should, however, take care to ensure all relevant deadlines are filled in in accordance with this Order.

16

Claims Administrator.  The methods of distribution of notice satisfy due process

and the requirements set forth in Federal Rule of Civil Procedure 23(c)(2)(B).  In

re Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088, 1100 (5th Cir. 1977).

IV.    Schedule of Settlement-Related Events

As a final matter, the Parties request that the Court set forth a schedule

of settlement-related events.  Based on the Parties' representations at the hearing,

the Court sets the following settlement-related deadlines:

| | |
|---|---|
| Deadline for commencement of mailing of the Postcard Notice | *May 1, 2026* |
| Deadline for publishing the Summary Notice | *May 10, 2026* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | *July 10, 2026* |
| Deadline for receipt of requests for exclusion or objections | *July 24, 2026* |
| Deadline for submitting Claim Forms | *August 1, 2026* |
| Deadline for filing reply papers | *August 13, 2026* |
| Settlement Hearing | *August 27, 2026* |

CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Preliminary Approval of Class Action Settlement is **GRANTED**.  (Dkt. # 134.)

**IT IS FURTHER ORDERED** that:

1.      The Court has reviewed the Stipulation and preliminarily finds, pursuant to Federal Rule of Civil Procedure 23(e)(1), that the Court will likely be able to approve the proposed Settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2), subject to further consideration at the Settlement Hearing described below.

2.      Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the Court preliminarily certifies, for purposes of the Settlement only, the Settlement Class of: all Persons and entities who or which purchased or otherwise acquired F45 publicly traded common stock during the period from July 15, 2021 through August 14, 2023, inclusive, (the "Class Period") (including purchases or acquisitions pursuant and/or traceable to the Offering Documents for F45's IPO) and were allegedly damaged thereby. Excluded from the Settlement Class are: (i) Defendants; (ii) Immediate Families of the Individual Defendants; (iii) any Person who was an officer, director, or control person of F45, the Underwriter Defendants, or the Controlling Entity Defendants (at all relevant times, and members of their Immediate Families);

18

(iv) any entity in which any Defendant has or had a controlling or beneficial interest; and (v) the legal representatives, heirs, affiliates, successors, or assigns of any such excluded Person or entity.  However, any Investment Vehicle (as defined in the Stipulation)[5], except for the Controlling Entity Defendants, will not be excluded from the Settlement Class. Also excluded from the Settlement Class will be any Persons and entities who or which exclude themselves from the Settlement Class by submitting a timely and valid request for exclusion that is accepted by the Court.

3.      The Court finds and preliminarily concludes that the prerequisites of class action certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedures have been satisfied for the Settlement Class defined herein and for the purposes of the Settlement only, in that: (a) the members of the Settlement Class are so numerous that joinder of all Settlement Class Members is impracticable; (b) there are questions of law and fact common to the Settlement Class Members; (c) the claims of Plaintiffs are typical of the

---

[5] The Stipulation defines "Investment Vehicle" to mean "any investment company or pooled investment fund, including but not limited to, mutual fund families, exchange traded funds, fund of funds and hedge funds, in which Defendants, or any of them, have, has or may have a direct or indirect interest, or as to which any of their affiliates may act as an investment advisor, but in which any Defendant alone or together with its, his or her respective affiliates is not a majority owner or does not hold a majority beneficial interest. The Controlling Entity Defendants are excluded from the definition of Investment Vehicle."

Settlement Class's claims; (d) Plaintiffs and Lead Counsel have fairly and adequately represented and protected the interests of the Settlement Class; (e) the questions of law and fact common to Settlement Class Members predominate over any individual questions; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering that the claims of Settlement Class Members in the Action are substantially similar and would, if tried, involve substantially identical proofs and may therefore be efficiently litigated and resolved on an aggregate basis as a class action; the amounts of the claims of many of the Settlement Class Members are too small to justify the expense of individual actions; and it does not appear that there is significant interest among Settlement Class Members in individually controlling the litigation of their claims.

