**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| IN RE F45 TRAINING HOLDINGS, INC. SECURITIES LITIGATION | Case No. 1:22-cv-1291-DAE |

**LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 2

ARGUMENT ..... 3

I. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND WARRANT THE COURT'S APPROVAL ..... 3

A. Plaintiffs' Counsel are Entitled to an Award of Attorneys' Fees from the Common Fund ..... 3

B. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ..... 4

C. The Requested Fee of 30% Is Comparable to Awards in Similar Cases ..... 5

D. The Fee Request Is Reasonable Under the Lodestar Method ..... 6

E. The Fee Request Is Fair and Reasonable under Fifth Circuit Authority ..... 8

1. The Time and Labor Required ..... 9

2. The Novelty and Difficulty of the Issues ..... 10

3. The Amount Involved and Results Achieved ..... 11

4. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys ..... 12

5. The Preclusion of Other Employment ..... 13

6. The Customary Fee and Awards in Similar Cases ..... 13

7. The Contingent Nature of the Fee ..... 14

8. The Undesirability of the Case ..... 14

9. Other Factors Considered Within the Fifth Circuit Further Support that the Requested Fee as Fair and Reasonable ..... 15

a. Public Policy Considerations ..... 15

b. Plaintiffs Approve the Requested Fee ..... 15

c. Reaction of the Settlement Class to Date .......... 16

II. LEAD COUNSEL'S REQUEST FOR AN AWARD OF LITIGATION EXPENSES IS REASONABLE .......... 16

III. A PSLRA AWARD TO LEAD PLAINTIFF WOULD BE REASONABLE .......... 18

CONCLUSION .......... 19

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
2019 WL 387409 (S.D. Tex. Jan. 30, 2019)....................5

*In re Alta Mesa Res., Inc. Sec. Litig.*,
2025 WL 1901350 (S.D. Tex. May 6, 2025)....................6

*In re Apache Corp. Sec. Litig.*,
2024 WL 4881432 (S.D. Tex. Nov. 25, 2024)....................4, 12, 19

*In re Arthocare Corp. Sec. Litig.*,
2012 WL 12951371 (W.D. Tex. June 4, 2012)....................4

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd, Hubbard v. BankAtlantic Bancorp*, *Inc. Sec. Litig.*, 688 F.3d 713 (11th Cir. 2012)....................14

*Barton v. Drummond Co.*,
636 F.2d 978 (5th Cir. 1981)....................3

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)....................15

*Billitteri v. Sec. Am. Inc.*,
2011 WL 3585983 (N.D. Tex. Aug. 4, 2011)....................7, 8

*Blackmon v. Zachary Holdings, Inc.*,
2022 WL 2866411 (W.D. Tex. July 21, 2022)....................5, 18

*Blum v. Stenson*,
465 U.S. 886 (1984)....................7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................3

*Bridges v. Ridge Nat. Res. LLC*,
2020 WL 7496843 (W.D. Tex. June 23, 2020)....................4

*Burford v. Cargill, Inc.*,
2012 WL 5471985 (W.D. La. Nov. 8, 2012)....................5

*Celeste v. Intrusion Inc.*,
2022 WL 17736350 (E.D. Tex. Dec. 16, 2022)....................5, 10, 13

*City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*,
2020 WL 218518 (W.D. Tex. Jan. 10, 2020) ....................6

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ....................6, 7

*In re Dell Inc., Sec. Litig.*,
2010 WL 2371834 (W.D. Tex. June 11, 2010) ....................11

*Di Giacomo v. Plains All Am. Pipeline*,
2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ....................6, 8

*Glock v. FTS Int'l, Inc.*,
2021 WL 1422714 (S.D. Tex. Apr. 13, 2021) ....................5, 6, 15

*Jenkins v. Trustmark Nat'l Bank*,
300 F.R.D. 291 (S.D. Miss. 2014) ....................4, 15

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) .................... *passim*

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. 2010) ....................6, 8

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ....................7

*In re OCA, Inc. Sec. & Derivative Litig.*,
2009 WL 512081 (E.D. La. Mar. 2, 2009) ....................10, 11

*Parmelee v. Santander Consumer USA Holdings Inc.*,
2019 WL 2352837 (N.D. Tex. June 3, 2019) ....................5

*Prause v. TechnipFMC PLC*,
2021 WL 6053219 (S.D. Tex. Mar. 23, 2021) ....................6, 15, 19

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ....................14

*Schwartz v. TXU Corp.*,
2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .................... *passim*

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000) ....................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................15

*The Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ....................14, 16

*Thorpe v. Walter Inv. Mgmt. Corp.*,
2016 WL 10518902 (S.D. Fla. Oct. 14, 2016)....................12

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ....................4, 6, 9

*In re Waste Mgmt., Inc. Sec. Litig.*,
2002 WL 35644013 (S.D. Tex. May 10, 2002)....................15, 16