4.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for purposes of the Settlement only, Plaintiffs are preliminarily certified as class representatives for the Settlement Class. The law firm of Labaton Keller Sucharow LLP ("Labaton") is preliminarily appointed Class Counsel.

5.     A hearing (the "Settlement Hearing") pursuant to Rule 23(e) of the Federal Rules of Civil Procedure is hereby scheduled to be held before the Senior U.S. District Judge David Alan Ezra in **Courtroom 1, on the First**

20

**Floor of the United States Courthouse, 501 West Fifth Street, Austin, TX, in-person, on Thursday, August 27, 2026, at 1:30 p.m.** for the following purposes: (a) to determine whether the proposed Settlement is fair, reasonable and adequate, and should be approved by the Court; (b) to determine whether the proposed Final Order and Judgment ("Judgment") as provided under the Stipulation should be entered, and to determine whether the release by the Settlement Class of the Released Plaintiffs' Claims, as set forth in the Stipulation, should be provided to the Released Defendant Parties; (c) to determine, for purposes of the Settlement only, whether the Settlement Class should be finally certified; whether Plaintiffs should be finally certified as class representatives for the Settlement Class; and whether the law firm of Labaton should be finally appointed as Class Counsel for the Settlement Class; (d) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved by the Court; (e) to consider Lead Counsel's application for an award of attorneys' fees and Litigation Expenses (which may include an application for an award to Plaintiffs for reimbursement of its reasonable costs and expenses directly related to its representation of the Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA")); and (f) to rule upon such other matters as the Court may deem appropriate.

21

6.      The Court reserves the right to approve the Settlement with or without

modification and with or without further notice to the Settlement Class of any

kind. The Court further reserves the right to enter the Judgment approving the

Settlement regardless of whether it has approved the Plan of Allocation or

awarded attorneys' fees and/or expenses. The Court may also adjourn the

Settlement Hearing, decide to hold the hearing remotely, or modify any of the

dates herein without further individual notice to members of the Settlement

Class. Any such changes shall be posted on the website for the Settlement by

the Parties.

7.      The Court approves the form, substance and requirements of the

Notice of Pendency of Class Action, Proposed Settlement, and Motion for

Attorneys' Fees and Expenses (the "Notice"), the Proof of Claim and Release

form ("Claim Form"), and the Postcard Notice, substantially in the forms

annexed hereto as Exhibits 1, 2, and 4, respectively, and finds they: (a)

constitute the best notice to Settlement Class Members practicable under the

circumstances; (b) are reasonably calculated, under the circumstances, to

describe the terms and effect of the Settlement and to apprise Settlement Class

Members of their right to object to the proposed Settlement or to exclude

themselves from the Settlement Class; (c) are reasonable and constitute due,

adequate, and sufficient notice to all Persons entitled to receive such notice; and

22

(d) satisfy all applicable requirements of the Federal Rules of Civil Procedure (including Rules 23(c)–(e)), the Due Process Clause of the United States Constitution, Section 27 of the Securities Act of 1933, 15 U.S.C. §77z-1(a)(7), and the Rules of this Court.

8.     The Court approves the retention of Strategic Claims Services ("Claims Administrator") as the Claims Administrator. The Claims Administrator shall cause the Postcard Notice, substantially in the form annexed hereto as Exhibit 4, to be mailed, by first-class mail, postage prepaid, on or before twelve (12) business days after entry of this Preliminary Approval Order ("Notice Date"), to all Settlement Class Members who can be identified with reasonable effort. The Claims Administrator may, alternatively, email the Postcard Notice (or Notice) or a link to the Postcard Notice (or Notice) to Settlement Class Members, to the extent it is provided with email addresses. F45, to the extent it has not already done so, shall use its best efforts to obtain and provide to Lead Counsel, or the Claims Administrator, at no cost to Lead Counsel or the Claims Administrator, as soon as practicable after entry of this Preliminary Approval Order, records from F45's transfer agent in electronic searchable form, to the extent readily available, containing the names, addresses, and emails (to the extent available) of Persons who purchased or otherwise acquired F45 publicly traded common stock during the Class Period.