**DOCKETED CASES**

*In re Alta Mesa Res., Inc. Sec. Litig.*,
No. 4:19-cv-00957, slip op., ECF No. 1030 (S.D. Tex. May 6, 2025)....................19

*Bender v. Vertex Energy, Inc. et. al.*,
No. 4:23-cv-2145, slip op. (S.D. Tex. July 21, 2025)....................19

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
No. 4:14-cv-3428, slip op., ECF No. 366 (S.D. Tex. Feb. 13, 2019) ....................19

*Kinnie Ma Individual Ret. Account, et al. v. Ascendant Cap., LLC, et al.*,
No. 1:19-CV-1050-RP, slip op. (W.D. Tex. Nov. 24, 2025)....................6

**STATUTES & RULES**

15 U.S.C.§ 77k(e) ....................11

15 U.S.C. § 77z-1(a)(4)....................1, 18

15 U.S.C § 77z-1(a)(6)....................4

Fed. R. Civ. P. 23(h) ....................1, 3

Fed. R. Civ. P. 54(d) ....................1

Court-appointed Lead Counsel Labaton Keller Sucharow LLP ("Labaton" or "Lead Counsel"), on behalf of itself and other Plaintiffs' Counsel,[1] will move this Court on August 27, 2026, at 1:30 p.m., for an Order, pursuant to Federal Rules of Civil Procedure 23(h) and 54(d): (i) awarding attorneys' fees in the amount 30% of the Settlement Fund; (ii) awarding Litigation Expenses in the amount of $144,747.02, plus accrued interest, from the Settlement Fund; and (iii) approving Lead Plaintiff Pledge Capital LLC's ("Pledge Capital") request for $15,000 in connection with its representation of the Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(4). The motion is based on the incorporated Memorandum of Law and the Declaration of Alfred L. Fatale III, dated July 10, 2026 ("Fatale Declaration" or "Fatale Decl."),[2] with annexed exhibits, filed herewith.[3]

Pursuant to the Preliminary Approval Order, any objections to this motion must be received by July 24, 2026. A proposed Order will be submitted with Lead Counsel's reply papers on August 13, 2026, after the deadline for objections has passed.

[1] "Plaintiffs' Counsel" are Labaton Keller Sucharow LLP, The Schall Law Firm (n/k/a Schall, Brown & Schwartz LLP), and Clark Hill PLC.

[2] The Fatale Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter* alia: the history of the Action; the nature of the claims asserted; the litigation efforts; and the risks and uncertainties of continued litigation. Citations to "¶" in this memorandum refer to paragraphs of the Fatale Declaration. All exhibits referenced below are attached to the Fatale Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___–___." The first numerical reference is to the designation of the entire exhibit attached to the Fatale Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself. Emphasis is added and citations are omitted unless otherwise noted.

[3] All capitalized terms used and not otherwise defined in this memorandum have the meanings given to them in the Stipulation and Agreement of Settlement, dated as of February 13, 2026 (the "Stipulation"), previously filed with the Court. ECF No. 134-3.

**PRELIMINARY STATEMENT**

As detailed in the Stipulation and Agreement of Settlement, the proposed Settlement, if approved by the Court, will resolve this litigation in its entirety in exchange for a cash payment of $10,500,000. This recovery represents a very favorable result for the Settlement Class as it provides substantial, near-term compensation to Settlement Class Members, while avoiding the risks associated with pursuing the Action through contested class certification proceedings, summary judgment, a trial, and the inevitable appeals that would follow.

The $10.5 million all-cash recovery was achieved through the skill, experience, and effective advocacy of Lead Counsel in the face of considerable challenges and an aggressive defense mounted by Defendants, who were represented by able and knowledgeable counsel. The Settlement was reached only after Lead Counsel engaged in a comprehensive investigation; defeated, in part, Defendants' second motion to dismiss; commenced and participated in discovery; and engaged in arm's-length settlement negotiations with experienced defense counsel, including the exchange of mediation briefing and participation in a full-day mediation session with the assistance of an experienced and highly respected Mediator. This dedication of effort has resulted in a favorable and significant cash recovery for the Settlement Class.

For these efforts, Lead Counsel, on behalf of Plaintiffs' Counsel, respectfully requests an award of attorneys' fees in the amount of 30% of the Settlement Fund. As discussed herein, the requested 30% fee is regularly awarded by courts within the Fifth Circuit in securities class action settlements of this size. The requested fee also represents a reasonable multiplier of 1.3 on Lead Counsel's "lodestar" of $2,351,212.00. In addition, Lead Counsel seeks payment of Litigation Expenses in the amount of $144,747.02, plus accrued interest. These expenses, as discussed below, were reasonable and necessary for the successful prosecution of the case.