23

9.     The Claims Administrator shall use reasonable efforts to give notice to nominee purchasers such as brokerage firms and other Persons and entities that purchased or otherwise acquired publicly traded F45 common stock during the Class Period as record owners but not as beneficial owners. Such nominees SHALL EITHER: (a) WITHIN FOURTEEN (14) CALENDAR DAYS of receipt of the Postcard Notice or Notice, provide a list of the names, addresses, and emails of all such beneficial owners to the Claims Administrator and the Claims Administrator is ordered to send the Postcard Notice promptly to such identified beneficial owners; or (b) WITHIN FOURTEEN (14) CALENDAR DAYS of receipt of the Postcard Notice or Notice (i) request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners, and WITHIN FOURTEEN (14) CALENDAR DAYS of receipt of those Postcard Notices from the Claims Administrator mail them to all such beneficial owners or (ii) email the Postcard Notice or a link to the Postcard Notice to all such beneficial owners. Nominees that elect to mail or email the Postcard Notice to their beneficial owners SHALL ALSO send a statement to the Claims Administrator confirming that the Postcard was sent and shall retain their records for use in connection with any further notices that may be provided in the Action. Upon FULL AND TIMELY compliance with these directions, such nominees may seek reimbursement of their reasonable

24

out-of-pocket expenses incurred in providing notice to beneficial owners of up to: $0.03 per Postcard Notice, plus postage at the current pre-sort rate used by the Claims Administrator, for notices mailed by nominees; $0.03 per Postcard Notice emailed by nominees; or $0.03 per mailing record provided to the Claims Administrator, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. Such properly documented expenses incurred by nominees in compliance with this order shall be paid from the Settlement Fund, and any unresolved disputes regarding reimbursement of such expenses shall be subject to review by the Court.

10.    Contemporaneously with the mailing of the Postcard Notice, the Claims Administrator shall cause copies of the Notice and the Claim Form, substantially in the forms attached hereto as Exhibits 1 and 2, respectively, to be posted on a webpage to be developed for the Settlement, from which copies of the Notice and the Claim Form can be downloaded. The Claims Administrator shall also mail copies of the Notice and the Claim Form upon request. Lead Counsel shall, at or before the Settlement Hearing, file with the Court proof of dissemination of the Postcard Notice, Notice, and Claim Form.

11.    The Court approves the form of the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and

Expenses ("Summary Notice") substantially in the form annexed hereto as Exhibit 3, and directs that Lead Counsel shall cause the Summary Notice to be published in The Wall Street Journal and be transmitted over PR Newswire within fourteen (14) calendar days of the Notice Date. Lead Counsel shall, at or before the Settlement Hearing, file with the Court proof of publication of the Summary Notice.

12.     The form and content of the notice program described herein, and the methods set forth herein of notifying the Settlement Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 27 of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(7), and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons and entities entitled thereto.

13.     In order to be eligible to receive a distribution from the Net Settlement Fund, in the event the Settlement is effected in accordance with the terms and conditions set forth in the Stipulation, each Claimant shall take the following actions and be subject to the following conditions:

a.     A properly executed Claim Form, substantially in the form annexed hereto as Exhibit 2, must be submitted to the Claims Administrator: (a) at the address indicated in the Claim Form,

postmarked no later than fifteen (15) calendar days before the Settlement Hearing; or (b) submitted electronically through the website for the Settlement no later than fifteen (15) calendar days before the Settlement Hearing. Such deadline may be further extended by Court order or by Lead Counsel in their discretion. Each Claim Form shall be deemed to have been submitted when postmarked (if properly addressed and mailed by first-class or overnight mail, postage prepaid). Any Claim Form submitted in any other manner shall be deemed to have been submitted when it was actually received at the address designated in the Claim Form. Any Settlement Class Member who does not timely submit a Claim Form within the time provided for shall be barred from sharing in the distribution of the Net Settlement Fund, unless otherwise ordered by the Court, but shall remain bound by all determinations and judgments in this Action concerning the Settlement, as provided by paragraph 15 of this order.