Finally, Plaintiffs—institutional investors who oversaw the prosecution of the Action—approve of and endorse the requested fee. *See* Declaration of David Cetlinski on Behalf of the Detroit P&F (Ex. 1) and Declaration of Edward W. Chang on Behalf of Pledge Capital LLC (Ex. 10). This endorsement is particularly significant because the PSLRA was enacted to encourage sophisticated institutional investors to seek lead plaintiff status and oversee securities class actions. Moreover, although 127,693 potential Settlement Class Members and nominees were notified that Lead Counsel would seek fees not to exceed 30% of the Settlement Fund and expenses not to exceed $200,000, not a single Settlement Class Member has filed an objection. *See* Declaration of Josephine Bravata Concerning: (A) Dissemination of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Requests for Exclusion Received to Date, dated July 9, 2026, Ex. 3.

In sum, Lead Counsel respectfully requests that the Court approve the requested attorneys' fees and expenses for the reasons set forth below.

## ARGUMENT

### I. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND WARRANT THE COURT'S APPROVAL

#### A. Plaintiffs' Counsel are Entitled to an Award of Attorneys' Fees from the Common Fund

Pursuant to Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As the Supreme Court has recognized, a "lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981). Awards of fair attorneys' fees from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful

litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014).[4]

As explained below, the factors courts consider when assessing percentage-of-recovery requests demonstrate the reasonableness of the requested fee.

### B. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

In the Fifth Circuit, fees awarded to counsel from a common fund may be evaluated under either the percentage-of-the-fund method or the lodestar method. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643–44 (5th Cir. 2012) ("*Dell*"). However, the Fifth Circuit has recognized that the percentage method is the preferred method of many courts when there is a common fund settlement. *See Dell*, 669 F.3d at 643. "Although a district court enjoys the flexibility to utilize either the lodestar method or percentage method to calculate an attorneys' fee award in a common fund case, the reality is that there has been a "near-universal adoption of the percentage method in securities cases." *In re Apache Corp. Sec. Litig.*, 2024 WL 4881432, at *4 (S.D. Tex. Nov. 25, 2024). The percentage method "allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Dell*, 669 F.3d at 643; *see also In re Arthocare Corp. Sec. Litig.*, 2012 WL 12951371, at *4 (W.D. Tex. June 4, 2012) ("there is near-universal adoption of the percentage method in securities cases, at least in part because it is explicitly contemplated by the [PSLRA]"); *Bridges v. Ridge Nat. Res. LLC*, 2020 WL 7496843, at *3 (W.D. Tex. June 23, 2020) (finding the percentage method the appropriate method to use in assessing attorneys' fee request).

[4] The use of the percentage method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff shall not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 77z-1(a)(6).

### C. The Requested Fee of 30% Is Comparable to Awards in Similar Cases

The requested fee of 30% is a reasonable percentage of the Settlement Fund and is within the range of percentage fees awarded frequently within the Fifth Circuit. *See, e.g., Schwartz v. TXU Corp.*, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005) ("courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Blackmon v. Zachary Holdings, Inc.,* 2022 WL 2866411, at *4 (W.D. Tex. July 21, 2022) ("The proposed award of 33 1/3% of the total settlement is reasonable and consistent with awards made by other district courts in this Circuit under the percentage method."); *Shaw v. Toshiba Am. Info. Sys., Inc*., 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("attorneys' fees in the range from twenty-five percent (25%) to [33%] have been routinely awarded in class actions"); *Celeste v. Intrusion Inc*., 2022 WL 17736350, at *11 (E.D. Tex. Dec. 16, 2022) ("Recognizing that common fund litigation is risky for counsel, on the one hand, and beneficial to the public, on the other, courts frequently award attorney's fees ranging from twenty-five percent of the settlement fund to over thirty-three percent of the settlement fund."); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) (a fee of one-third "is an oft-awarded percentage in common fund class action settlements in this Circuit").

A review of attorneys' fees awarded in securities class actions with comparably sized settlements within the Fifth Circuit strongly supports the reasonableness of the 30% fee request. *See, e.g*., *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *6 (W.D. La. Nov. 8, 2012) (awarding 33.3% of $27.5 million settlement fund); *Parmelee v. Santander Consumer USA Holdings Inc.,* 2019 WL 2352837, at *1 (N.D. Tex. June 3, 2019) (awarding 33 1/3% of $9.5 million settlement); *Glock v. FTS Int'l, Inc.,* 2021 WL 1422714, at *1 (S.D. Tex. Apr. 13, 2021) (awarding 33% of

$9.875 million settlement); *Prause v. TechnipFMC PLC*, 2021 WL 6053219, at *1–2 (S.D. Tex. Mar. 23, 2021) (awarding 33% of $19.5 million settlement); *City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*, 2020 WL 218518, at *1 (W.D. Tex. Jan. 10, 2020) (awarding 30% of $21 million settlement); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *8–11 (S.D. Tex. Dec. 19, 2001) (awarding 30% of $24.1 million common fund).