b.      The Claim Form submitted by each Claimant must satisfy the following conditions, unless otherwise allowed pursuant to the Stipulation: (i) it must be properly completed (including name, address, phone number and email address (if any)), signed and submitted in a timely manner in accordance with the provisions of the preceding

subparagraph; (ii) it must be accompanied by adequate supporting documentation for the transactions reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by the Claims Administrator and/or Lead Counsel; (iii) if the Person executing the Claim Form is acting in a representative capacity, a certification of her current authority to act on behalf of the Claimant must be included in the Claim Form; and (iv) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

c.    As part of the Claim Form, each Claimant shall submit to the jurisdiction of the Court with respect to the claim submitted.

14.    Any Settlement Class Member may enter an appearance in this Action, at his, her or its own expense, individually or through counsel of his, her or its own choice. If any Settlement Class Member does not enter an appearance, he, she or it will be represented by Lead Counsel.

15.    Settlement Class Members shall be bound by all orders, determinations, and judgments in this Action concerning the Settlement,

whether favorable or unfavorable, unless such Persons request exclusion from the Settlement Class in a timely and proper manner, as hereinafter provided. A putative Settlement Class Member wishing to make such an exclusion request shall mail the request in written form by first-class mail to the address designated in the Notice for such exclusions, such that it is received no later than twenty-one (21) calendar days prior to the Settlement Hearing. Such request for exclusion must state the name, address, telephone number, and email address (if any) of the Person seeking exclusion, must state that the sender requests to be "excluded from the Settlement Class in In re F45 Training Holdings, Inc. Securities Litigation, No. 22-cv-01291-DAE (W.D. Tex.)" and must be signed by such Person. Such Persons requesting exclusion are also directed to state the information required in the Notice, including, but not limited to: the date(s), price(s), and number(s) of shares of all purchases, acquisitions, and sales of F45 common stock during the Class Period. The request for exclusion shall not be effective unless it provides the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Court.

16.    Putative Settlement Class Members requesting exclusion from the Settlement Class shall not be eligible to receive any payment out of the Net Settlement Fund as described in the Stipulation and Notice.

29

17.     Any Settlement Class Member who does not request exclusion from the Settlement Class may object to the proposed Settlement, the proposed Plan of Allocation, and/or Lead Counsel's application for attorneys' fees and expenses. Any objections must: (a) state the name, address, telephone number, and email address (if any) of the objector and must be signed by the objector; (b) state that the objector is objecting to the proposed Settlement, Plan of Allocation, or application for attorneys' fees and Litigation Expenses in "In re F45 Training Holdings, Inc. Securities Litigation, No. 22-cv-01291-DAE (W.D. Tex.)"; (c) state the objection(s) and the specific reasons for each objection, including whether it applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, and any legal and evidentiary support, and witnesses, the Settlement Class Member wishes to bring to the Court's attention; and (d) include documents sufficient to prove the objector's membership in the Settlement Class, such as the number of F45 common shares purchased or acquired during the Class Period, as well as the dates and prices of each such purchase, acquisition, and sale. The Court will consider any Settlement Class Member's objection to the Settlement, the Plan of Allocation, and/or the application for an award of attorneys' fees or expenses only if such Settlement Class Member has served by hand or by mail his, her or its written objection and supporting papers, such that they are received on or

30

before twenty-one (21) calendar days before the Settlement Hearing, upon Lead Counsel: Alfred L. Fatale III, Labaton Keller Sucharow LLP, 140 Broadway, New York, NY 10005; and Settling Defendants' Counsel: Craig Varnen, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, 46th Floor, Los Angeles, CA 90071; Stephen Baldini, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036; Shahzeb Lari, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004; Linda Imes, Blank Rome LLP, 1271 Avenue of the Americas, New York, NY 10020; and Jonathan Rosenberg, O'Melveny & Myers LLP, 1310 Avenue of the Americas, Suite 1700, New York, NY 10019; and has filed, either by mail or in person, said objections and supporting papers with the Clerk of the Court, United States District Court for the Western District of Texas, 501 West Fifth Street, Suite 1100, Austin, Texas 78701. Any Settlement Class Member who does not make his, her, or its objection in the manner provided for in the Notice shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to any aspect of the Settlement, to the Plan of Allocation, or to the request for attorneys' fees and expenses, unless otherwise ordered by the Court, but shall otherwise be bound by the Judgment to be entered and the releases to be given. Attendance at the Settlement Hearing is not necessary, however, Persons wishing to be heard orally in opposition to the approval of the