Courts within the Fifth Circuit have also awarded 30% or more in much larger settlements. *See, e.g., In re Alta Mesa Res., Inc. Sec. Litig.,* 2025 WL 1901350, at *1 (S.D. Tex. May 6, 2025) (awarding 33% of $126.3 million settlement); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 678–81 (N.D. Tex. 2010) (awarding 30% of a settlement valued between $90 and $110 million); *Kinnie Ma Individual Ret. Account, et al. v. Ascendant Cap., LLC, et al.*, No. 1:19-CV-1050-RP, slip op. at 2 (W.D. Tex. Nov. 24, 2025) (awarding 30% of $46 million settlement), Ex. 8.[5]

It is respectfully submitted that the 30% fee request is reasonable when compared to fees awarded in other similar securities settlements.

### D. The Fee Request Is Reasonable Under the Lodestar Method

The fee request is also reasonable when considering counsel's "lodestar." In this case, the lodestar method—whether used directly or as a "cross-check" on the percentage method—demonstrates the reasonableness of the request. When utilizing the lodestar method, "the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Dell*, 669 F.3d at 642–43. In securities class actions and other complex cases with contingency risks, fees representing upward multipliers of 2.26 to 4.5 of the lodestar are typically awarded to reflect contingency risks and other relevant factors. *See, e.g., DeHoyos v. Allstate Corp.*, 240 F.R.D. 269,

[5] Copies of unreported "slip" opinions are submitted herewith in Exhibit 8.

333 (W.D. Tex. 2007) ("The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5.").

Through July 7, 2026, Lead Counsel has spent 3,086 hours of attorney and other professional support time prosecuting the Action on behalf of the Settlement Class. ¶111. Lead Counsel's lodestar, derived by multiplying the hours spent by each attorney and other professional by their standard current hourly rates, is $2,351,212.00. *Id.*; *see also* Declaration of Alfred L. Fatale III on behalf of Labaton Keller Sucharow LLP ("Labaton Fee & Expense Decl."), Ex. 7-A. Lead Counsel's rates here range from $975 to $1,450 for partners, $800 to $1,025 for of counsels, and $400 to $650 for associates. ¶110; Ex. 7-A. Lead Counsel's hourly rates are comparable to those used by counsel in other complex securities or shareholder litigation, and they are commensurate with rates used by peer defense-side law firms litigating matters of a similar magnitude, as shown by an analysis of defense firm hourly rates compiled annually by Labaton from bankruptcy court filings nationwide in 2025. *See* Ex. 9; *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (explaining that courts should consider whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation").

The requested fee of 30% of the Settlement Fund, *i.e.*, $3,150,000, plus accrued interest, would represent a reasonable multiplier of 1.3 of the total lodestar of Lead Counsel.[6] Such a multiplier is well within the parameters used throughout courts within the Fifth Circuit and, as discussed herein, has been well-earned. *See, e.g., Billitteri v. Sec. Am. Inc.*, 2011 WL 3585983, at

[6] The multiplier is calculated by dividing the $3,150,000 fee request by the $2,351,212.00 lodestar. It is appropriate to use counsel's current hourly rates in order to compensate for the delay in payment and inflation. *See Missouri v. Jenkins,* 491 U.S. 274, 284 (1989).

*4, *9 (N.D. Tex. Aug. 4, 2011) (awarding 1.97 multiplier in connection with $80 million settlement); *Di Giacomo*, 2001 WL 34633373, at *8–11 (awarding 5.3 multiplier in connection with $24.1 million settlement); *Klein v. O'Neal, Inc*., 705 F. Supp. 2d 632, 678–81 (N.D. Tex. 2010) (awarding 2.5 multiplier).

Further, should the Court approve the Settlement, Lead Counsel will continue to perform legal work on behalf of the Settlement Class. Lead Counsel will expend additional resources assisting Settlement Class Members with their Claim Forms and related inquiries and working with the Claims Administrator, SCS, to ensure the smooth progression of claims processing and distribution of the Net Settlement Fund. No additional legal fees will be sought for this work.

### E. The Fee Request Is Fair and Reasonable under Fifth Circuit Authority

An analysis of the factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir. 1974) ("*Johnson*") also confirms that a 30% fee award would be fair and reasonable under the circumstances of this case. The *Johnson* factors are:

> (1) The time and labor required…[;] (2) The novelty and difficulty of the questions…[;] (3) The skill requisite to perform the legal service properly…[;] (4) The preclusion of other employment by the attorney due to acceptance of the case…[;] (5) The customary fee…[;] (6) Whether the fee is fixed or contingent…[;] (7) Time limitations imposed by the client or the circumstances…[;] (8) The amount involved and the results obtained…[;] (9) The experience, reputation, and ability of the attorneys…[;] (10) The "undesirability" of the case…[;] (11) The nature and length of the professional relationship with the client…[; and] (12) Awards in similar cases.[7]

[7] Two of the *Johnson* factors—the "time limitations imposed by the client or the circumstances" and the "nature and length of [counsel's] professional relationship with the client"—are not relevant in this case. *See Klein*, 705 F. Supp. 2d at 676 ("not every factor need be necessarily considered"); *Schwartz*, 2005 WL 3148350, at *28 ("The relevance of each of the Johnson factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.").