31

Settlement, the Plan of Allocation, and/or the application for an award of attorneys' fees and other expenses are required to indicate in their written objection their intention to appear at the hearing. Persons who intend to object to the Settlement, the Plan of Allocation, and/or the application for an award of attorneys' fees and Litigation Expenses and desire to present evidence at the Settlement Hearing must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the Settlement Hearing.

18.     Settlement Class Members do not need to appear at the hearing or take any other action to indicate their approval.

19.     Until otherwise ordered by the Court, the Court **STAYS** all proceedings in the Action, other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement. Pending final determination of whether the Settlement should be approved, Plaintiffs, all Settlement Class Members, and each of them, and anyone who acts or purports to act on their behalf, shall not institute, commence or prosecute any action which asserts Released Plaintiffs' Claims against the Released Defendant Parties.

20.     All papers in support of the Settlement, Plan of Allocation, and Lead Counsel's request for an award of attorneys' fees and expenses shall be filed with the Court and served on or before thirty-five (35) calendar days prior to the

date set herein for the Settlement Hearing. If reply papers are necessary, they are to be filed with the Court and served no later than seven (7) calendar days prior to the Settlement Hearing.

21.    No Person who is not a Settlement Class Member or Lead Counsel shall have any right to any portion of, or to any distribution of, the Net Settlement Fund unless otherwise ordered by the Court or otherwise provided in the Stipulation.

22.    All funds held in escrow shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court until such time as such funds shall be disbursed pursuant to the Stipulation and/or further order of the Court.

23.    Neither Settling Defendants nor their counsel shall have any responsibility for the Plan of Allocation nor any application for attorney's fees or Litigation Expenses submitted by Lead Counsel or Plaintiffs and such matters shall be considered separately from the fairness, reasonableness, and adequacy of the Settlement.

24.    If the Settlement fails to become effective as defined in the Stipulation or is terminated, then both the Stipulation, including any amendment(s) thereof, except as expressly provided in the Stipulation, and this Preliminary Approval Order shall be null and void, of no further force or effect, and without prejudice

to any Party, and may not be introduced as evidence or used in any actions or proceedings by any Person or entity against the Parties, and the Parties shall be deemed to have reverted to their respective litigation positions in the Action as of November 25, 2025.

25.     Neither this Order, the Stipulation (whether or not finally approved or consummated), nor their negotiation, or any proceedings taken pursuant to them: (a) shall be offered against any of the Released Defendant Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Defendant Parties with respect to the truth of any fact alleged by Plaintiffs, or the validity of any claim that was or could have been asserted, or the deficiency of any defense that has been or could have been asserted in this Action or in any litigation, or of any liability, negligence, fault, or other wrongdoing of any kind by any of the Released Defendant Parties; (b) shall be offered against any of the Released Plaintiff Parties as evidence of, or construed as, or deemed to be evidence of, any presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing of any kind or in any way referred to for any other reason as against any of the Released Plaintiff Parties in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided, however,

that if the Stipulation is approved by the Court, the Released Parties and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement; (c) shall be construed against any of the Released Parties as an admission, concession, or presumption that the consideration to be given represents the amount which could be or would have been recovered after trial; and (d) shall be construed against the Released Plaintiff Parties that any of their claims are without merit, that any of Released Defendant Parties had meritorious defenses, or that damages recoverable under the Second Amended Complaint would not have exceeded the Settlement Amount.

26.    The Court retains exclusive jurisdiction over the Action to consider all further matters arising out of or connected with the Settlement.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, April 16, 2026

David A. Ezra
Senior United States District Judge