*Id.*; *see also Dell*, 669 F.3d at 642 n. 25 (reiterating *Johnson* factors). An analysis of the most relevant factors confirms that the fee requested here is fair and reasonable.

**1. The Time and Labor Required**

A review of the time and effort expended by Lead Counsel supports the requested fee. The Fatale Declaration details the breadth and depth of counsel's efforts to prosecute the Settlement Class's claims, the time expended, and the diligence of those efforts. Indeed, the Settlement was reached at a point in the litigation where Lead Counsel had committed extensive resources to understanding the facts and challenges posed by the claims and defenses at issue, and the factors that would impact any recovery. Lead Counsel, *inter alia*: (i) conducted a comprehensive factual investigation of the claims at issue, including interviews with approximately 30 former F45 employees and other persons with potentially relevant knowledge; (ii) drafted two detailed amended complaints; (iii) opposed two motions to dismiss and defeated, in part, Defendants' second motion to dismiss; (iv) commenced discovery, including requesting documents from Defendants and third parties; (v) consulted with experts on matters involving damages and accounting practices; and (viii) engaged in extensive settlement negotiations and formal mediation with a highly experienced Mediator. *See generally* Fatale Decl. at §§III.–V.

As noted above, Lead Counsel expended more than 3,086 hours in connection with the prosecution and resolution of the Action resulting in a "lodestar" of $2,351,212.00. ¶111; *see also* Ex. 7-A. Lead Counsel's work will continue beyond approval of the Settlement, with no additional compensation.

Accordingly, the time and labor required amply demonstrate the reasonableness of the attorneys' fee request.

**2. The Novelty and Difficulty of the Issues**

The difficulty of the questions presented by the litigation is also considered in determining the reasonableness of a requested fee. *See Johnson*, 488 F.2d at 718. Courts have long recognized that securities class actions are extremely complex and challenging, and that "Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult." *In re OCA, Inc. Sec. & Derivative Litig*., 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009); *see also Schwartz*, 2005 WL 3148350, at *29 ("Federal Securities class action litigation is notably difficult and notoriously uncertain."); *Celeste,* 2022 WL 17736350, at *12 ("Securities cases are 'notoriously difficult and unpredictable.'"). This Action was no exception.

Lead Counsel confronted several significant challenges in connection with pleading and undertaking to establish the Defendants' liability and damages in the Action under the Securities Act of 1933 ("Securities Act") and Securities and Exchange Act of 1934 ("Exchange Act"), and would continue to do so with respect to the Securities Act claims. *See* Fatale Decl. at §§III. & VI.

The main challenges were with respect to pleading and proving the material falsity of the alleged misstatements and omissions in the Offering Documents for F45's IPO. The alleged misstatements remaining after the MTD Order centered on the Company's purportedly increasing percentage of multi-unit franchises systems being sold, F45's potential for growth in the United States, and its economic model for franchises. Satisfying these key elements of the remaining claims under the Securities Act required developing a comprehensive understanding of F45's business, practices, financial results, and accounting norms. ¶¶59-67; *see also* Settlement Memorandum at §I.B.3.

Additionally, a key challenge faced by Lead Counsel was the difficulty of establishing damages and overcoming Defendants' likely negative causation defenses, centering on the level of confounding or unrelated information purportedly contributing to the alleged stock price

declines. *See* 15 U.S.C. § 77k(e). ¶¶72-77; *see* also Settlement Memorandum at §I.B.3. This defense is extremely complex and expert driven, involving the weighing of intricate factual and statistical elements. Plaintiffs and the Settlement Class could have been left with significantly lower recoverable damages because of rulings and findings on causation issues, including after even a favorable jury verdict.

Although Plaintiffs and Lead Counsel believe they could rebut the Settling Defendants' arguments with factual evidence and expert testimony, survive summary judgment, and prevail at trial, each of these issues required, and would continue to require, a considerable amount of legal and factual expertise and would likely be resolved through a battle of experts, the outcome of which is notoriously difficult to assess. *See In re OCA, Inc. Sec. & Derivative Litig.,* 2009 WL 512081, at *14 ("Because the jury would have been faced with competing expert opinions, the resulting damage award would have been highly unpredictable.").

Accordingly, this factor also supports the requested fee award.

**3. The Amount Involved and Results Achieved**

Courts have consistently recognized that the result achieved is a factor to be considered in awarding attorneys' fees. *See, e.g., In re Dell Inc., Sec. Litig*., 2010 WL 2371834, at *18 (W.D. Tex. June 11, 2010) ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained."), *aff'd sub nom. Dell*, 669 F.3d 632.

The Settlement represents a meaningful portion of the Settlement Class's reasonably recoverable damages, as estimated by Plaintiffs' consulting damages expert who estimated that maximum statutory damages were approximately $234 million, depending on the trading model and assumptions used. ¶75. Given Defendants' anticipated negative causation arguments, according to Plaintiffs' expert, aggregate damages could have decreased to approximately $21 million had their arguments been successful. *Id*. The Settlement therefore recovers a range of

approximately 4.5% of estimated maximum damages to 50% of more conservatively estimated damages.

This is a very favorable result. *See, e.g.*, *In re Apache Corp. Sec. Litig.,* 2024 WL 4881432, at *6 (S.D. Tex. Nov. 25, 2024) (awarding requested attorneys' fees in a settlement representing 4.4% of potential estimated damages); *Thorpe v. Walter Inv. Mgmt. Corp.,* 2016 WL 10518902, at *3 (S.D. Fla. Oct. 14, 2016) (approving $24 million settlement representing 5.5% of maximum damages and noting settlement is an "excellent recovery"). It also compares very favorably to industry trends. Over the past ten years, the median percentage of recovery (based upon NERA-defined losses) in securities class actions with similar investor losses was 2.7% of investor losses. *See* Edward Flores, Svetlana Starykh & Ivelina Velikova, *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review* (NERA Jan. 2026), Ex. 2 at 27.

Accordingly, it is submitted that this factor favors approval of the requested fee.

### 4. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

Courts also consider the skills required to litigate a class action and "the experience, reputation, and ability of the attorneys" involved. *See Johnson*, 488 F.2d at 718–19; *see also In re Apache Corp. Sec. Litig.,* 2024 WL 4881432, at *6 ("A securities fraud class action is not a run-of-the-mill lawsuit. It requires lawyers who are familiar with the legal framework surrounding such claims.").

As discussed above, this was a complex case involving contested facts and legal issues requiring skilled counsel to advocate for the class and bring about the Settlement. Lead Counsel is among the nation's preeminent law firms in this area of practice and has served as lead or co-lead counsel on behalf of major institutional investors in numerous class actions. ¶105; Ex. 7-C.

The Court should also consider the quality of the opposition plaintiffs' counsel faced in awarding the fee. *See, e.g., Celeste,* 2022 WL 17736350, at *12 ("[Lead] [C]ounsel obtained a favorable settlement against 'formidable legal opposition'—a fact demonstrating the 'superior quality of [the class] representation.'"); *Schwartz,* 2005 WL 3148350, at *30 ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation.").

Defendants are represented by Gibson, Dunn & Crutcher LLP, Akin Gump Strauss Hauer & Feld LLP, O'Melveny & Myers LLP, Hughes Hubbard & Reed LLP, Blank Rome LLP, and RMWBH PC, experienced and nationally recognized defense firms. ¶106. The ability of Lead Counsel to obtain such a favorable Settlement for the Settlement Class in light of such qualified legal opposition confirms the quality of the representation. This factor supports Lead Counsel's fee request.

#### 5. The Preclusion of Other Employment

When Lead Counsel undertook to represent Plaintiffs in this matter, it was with the expectation that a significant amount of time and effort in its prosecution, and large sums in expenses, would be required. The time spent by Lead Counsel here was at the expense of the time that they could have devoted to other matters. Accordingly, this *Johnson* factor supports the requested fee. *See, e.g., Johnson*, 488 F.2d at 718;

#### 6. The Customary Fee and Awards in Similar Cases

As discussed above, the requested fee of 30% of the Settlement Fund is within the range of attorneys' fees typically awarded in class action cases with similar recoveries. *See supra* Section I.C. This factor further supports the reasonableness of the requested fee. *See Johnson*, 488 F.2d at 717–19.

**7. The Contingent Nature of the Fee**

Fees in class action lawsuits of this nature are typically contingent because virtually no individual possesses a large enough stake in the litigation to justify paying attorneys on an hourly basis. Courts have consistently recognized that "the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees." *Schwartz*, 2005 WL 3148350, at *31–32.

Success in contingent litigation is never guaranteed. Plaintiffs' counsel in securities litigation often spend years in litigation, dedicating thousands of hours and millions of dollars, yet receiving little compensation. Even a victory at the trial stage is not a guarantee of success. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing jury verdict of $81.3 million in securities class action on loss causation grounds and judgment entered for defendant); ¶¶98-104.[8] As explained above, Plaintiffs faced a number of hurdles that could have resulted in a smaller recovery for the Settlement Class.

**8. The Undesirability of the Case**

Although Lead Counsel did not consider this case to be "undesirable," there were substantial risks in financing and prosecuting the litigation and Lead Counsel knew they would need to devote substantial resources to the case in order to generate a successful outcome. *See, e.g., The Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *12 (N.D. Tex. Apr. 25, 2018) (the "risk of non-recovery and 'undertaking expensive litigation against . . . well-financial corporate defendants on a contingent fee' has been held to make a case undesirable, warranting a higher fee") (ellipsis in original). This factor supports the requested fee.

[8] *See also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011), *aff'd, Hubbard v. BankAtlantic Bancorp, Inc. Sec. Litig.*, 688 F.3d 713 (11th Cir. 2012) (in case tried by Labaton, overturning jury verdict in favor of plaintiff class, estimated at $42 million, and granting judgment as a matter of law to defendants).

### 9. Other Factors Considered Within the Fifth Circuit Further Support that the Requested Fee as Fair and Reasonable

In addition to the *Johnson* factors, courts may consider other factors in determining an appropriate fee in a class action. *See, e.g., Glock*, 2021 WL 1422714, at *1–2 (considering public policy and reaction of class in approving attorney fee award); *Prause*, 2021 WL 6053219, at *2. These additional factors further confirm the reasonableness of the fee request.

#### a. Public Policy Considerations

A recognized public policy interest favors rewarding firms that bring successful securities litigation. The Supreme Court has emphasized that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Here, that public policy was advanced, as Lead Counsel achieved a meaningful recovery for investors. *See Jenkins*, 300 F.R.D. at 309 ("Public policy concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee.").

#### b. Plaintiffs Approve the Requested Fee

Plaintiffs are institutional investors that played an active role in the prosecution and resolution of the litigation. As such, each has a sound basis for assessing the reasonableness of the fee request. Plaintiffs support the approval of the requested fee based on the result obtained, the efforts of Lead Counsel, and the risks in the Action. *See* Ex. 1 at ¶8; Ex. 10 at ¶8. Plaintiffs' endorsement of the fee request further supports its approval. *See, e.g., In re Waste Mgmt., Inc. Sec. Litig.,* 2002 WL 35644013, at *25 (S.D. Tex. May 10, 2002) (finding fee request "fair and

reasonable" where lead plaintiff, who was "heavily involved in each facet of this litigation, including the settlement negotiations, fully support[ed] the fee requested").

#### c. Reaction of the Settlement Class to Date

The reaction of the Settlement Class to date also supports the requested fee. As of July 9, 2026, 127,693 potential Settlement Class Members and nominees had received notice of the Settlement either by mailed Postcard Notice or emailed direct link to the Postcard Notice. *See* Ex. 3 at ¶¶2-9. Additionally, the Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire* on May 7, 2026. *Id.* at ¶10. Defendants also served notice pursuant to the Class Action Fairness Act of 2005. *See* ECF No. 135.

The notices state that Lead Counsel will apply for fees not to exceed 30% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $200,000, plus interest on both amounts, and that the deadline for filing objections to Lead Counsel's request for fees and expenses is July 24, 2026. *See* Ex. 3-A and B. To date, not a single objection to the fee and expense amounts set forth in the notices has been received.[9] ¶93.

## II. LEAD COUNSEL'S REQUEST FOR AN AWARD OF LITIGATION EXPENSES IS REASONABLE

Lead Counsel also requests an award of reasonable and necessary Litigation Expenses incurred to prosecute the Action. Since the inception of the case, Lead Counsel has incurred $144,747.02 in expenses. Lead Counsel's reasonable and necessary expenses should be reimbursed from the Settlement Fund. *See Halliburton Co.,* 2018 WL 1942227, at *14 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement.").

[9] Should any objections be filed, they will be addressed in Lead Counsel's reply papers due August 13, 2026.

The amount requested is detailed in the Labaton Fee & Expense Declaration, filed herewith. *See* Ex. 7-B. Lead Counsel submits that the expenses, which include expert and consultant fees, mediation fees, and the costs of electronic discovery, electronic research, duplicating, and work-related meals, hotels, and transportation, were reasonably and necessarily incurred in prosecuting and resolving the Action.

The largest component of the expenses (*i.e.*, $69,823.25, or approximately 48% of total expenses) was incurred for experts and consultants. Ex. 7 at ¶6(b). At various stages of the litigation, Lead Counsel consulted with experts in the fields of damages and causation, as well as experts with knowledge regarding issues related to accounting. Plaintiffs' consulting damages experts assisted with assessing the claims and defenses, drafting the complaints, and the mediation process, as well as the preparation of the proposed Plan of Allocation. Plaintiffs' accounting expert assisted with assessing the claims and defenses, drafting the complaints, and evaluating the Company's restatement of its financial results. *Id.*

The next largest expense (*i.e.*, $37,500.00 or approximately 26% of total expenses) is a portion of the fees of Mediator David Murphy of Phillips ADR Enterprises assessed to Plaintiffs in connection with the mediation process and efforts of the Mediator. Ex. 7 at ¶6(c).

Another component of Lead Counsel's Litigation Expenses (*i.e.*, $18,834.23 or approximately 13% of total expenses) was for online legal and factual research. These expenses relate to the usage of electronic databases, such as PACER, Thomson Research, Bloomberg, LexisNexis Risk Solutions, and Westlaw. These databases were used to obtain access to financial data, factual information, and legal research. Ex. 7 at ¶6(d). It is standard for attorneys to use online services to assist them in researching legal and factual issues and, indeed, courts recognize that these tools create efficiencies in litigation and ultimately save money for clients and the class.

The Litigation Expenses also include $9,964.53 (or approximately 7% of total expenses) for work-related transportation expenses related to working after hours, attending the mediation, and attending court hearings. This expense also includes estimated travel costs for attorneys from Labaton to attend the final Settlement Hearing. If less than this estimate is incurred, the excess will be returned to the Settlement Fund. If more than this estimate is incurred, this estimate will be the cap. (Any first-class airfare has been reduced to be comparable to economy rates.) Ex. 7 at ¶6(f).

The remaining expenses for which Lead Counsel seeks reimbursement were necessary for the successful prosecution and settlement of the claims and are of the type for which payment is routinely approved. *See Blackmon v. Zachary Holdings, Inc.,* 2022 WL 2866411, at *5 (W.D. Tex. July 21, 2022) (approving filing fees, mediation expenses, expert fees, copying, delivery, and telecommunications charges, computer-based research, and database charges and noting all were "associated with [Lead] Counsel's investigation, discovery, and mediation, and other activities necessary to effectively prosecute this case").

## III. A PSLRA AWARD TO LEAD PLAINTIFF WOULD BE REASONABLE

Lead Plaintiff Pledge Capital also requests reimbursement in the amount of $15,000, pursuant to 15 U.S.C. §77z-1(a)(4), incurred in connection with the time it dedicated to representing the class. *See* Ex. 10 at ¶¶4-5, 9-11. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 77z-1(a)(4).

As set forth in the declaration of Edward W. Chang, Managing Partner and Portfolio Manager of Pledge Capital, Pledge Capital monitored and was engaged in all material aspects of the prosecution and resolution of the litigation. In particular, Mr. Chang: (i) consulted with Pledge Capital's attorneys regularly throughout the course of the Action; (ii) reviewed substantive court

filings; (iii) regularly coordinated information with Pledge Capital's six (6) assignors (who are also members of the Settlement Class), and discussed Defendants' discovery requests; (iv) regularly corresponded with Pledge Capital's attorneys in connection with the mediation process and analyzed settlement proposals, ultimately authorizing entry into the Settlement. Ex. 10 at ¶¶5, 10.

Courts within the Fifth Circuit have approved payments to compensate representative plaintiffs for the time and effort they devoted on behalf of a class. *See, e.g.*, *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. 4:14-cv-3428, slip op., ECF No. 366 (S.D. Tex. Feb. 13, 2019) (granting PSLRA awards of $25,000, $1,977, $15,000, and $15,000 to each respective plaintiff) (Ex. 8); *In re Alta Mesa Res., Inc. Sec. Litig.*, No. 4:19-cv-00957, slip op., ECF No. 1030 (S.D. Tex. May 6, 2025) (granting PSLRA awards of $50,000 to each Lead Plaintiff) (Ex. 8); *In re Apache Corp. Sec. Litig.,* 2024 WL 4881432, at *8 (awarding $7,234.22 and $9,780.00 to lead plaintiffs pursuant to the PSLRA for their reasonable costs and expenses directly related to their representation of the class); *Prause*, 2021 WL 6053219, at *2 (awarding class representative $15,000 pursuant to the PSLRA for reasonable costs directly related to representation of the settlement class); *Bender v. Vertex Energy, Inc. et. al.*, No. 4:23-cv-2145, slip op. at 8 (S.D. Tex. July 21, 2025) (awarding $5,000 to each of the three class representatives pursuant to the PSLRA) (Ex. 8).

Accordingly, the PSLRA reimbursement request here is appropriate, reasonable, and justified under the circumstances before the Court.

## CONCLUSION

For the reasons discussed above, Lead Counsel respectfully requests, on behalf of Plaintiffs' Counsel, that the Court award: (i) 30% of the Settlement Fund as attorneys' fees, which includes accrued interest; (ii) Litigation Expenses incurred by Lead Counsel in the amount of

$144,747.02, plus accrued interest; and (iii) $15,000 to Lead Plaintiff Pledge Capital, pursuant to 15 U.S.C. § 77z-1(a)(4). A proposed Order will be submitted with Lead Counsel's reply papers on or before August 13, 2026, after the deadline for objections has passed.

Dated: July 10, 2026

Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

*/s/ Alfred L. Fatale III*
Alfred L. Fatale III (*pro hac vice*)
Joseph N. Cotilletta (*pro hac vice*)
Jessica N. Goudreault (*pro hac vice*)
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
afatale@labaton.com
jcotilletta@labaton.com
jgoudreault@labaton.com

*Lead Counsel for Lead Plaintiff Pledge Capital LLC, Additional Plaintiff Police and Fire Retirement System of the City of Detroit, and the Proposed Class*

Brian Schall (*pro hac vice*)
Rina Restaino (*pro hac vice*)
SCHALL, BROWN & SCHWARTZ LLP
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel: (310) 301-3335
brian@schallfirm.com
rina@schallfirm.com

*Additional Counsel for Lead Plaintiff Pledge Capital LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system. I certify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 10, 2026.

*/s/ Alfred L. Fatale III*
Alfred L. Fatale III